UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

| | |
|---|---|
| **ETHAN RADVANSKY,** individually and on behalf of all others similarly situated, <br><br> *Plaintiff,* <br> v. <br><br> **1ST CLASS MEDICAL** <br><br> *Defendant.* | Case No. 1:25-cv-03796-PAB-STV |

**PLAINTIFF'S SUGGESTIONS IN OPPOSITION
TO THE DEFENDANT'S MOTION TO DISMISS OR STRIKE CLASS ALLEGATIONS**

### Introduction

A statute enacted in 1991 that prohibits "vehicles" in a park applies equally to sedans and Cybertrucks, even though Cybertrucks did not exist at the time. So too here. The Telephone Consumer Protection Act ("TCPA") authorizes the Federal Communications Commission ("FCC") to prohibit telemarketing solicitations to numbers on the National Do Not Call Registry, and it provides a private right of action to enforce those rules when a person receives more than one unlawful solicitation within a twelve-month period. 47 U.S.C. § 227(c). Plaintiff plausibly alleges that Defendant 1st Class Medical repeatedly transmitted telemarketing solicitations to a telephone number registered on the National Do Not Call Registry without permission. ECF No. 1 ¶¶ 11–13, 15–20. Defendant seeks dismissal on the theory that the Do Not Call provisions do not apply to text messages because § 227(c)(5) uses the phrase "telephone call." That theory is wrong.

As courts and the FCC have long recognized, the ordinary meaning of "call" in the TCPA encompasses an attempt to communicate by telephone—regardless of whether the communication is made by voice or text. *See Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 954 (9th Cir. 2009); 18 FCC Rcd. 14014, 14115 ¶ 165 (2003). Statutory context confirms the point: the TCPA uses "call" to describe written messages delivered to paging services, demonstrating that "call" is not limited to oral communications. See 47 U.S.C. § 227(b)(1)(A)(iii). And the TCPA's Do Not Call framework is directed at the harm caused by unwanted telemarketing solicitations—an invasion of residential privacy—regardless of whether the solicitation arrives by voice call or text message. *See* 47 U.S.C. § 227(c)(1); 47 U.S.C. § 227(a)(4). Defendant's attempt to avoid the statute by relabeling its solicitations as "texts, not calls" elevates form over function and would frustrate Congress's objective.

1

Defendant's remaining arguments provide no basis for dismissal. Plaintiff alleges that he uses his cellular number as his personal residential number, which places him within the class of "residential telephone subscribers" protected by § 227(c). ECF No. 1 ¶¶ 8–10. Plaintiff also alleges concrete harm from Defendant's repeated, unwanted solicitations—an invasion of privacy and private nuisance recognized as actionable under the TCPA. ECF No. 1 ¶ 20. Finally, Defendant's request to strike class allegations at the pleadings stage is premature: nothing on the face of the Complaint makes class certification impossible, and the propriety of class treatment should be decided on a developed record under Rule 23. The Motion should be denied.

## Factual and Legal Background

Congress enacted the TCPA to protect consumer privacy from unwanted telemarketing communications, including by directing the FCC to implement a national do-not-call program. 47 U.S.C. § 227(c)(1). The statute requires the FCC to "prohibit any person from making or transmitting a telephone solicitation to the telephone number of any subscriber included" on the National Do Not Call Registry. 47 U.S.C. § 227(c)(3)(F). The TCPA defines a "telephone solicitation" as "the initiation of a telephone call or message … which is transmitted to any person" for a commercial purpose, subject to statutory exceptions. 47 U.S.C. § 227(a)(4).

Plaintiff Ethan Radvansky brings this action individually and on behalf of a putative class under the TCPA based on Defendant 1st Class Medical's alleged transmission of repeated telemarketing solicitations to a telephone number registered on the National Do Not Call Registry. ECF No. 1 ¶¶ 1–2. Plaintiff alleges that Defendant violated the FCC's do-not-call regulations, and thus 47 U.S.C. § 227(c)(5), by sending more than one marketing solicitation to a DNC-registered number without Plaintiff's prior express invitation or permission. ECF No. 1 ¶¶ 1–2, 49–57.

2

Plaintiff alleges that he is the regular and sole user of cellular telephone number (XXX) XXX-7404, and that he uses that number as his personal residential telephone number. ECF No. 1 ¶¶ 8–10. Plaintiff further alleges that his number has been registered on the National Do Not Call Registry since 2015. ECF No. 1 ¶ 11. Plaintiff alleges the messages marketed Defendant's services and were intended for someone else. ECF No. 1 ¶¶ 15–16. Plaintiff alleges he did not provide his number to Defendant and never gave Defendant permission to send marketing solicitations to his number. ECF No. 1 ¶¶ 17–19. Plaintiff alleges he was harmed by the invasion of privacy and intrusion into his daily life caused by Defendant's repeated solicitations. ECF No. 1 ¶ 20.

## Argument

**I.     The Do Not Call List provisions in TCPA section 227(c) authorize the FCC to prohibit text messages.**

1st Class contends that a single use of the phrase "telephone call" in section 227(c)(5)'s private right of action means that the Do Not Call List rules cannot apply to text messages. That's incorrect. The plain meaning of the word "call," long recognized by other courts and the FCC, refutes that argument. The statutory context confirms that a text can be a "call." And 1st Class's arguments in support of its contrary interpretation do not withstand scrutiny.

**A.     The plain meaning of the word "call" includes text messages.**

To interpret a statutory term, courts look to its "ordinary meaning" when the statute was enacted. Here, the "ordinary, contemporary, common meaning" of the word "call" in this context is "'to communicate with or try to get into communication with a person by a telephone.'" *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953–54 & n.3 (9th Cir 2009) (quoting

3

*Webster's Third New International Dictionary* (2002)).[1] Consistent with that approach, "the ordinary public meaning of 'telephone call' when the TCPA was enacted in 1991 was a communication made by telephone." *Wilson v. Better Mortg. Corp.*, 2025 U.S. Dist. LEXIS 251694, at *12 (S.D.N.Y. Dec. 5, 2025). And texting is, of course, a means of communicating with someone by telephone. So, the established definition of "telephone call" readily encompasses texts. *See, e.g.*, *Wilson v. Medvidi*, 2025 WL 2856295, at *2 (N.D. Cal. 2025); *Mujahid v. Newity, LLC*, 2025 WL 3140725, at *2 (N.D. Ill. 2025). Indeed, Courts in this District have reached the same conclusion in the Do-Not-Call context. In *Connor v. Servicequick Inc.*, Judge Sweeney held that § 227(c)(5) provides a private right of action for a person who receives "more than one telephone call **[or text message]**" within twelve months while listed on the National Do-Not-Call Registry, and expressly recognized that the FCC has interpreted the TCPA's reference to a "telephone call" to include text messages. 2025 U.S. Dist. LEXIS 199578, at *5 & n.3 (D. Colo. Oct. 8, 2025) (emphasis added).

The recognized meaning of the word "call" is especially clear in the nearby autodialer provisions in section 227(b) of the original TCPA. Absent contrary evidence, a statutory word or phrase is presumed to bear a consistent meaning throughout a statute. *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 85 (2017). The word "call" is used extensively in the provisions of the statute that prohibit automatic dialing technology and robocalls, which were also part of the statute when it was first enacted in 1991. Most notably, section 227(b) prohibits using autodialer or robocall technology "to make any call … to any telephone number assigned

---

[1] This basic definition of the word "call," which is the relevant one given the context and the word's pairing with "telephone" in section 227(c)(5), appears in many dictionaries from around the time of the TCPA's passage. *See, e.g.*, *Random House Webster's College Dictionary* (1991) ("to communicate or try to communicate with by telephone"); *Oxford English Dictionary* (2d ed. 1989) ("a summons or communication by telephone").

4

to a paging service." 47 U.S.C. § 227(b)(1)(A)(iii). A typical paging device in the early 1990s would have displayed an incoming message as written text—usually displaying a phone number to call. Courts have therefore "routinely found that the phrase 'call' in subsection (b) … includes text messages." *Hudson v. Palm Beach Tan, Inc.*, 2024 WL 4190513, at *7 n.6 (M.D.N.C. 2024); *see, e.g.*, *Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 370 (6th Cir. 2015). And that "supports the interpretation that the term 'call' as used in § 227(c) also encompasses 'text messages.'" *Mujahid*, 2025 WL 3140725, at *2. As *Wilson* recognized, "limiting § 227(c)'s reach to telephone voice calls while § 227(b) covers voice as well as text messages would create an irrational asymmetry at odds with the statute's text and structure." *Wilson v. Better Mortg. Corp.*, 2025 U.S. Dist. LEXIS 251694, at *19 (S.D.N.Y. Dec. 5, 2025).

**B. That interpretation of the word "call" aligns section 227(c)'s private right of action with its substantive provisions.**

Reading section 227(c)(5)'s private right of action in context with the substantive Do Not Call List provisions of section 227(c) further confirms that text messages are covered.

To see why, start with the core of section 227(c)—its prohibition on "making or transmitting a telephone solicitation to the telephone number of any subscriber" on the Do Not Call List. 47 U.S.C. § 227(c)(3)(F). Text messages, of course, are "ma[de] or transmitt[ed]" to a "telephone number." *Id.* And it is well-established that the residential telephone "subscriber[s]" protected by the Do Not Call List include cell phone subscribers. *See, e.g.*, *Harriel v. Bealls, Inc.*, 2025 WL 2379617, at *2 (M.D. Fla. 2025); *Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195, 203 & n.4 (S.D.N.Y. 2024) (collecting cases).

The term "telephone solicitation" also clearly encompasses text messages. The statute expressly defines a "telephone solicitation" to mean "a telephone *call or message* … which is transmitted to any person" for commercial purposes. 47 U.S.C. § 227(a)(4) (emphasis added).

5

That reference to a "call or message" covers texts even more clearly than the word "call" standing alone. As explained above, "the ordinary, contemporary, and common meaning" the word "call" in the TCPA includes text messages. *Satterfield*, 569 F.3d at 953–54 & n.3; *see supra*, Part I.A. And contemporary definitions of the word "message" do too—a message was "[a]ny notice, word, or communication, *no matter the mode and no matter how sent*." *Message*, *Black's Law Dictionary* (6th ed. 1990) (emphasis added).[2]

Finally, the purpose of the Do Not Call List provisions further supports that interpretation. Congress's stated goal was "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). And nothing in the TCPA suggests that Congress thought "oral messages were more invasive or objectionable than written ones." *Medvidi*, 2025 WL 2856295, at *3.

### C. 1st Class's case for a narrower interpretation is unpersuasive.

1st Class would have this Court interpret the Do Not Call List provisions more narrowly, insisting that the words "telephone call" in section 227(c)(5) can only mean "voice call," and therefore the statute categorically excludes text messages. Its arguments mainly rely on two recent district court cases, *Davis v. CVS Pharmacy, Inc.*, 2025 WL 2491195 (N.D. Fla. 2025), and *Jones v. Blackstone Medical Services*, 792 F. Supp. 3d 894 (C.D. Ill. 2025), *appeal docketed*, No. 25-2398 (7th Cir. Aug. 12, 2025). But none of the arguments made by 1st Class or by those cases is persuasive. 1st Class (echoing *Jones*) insists that "telephone call" cannot encompass text messages because text messaging did not yet exist in 1991. *see Jones*, 2025 WL 2042764, at *4.

---

[2] *See also Message*, *Random House Webster's New College Dictionary* (1st ed. 1991) ("a communication delivered *in writing*, speech, by means of signals, etc.") (emphasis added); *Message*, *Oxford English Dictionary* (2d ed. 1989) ("an oral *or written* communication sent from one person to another") (emphasis added).

6

That's not how statutory interpretation works. It's true that text messaging did not exist in 1991, so Congress didn't have texting specifically in mind. But statutes are not "confined to the particular applications contemplated by the legislators." *Diamond v. Chakrabarty*, 447 U.S. 303, 315–16 (1980). "While every statute's *meaning* is fixed at the time of enactment," it is commonplace that "new *applications* may arise in light of changes in the world." *Wis. Cent. Ltd. v. United States*, 585 U.S. 274, 284 (2018). That's why a 1991 law that said "no vehicles in the park" would prohibit Cybertrucks and Priuses, not just Mustangs and Corollas. *See Squillacote v. United States*, 739 F.2d 1208, 1213 (7th Cir. 1984) (similar example with Volkswagens).

The same is true here. "In determining whether section 227(c) applies to text messages, the Court looks to the plain meaning of the text rather than the specific facts or technology that Congress may have had in mind in 1991 at the time of the TCPA's passage." *Medvidi*, 2025 WL 2856295, at *2. The 1991 meaning of "call"—which "refers to both oral and written communications"—is what matters. *Id.*; *see Lozano*, 702 F. Supp. 2d at 1007.

1st Class's introduction also leads with that in ordinary conversation it sounds odd to refer to a text message as a telephone call. *Jones* and *Davis* also rely on that same intuition—both courts found it impossible to read "call" in anything but the familiar colloquial sense, and so concluded that the "analysis begins and ends there." *Davis*, 2025 WL 2491195, at *1. But statutory interpretation does not turn on modern colloquial usage. To the contrary, when language has evolved since a statute's enactment, current usage can be misleading. For example, in *New Prime, Inc. v. Oliveira*, the Supreme Court explained that the statutory term "contracts of employment" in the Federal Arbitration Act nowadays "might call to mind only agreements between employers and employees," and thus exclude independent contractors. 586 U.S. 105, 114 (2019). But that "modern intuition" did not match the "evidence of the term's meaning at the

7

time of the Act's adoption," which revealed that "'contract of employment' usually meant nothing more than an agreement to perform work." *Id*. The Supreme Court therefore held that the statutory exception at issue reached not just conventional "employees," as modern parlance might suggest, but also modern independent contractors, as definitions from the time of the statute's enactment showed. *See id.* at 114–16. *New Prime* illustrates that when a mismatch arises between current intuitions and the original meaning at the time of enactment, the latter controls—not (as 1st Class's cases put it) how an "ordinary person would think of a text message" today, *Davis*, 2025 WL 2491195, at *1, or "today's American parlance," *Jones*, 2025 WL 2042764, at *4. This is exactly the interpretive error courts warn against. In rejecting the "ordinary parlance" approach from both of those cases, Judge Engelmayer explained that it "improperly substitutes the present-day meaning of 'telephone call' for the ordinary public meaning of that term when § 227(c) was enacted in 1991." *Wilson v. Better Mortg. Corp.*, 2025 U.S. Dist. LEXIS 251694, at *14 (S.D.N.Y. Dec. 5, 2025).

Furthermore, reading the word "call" differently in section 227(c)(5) than in section 227(b) would make no sense. Again, Congress would not have *excluded* text messages in section 227(c)(5) by using a term that in section 227(b) *includes* them. So "there is no reason to believe that ['call'] has a different meaning when used in the do-not-call provisions." *Dawson v. Porch.com*, 2024 WL 4765159, at *5 (W.D. Wash. 2024).

**II.     Any doubt that section 227(c) covers text messages should be resolved by deference to the FCC's longstanding interpretation.**

The statute is best read to treat telemarketing texts as "calls" for purposes of § 227(c) and the FCC's Do-Not-Call regulations. *See supra Part I.* But even if there were uncertainty, Congress expressly delegated to the FCC the authority to implement an effective DNC framework to protect subscriber privacy. *See* 47 U.S.C. § 227(c)(1), (c)(3)(A), (E). Under *Loper*

8

*Bright*, courts still respect agency interpretations where Congress has left the agency "flexibility" to "fill up the details" of a statutory scheme. 603 U.S. 369, 394–95 (2024). Courts applying *Loper Bright* have recognized that § 227(c) is such a delegation. *See Wilson v. Skopos Fin., LLC*, 2025 WL 2029274, at *4 (D. Or. 2025).

The FCC has consistently interpreted "call" to include text messages and has expressly applied the DNC rules to "text messages to wireless telephone numbers," now codified at 47 C.F.R. § 64.1200(e). *See* 18 FCC Rcd. 14014, 14115 ¶ 165 (2003); 47 C.F.R. § 64.1200(e). At minimum, that longstanding, consistent, and reasoned interpretation is persuasive and confirms the statute's correct application here. *See Medvidi,* 2025 WL 2856295, at *3; *Mujahid,* 2025 WL 3140725, at *3.

### III. Plaintiff plausibly alleges he is a "residential telephone subscriber" under § 227(c).

Defendant argues that a cellular number cannot qualify as "residential" under § 227(c), but the statute's text, purpose, and the weight of authority reject that view. Unless otherwise defined, statutory text is given its "ordinary meaning" in the relevant context "at the time Congress enacted the statute." *New Prime Inc. v. Oliveira*, 586 U.S. 105, 113 (2019). As both the FCC and courts have long recognized, the ordinary meaning of the Do Not Call List provision authorizes the FCC to protect cell phone subscribers. *See, e.g.*, *Chennette v. Porch.com*, 50 F.4th 1217, 1223–1225 (9th Cir. 2022); 47 C.F.R. § 64.1200(e); 18 FCC Rcd. 14014, 14037 ¶¶ 33–36; *Cacho v. McCarthy & Kelly, LLP*, 739 F. Supp. 3d 195, 203 n.4 (S.D.N.Y. 2024) (collecting cases).

First, consider who is protected by the statute: "residential telephone subscribers" or, elsewhere, just "residential subscribers." 47 U.S.C. §§ 227(c)(1), (c)(3). Congress knew how to draft technology-specific restrictions—it did so elsewhere in the TCPA by regulating particular

9

types of telephone "lines" and services. *See, e.g.,* 47 U.S.C. § 227(b)(1)(A)(iii) (calls to "cellular telephone service"); id. § 227(b)(1)(B) (calls to a "residential telephone line"). But § 227(c) is not written in terms of "lines." It protects "residential telephone subscribers," a subscriber-focused phrase that turns on whether the subscriber uses the service for residential (i.e., personal and household) purposes—not on whether the service happens to be wired or wireless.

For starters, a "subscriber" is anyone who gets a bill in exchange for service. *See Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195, 206 (S.D.N.Y. 2024). So, a person can be a "telephone subscriber" to any telephone service, either wired or wireless. *Id.*; *Wilson v. Hard Eight Nutrition LLC*, No 6:25-cv-144, 2025 WL 1784815, at *5 (D. Or. June 27, 2025). Defendant's contrary reading would rewrite § 227(c) to say "residential telephone lines," but Congress chose "residential telephone subscribers" instead—and courts must give effect to that choice.

That leaves the word "residential," which Defendant's argument hinges on. But that word doesn't exclude cell phone subscribers, either. As used in the TCPA "residential" is just the opposite of "business." *See, e.g.*, *Isaacs v. USHealth Advisors, LLC*, 2025 WL 2268359 (N.D. Ga. Aug. 7, 2025). So the word "residential" refers to the purposes for which a phone is used, not its physical characteristics or location. *Wilson,* 2025 WL 1784815, at *5; *Jackson v. Direct Bldg. Supplies LLC*, No. 4:23-cv-1569, 2024 WL 184449, at *5–7 (M.D. Pa. Jan. 17, 2024). And "residential subscriber" means a subscriber who uses their phone "for personal activities associated with his or her private, domestic life." *Cacho*, 739 F. Supp. 3d at 206; *Lirones v. Leaf Home Water Sols., LLC*, No. 5:23-CV-2087, 2024 WL 4198134, at *6 (N.D. Ohio Sept. 16, 2024). Many cell phone subscribers, including Mr. Radvansky, fit that description. As alleged,

Mr. Radvansky uses his number for personal, residential, and household purposes—exactly the kind of everyday home-line use the statute protects.

The TCPA's text and FCC regulations establish that meaning of the word "residential." That's how Congress used the word "residential" in the TCPA's statutory findings, which noted that "businesses actively telemarket goods and services to *business and residential* customers." Pub. L. No. 102–243, 105 Stat. 2394, § 2 (emphasis added).[3] The current text of the TCPA, as amended in 2005, also contrasts "residential subscriber" with "business subscriber." 47 U.S.C. § 227(a)(2)(A).[4] And FCC regulations dating back to the 1990s explicitly define "residential subscriber" to mean "a subscriber … *that is not a business subscriber*." 47 C.F.R. § 64.2305(d) (emphasis added); *see* 14 F.C.C. Rcd. 15550, 15692 (1999).

That meaning of "residential" also aligns with the "express aim" of the Do Not Call List: to protect residential subscribers' "'privacy rights.'" *Wilson*, 2025 WL 1784815, at *6 (quoting 47 U.S.C. § 227(c)(1), (2)). That shows that "Congress's interest in Section 227(c) was in the person and province that was being invaded and not simply in the technology through which the invasion was effected." *Cacho*, 739 F. Supp. 3d at 207. Those interests "do not depend upon whether the undesired telephone solicitations are received on a cellular phone rather than a landline." *Lyman v. QuinStreet, Inc.*, No. 23-cv-5056, 2024 WL 3406992, at *4 (N.D. Cal. July 12, 2024). That is especially true today, when many households use a cellular number as their only home phone—and Congress did not tether privacy protections to a disappearing technology.

---

[3] Other findings similarly contrast "home" to contrast with "business": Congress found that telemarketing to "the home and other businesses" was widespread, and that automated and recorded calls "to businesses as well as to the home" needed to be curtailed. Pub. L. No. 102–243, 105 Stat. 2394, § 2.

[4] *See* Junk Fax Prevention Act of 2005, Pub. L. No. 109–21, 119 Stat. 359, § 2.

11

Indeed, every court to address this issue after the Supreme Court's ruling in *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 145 S. Ct. 2006 (2025), has reached the exact same conclusion, holding that "residential" modifies "subscriber," not technology, and that excluding cellular numbers would irrationally tie privacy protections to an obsolete landline model. "Put differently, Congress has sometimes limited the scope of the TCPA to specific types of phone lines, but, in this case, has limited the TCPA only to a particular type of subscriber. Thus, Defendant's argument is misplaced." *Isaacs v. USHealth Advisors, LLC*, No. 3:24-cv-00216-LMM, 2025 U.S. Dist. LEXIS 152625, at *7-9 (N.D. Ga. Aug. 7, 2025) (cleaned up); *Ferrell v. Colourpop Cosmetics, LLC*, No. 2:25-cv-01324, 2025 U.S. Dist. LEXIS 140893, at *16-17 (C.D. Cal. July 22, 2025) ("In 1991, when the TCPA was enacted, Webster's Dictionary defined 'residential' as 'used as a residence or by residents.' *See Wilson v. Hard Eight Nutrition LLC*, No. 6:25-cv-00144-AA, 2025 U.S. Dist. LEXIS 122504, 2025 WL 1784815, at *5 (D. Or. June 27, 2025) (quoting Residential, WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY). It is no surprise then, that the Defendant's motion does not cite any cases that have held otherwise.

### IV. The Fact that Mr. Radvansky has filed a handful of prior TCPA cases does not deprive him of standing.

Mr. Radvansky acquired a new cellular telephone number in March of 2025, as alleged in the complaint.[5] After the onslaught of calls and text messages he received not intended for him,

---

[5] This, of course, is not surprising given that "according to one source 100,000 numbers are reassigned by wireless carriers every day," *In the Matter of Advanced Methods to Target & Eliminate Unlawful Robocalls*, 32 F.C.C. Rcd. 6007, *6009 (2017), and "[a]pproximately 35 million numbers are disconnected and made available for reassignment to new consumers each year." *In the Matter of Advanced Methods to Target & Eliminate Unlawful Robocalls*, 33 F.C.C. Rcd. 12024, *12027 (2018). Indeed, "no commenter disputes that unwanted calls to reassigned numbers are a significant problem for callers and consumers." *Id*.

12

including from Defendant and other companies, the Plaintiff filed a handful of lawsuits against those companies, including this one.

However, the Defendant takes a unique view of this factual circumstance, asserting that the Plaintiff does not have standing because he has filed prior TCPA cases and they speculate (incorrectly) that his telephone number was acquired for the purposes of litigation. While neither of these assertions are allegations in the complaint, they also fail on the merits. "[N]othing in the Constitution, though, requires a plaintiff to be a naïf. Litigation is not college athletics: there is no 'amateurs only' rule." *Cunningham v. Rapid Response Monitoring Servs.*, 251 F. Supp. 3d 1187, 1195 (M.D. Tenn. 2017) (denying similar motion to dismiss in TCPA case). Merely because Mr. Radvansky identified the company calling him illegally and filed similar cases deprives him of standing no less "than the purchase of a burglar alarm would indicate that the homeowner wanted her house to be broken into." *Mey v. Venture Data, LLC*, 245 F. Supp. 3d 771, 783 (N.D.W. Va. 2017) (denying MSJ in TCPA case related to a similar standing argument). Like the defendant in *Cunningham*, Defendant "seem[s] to imagine a Constitution that limits the right to sue under the TCPA to those who are *ignorant* of their right to sue under the TCPA." *Id.* "The Constitution requires no such result." *Id.*

The only case law Defendant relies upon for its argument Plaintiff lacks constitutional standing is inapposite. In *Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782 (W.D. Pa. 2016), on a motion for summary judgment, a TCPA plaintiff was found to lack standing where she testified her *sole purpose* for owning over 35 cell phones that she carried around *in a shoebox* was to run what she referred to as a "TCPA litigation business." There is no indication here that Mr. Radvansky owns 35 cell phones, carries them around, or does not actually use his cell phone for personal, family, and household use as alleged in the Complaint. Defendant has

13

also advanced no proof that the Plaintiff uses his cell phone to run a TCPA litigation "business." As a result, Mr. Radvansky has suffered a particularized injury because he received the messages at issue, all through no fault of his own and certainly did not acquire the telephone number at issue for the sole purpose of filing lawsuits. He therefore unquestionably has standing.

### V. Striking the Class Allegations is Premature.

"[M]otions to strike class allegations before discovery commences. . . are generally disfavored." *Cleary v. Whole Foods Mkt. Rocky Mountain/ southwest L.P.*, No. 15-cv-01247-MEH, 2016 WL 7048899, at *2 (D. Colo. Dec. 5, 2015). "In most circumstances, it is appropriate for courts to allow discovery before determining whether class certification is appropriate." *Id.*

Defendant's attack on the class allegations rests on a misreading of the Complaint and an improper demand for evidentiary detail at the pleadings stage. Plaintiff alleges that Defendant sent multiple telemarketing solicitations to his DNC-registered number, and he brings his claim on behalf of persons who received more than one prohibited solicitation—whether by voice call or text message—within a twelve-month period. ECF No. 1 ¶¶ 12–13, 21. Nothing in the Complaint "concedes" that Plaintiff received no calls; rather, Plaintiff alleges that Defendant delivered telemarketing solicitations to his number and expressly pleads a class definition that covers both forms of solicitation covered by the TCPA's DNC regime. ECF No. 1 ¶ 21. In any event, Defendant's contention that Plaintiff cannot represent individuals who received telemarketing solicitations by voice call is a quintessential Rule 23 issue—one that depends on evidence about Defendant's telemarketing practices and records and cannot be resolved on the face of the pleadings. Because the Complaint plausibly alleges a uniform course of unlawful

14

telemarketing solicitations to DNC-registered numbers, Defendant's request to strike the class allegations should be denied.

Similarly, 1st Class's argument focuses on a potential affirmative defense of consent (of which they've produced no evidence to support) to assert that the action in its entirety is incapable of being maintained as a class action. In rejecting the same argument previously in a TCPA case, another Court held, "Loan Depot's citation of consent as a potential affirmative defense is insufficient to warrant striking the putative class solely on the pleadings. The motion to strike class allegations will, therefore, be denied." *Rosenberg v. LoanDepot.com LLC,* 435 F. Supp. 3d 308, 318 (D. Mass. 2020). Even though Mr. Radvansky does not believe that 1st Class obtained the appropriate prior express written consent for its calls, the Plaintiff made a conscious decision to not include language about individuals who have not provided their "prior express written consent" in the class definition, as other federal courts *have found that* to be an impermissible fail-safe class in TCPA cases. Nor does the determination of the consent issue necessitate thousands of individual mini-trials as the Defendant claims. Courts do not see consent issues as problematic from a class certification perspective, particularly when there are uniform issues with the offered consent evidence. *Berman v. Freedom Fin. Network, LLC*, 400 F. Supp. 3d 964, 972 (N.D. Cal. 2019), *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1041 (9th Cir. 2012), *Zyburo v. NCSPlus, Inc.*, 44 F. Supp. 3d 500, 504 (S.D.N.Y. 2014). To the extent Defendant raises consent as a hypothetical issue, that is a Rule 23 question for later and does not defeat class allegations on the pleadings.

## Conclusion

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant 1st Class Medical's Motion to Dismiss and deny its request to strike Plaintiff's class allegations.

Dated: January 6, 2026   PLAINTIFF, on behalf of himself
and others similarly situated,


By: */s/ Anthony Paronich*
Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

16