**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:25-cv-03796-PAB-STV

ETHAN RADVANSKY, on behalf of
himself and others similarly situated,

     Plaintiff,

v.

1ST CLASS MEDICAL,

     Defendant.

---

**DEFENDANT'S SECOND NOTICE OF SUPPLEMENTAL AUTHORITY**

---

Defendant 1st Class Medical ("Defendant") submits the following Second Notice of Supplemental Authority in further support of its pending motion to dismiss (Dkt. No. 17) regarding similar recently dismissed TCPA cases brought by Plaintiff, and others, based on alleged receipt of text messages not falling within the scope of the TCPA, 47 U.S.C. § 227(c)(5).

1. **Steidinger v. Blackstone Med. Servs., No. 25-2398, 2026 U.S. App. LEXIS 20613 (7th Cir. July 14, 2026)**

The Seventh Circuit recently affirmed dismissal of a class action complaint alleging violations of Section 227(c)(5) of the TCPA based on receipt of unwanted marketing text messages. In Steidinger, the plaintiffs allegedly received texts and calls from Blackstone Medical Services urging them to purchase home sleep tests, and the plaintiffs allegedly continued to receive these communications even after opting out. The Seventh Circuit held that the term "telephone call" in Section 227(c)(5) does not encompass text messages. Relying on the ordinary public meaning of "telephone call" at the time of the TCPA's enactment in 1991, as well as the context

provided by surrounding provisions of Section 227, the Seventh Circuit held that text messages are not calls.

When the TCPA was enacted, the dictionary definition of "telephone" was an "instrument for reproducing sounds at a distance" and a "call" was "to get or try to get into communication by telephone." Thus, the Seventh Circuit concluded that "in 1991, a 'telephone call' referred to communication via sound." Since "[t]ext messages do not reproduce sounds," the court concluded that Section 227(c)(5) does not apply to text messages.

The Seventh Circuit also found the statutory context dispositive. Section 227(c)(5) creates a private right of action for "telephone calls," but other provisions of Section 227(c) consistently use the broader term "telephone solicitation," which the TCPA separately defines as "the initiation of a telephone call or message." The court applied the meaningful-variation canon and concluded that Congress intentionally narrowed the private right of action in Section 227(c)(5) to calls alone.

The Seventh Circuit rejected the plaintiffs' reliance on the FCC's interpretation that text messages are telephone calls and noted that it is not bound by agency interpretations after the Supreme Court's decision in McLaughlin Chiropractic Associates v. McKesson Corp. The court also declined to give weight to congressional inaction. Indeed, Congress amended other subsections of Section 227 to expressly include text messages but did not similarly amend Section 227(c)(5).

2. **Richards v. Shein Distrib. Corp.,** **No. 1:25-cv-01385-TWP-TAB, 2026 U.S. Dist. LEXIS 65697 (S.D. Ind. Mar. 26, 2026)**

Richards was decided by a District Court within the Seventh Circuit prior to the Seventh Circuit's decision in Steidinger, but its analysis remains of note. In Richards, the Southern District of Indiana granted a motion to dismiss a Section 227(c)(5) TCPA claim premised solely on

unsolicited marketing text messages.  The court held that a text message is not a "telephone call" under Section 227(c)(5).  Relying on similar dictionary definitions as the Steidinger court, the court found a "plain reading" of the statute supports that Section 227(c)(5) did not include text messages.  The court noted that (1) Section 227(c)(5)'s use of "telephone call" differs from the TCPA's definition of "telephone solicitation" as "the initiation of a telephone call or message" and (2) Congress' later amendments adding "text message" elsewhere in the TCPA only confirmed that Congress understood the distinction and knew how to include text messages when it intended to do so.

3. **Richards v. Fashion Nova, LLC, No. 1:25-cv-02025-TWP-TAB, 2026 U.S. Dist. LEXIS 65696 (S.D. Ind. Mar. 26, 2026)**

See summary of Richards v. Shein Distrib. Corp. above.  Both Richards cases were brought by the same plaintiff, both cases were dismissed by the same judge for substantially the same reasons and the analysis of both remains of note post-Steidinger.

4. **Irvin v. Sonic Indus. Servs., LLC, No. 3:25-cv-00242-LMM, 2026 U.S. Dist. LEXIS 90262 (N.D. Ga. Apr. 20, 2026)**

The Northern District of Georgia granted a motion to dismiss a putative class action under Section 227(c)(5) of the TCPA.  Plaintiff alleged that the defendant sent the plaintiff at least twelve telemarketing text messages after he had registered on the national Do Not Call Registry.  The court held that Section 227(c)(5)'s private right of action is limited to "telephone call[s]" and does not encompass text messages.  Rejecting the plaintiff's reliance on pre-McLaughlin precedent that deferred to a 2003 FCC order, the court noted that post-McLaughlin, district courts must independently interpret the TCPA without deference to agency interpretation.  The court also

rejected the argument that the FCC had express authority to "fill up the details" of the TCPA's do-not-call provisions.

5. **James v. Smarter Contact, Inc., No. 8:25-cv-1657-KKM-SPF, 2026 U.S. Dist. LEXIS 68492 (M.D. Fla. Mar. 31, 2026)**

The Middle District of Florida dismissed Section 227(c)(5) claims alleging that the defendants sent over twenty telemarketing text messages to the plaintiff's cell phone. The court held that the ordinary public meaning of "telephone call" in 1991 did not include text messages because dictionaries at the time defined "call" as "the act of calling on the telephone" and "telephone" as "an instrument for reproducing sounds at a distance." The court rejected the plaintiff's argument that courts should defer to the FCC's interpretation that text messages are calls. The court also found that the later addition of "text message" elsewhere in the TCPA through subsequent amendments confirms that "telephone call" does not include text messages.

6. **Internicola v. Mortgagepros, LLC, No. 6:25-cv-01613-AGM-LHP, 2026 U.S. Dist. LEXIS 129255 (M.D. Fla. June 10, 2026)**

A magistrate judge in the Middle District of Florida recommended granting in part a motion to dismiss Section 227(c)(5) claims alleging that the plaintiff received numerous unsolicited text messages and telephone calls after revoking his consent for contact. The magistrate recommended dismissing the plaintiff's claims to the extent they were premised on text messages. The court held that the phrase "telephone call" in Section 227(c)(5) does not encompass text messages based on the plain language of the statute and precedent after the Supreme Court's decisions in McLaughlin and Loper Bright Enterprises v. Raimondo.

For the foregoing reasons and those set forth in Defendant's Motion to Dismiss, the Court should dismiss the Complaint with prejudice.

4

Respectfully submitted this 27th day of July 2026.

1ST CLASS MEDICAL BY
JACKSON LEWIS P.C.


*/s/ Jason A. Selvey*
Jason A. Selvey
150 North Michigan Avenue
Suite 2500
Chicago, IL 60601
Telephone: (312) 787-4949
Jason.Selvey@jacksonlewis.com

Gregory C. Brown, Jr.
666 Third Avenue, 28th Floor
New York, NY 10017
Telephone: (212) 545-4000
Gregory.Brown@jacksonlewis.com

*Attorneys for Defendant*
*1st Class Medical*

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on this 27th day of July, 2026, a true and correct copy of the foregoing Defendant's Second Notice of Supplemental Authority was filed and served electronically via CM/ECF, addressed to the following attorney for Plaintiff:

Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Tel: (617) 485-0018
anthony@paronichlaw.com

*/s/ Jason A. Selvey*
Jason A. Selvey

# EXHIBIT 1

## *Steidinger v. Blackstone Med. Servs.*

United States Court of Appeals for the Seventh Circuit

May 21, 2026, Argued; July 14, 2026, Decided

No. 25-2398

**Reporter**

2026 U.S. App. LEXIS 20613 *; 2026 LX 355834; __ F.4th __; 2026 WL 2028517

SETH STEIDINGER, et al., Plaintiffs-Appellants, v. BLACKSTONE MEDICAL SERVICES, Defendant-Appellee.

**Prior History: [*1]** Appeal from the United States District Court for the Central District of Illinois. No. 1:24-cv-01074 — Jonathan E. Hawley, Judge.

*Jones v. Blackstone Med. Servs., LLC, 792 F. Supp. 3d 894, 2025 U.S. Dist. LEXIS 138371, 2025 WL 2042764 (July 21, 2025)*

**Disposition:** AFFIRMED.

**Counsel:** For SETH STEIDINGER, NATASHA KOLLER, JOSEPH JONES, Plaintiffs - Appellants: Ryan Lee McBride, Attorney, KAZEROUNI LAW GROUP, APC, San Diego, CA; Abbas Kazerounian, Attorney, KAZEROUNI LAW GROUP, APC, Costa Mesa, CA.

For BLACKSTONE MEDICAL SERVICES, Defendant - Appellee: John P. Heil, Jr., Attorney, HEYL, ROYSTER, VOELKER & ALLEN, P.C., Peoria, IL; Ryan C. Childress, Attorney, Traci Rollins, Attorney, GUNSTER, YOAKLEY & STEWART, West Palm Beach, FL; Lauren Vickroy Purdy, Attorney, GUNSTER, YOAKLEY & STEWART, Jacksonville, FL.

For NATIONAL REPUBLICAN CONGRESSIONAL COMMITTEE, NATIONAL REPUBLICAN SENATORIAL COMMITTEE, Amicus Curiaes: Jeremy Joseph Broggi,

Attorney, Washington, DC.

For FASHION NOVA HOLDINGS, LLC, Amicus Curiae: Mark S. Eisen, Attorney, Chicago, IL.

For CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA, Amicus Curiae: Russell Balikian, Attorney, Mariel A. Brookins, Attorney, Andrew Y. Ebrahem, Maria Monaghan, Attorney, Washington, DC.

**Judges:** Before KIRSCH, PRYOR, and MALDONADO, Circuit Judges.

**Opinion by:** KIRSCH

## Opinion

KIRSCH, *Circuit Judge*. Frustrated by an onslaught **[*2]** of marketing text messages from Blackstone Medical Services, the plaintiffs filed a consolidated class action complaint alleging violations of the *Telephone Consumer Protection Act, 47 U.S.C. § 227*, and the *Florida Telephone Solicitation Act, Fla. Stat. § 501.059(5)*. Blackstone moved to dismiss the TCPA claims. It argued principally that *§ 227(c)(5)*, the provision on which the plaintiffs relied, only creates a private right of action for phone calls, not text messages. The district court agreed and dismissed the case after declining to exercise supplemental jurisdiction over the remaining state-law claim. On appeal, we consider whether *§ 227(c)(5)*'s reference to unwanted telephone calls extends to text messages. Because we conclude that *§*

2026 U.S. App. LEXIS 20613, *2

227(c)(5) does not permit plaintiffs to sue for the receipt of unwanted texts, we affirm.

I

The plaintiffs are individuals who received marketing text messages and calls from Blackstone Medical Services, urging them to buy the company's home sleep tests. The plaintiffs assert that they continued to receive these texts and calls even though they indicated (e.g., by replying "STOP" to a text message or by adding themselves to the National Do-Not-Call Registry) that they did not want to be contacted. They therefore filed a consolidated class action complaint against Blackstone, alleging violations **[*3]** of the _Telephone Consumer Protection Act, 47 U.S.C. § 227_, and the _Florida Telephone Solicitation Act, Fla. Stat. § 501.059(5)_, seeking monetary, injunctive, and declaratory relief.

Blackstone moved to dismiss the plaintiffs' TCPA claims, arguing that the provision under which they filed suit, _47 U.S.C. § 227(c)(5)_, does not apply to text messages. The district court agreed with Blackstone. The court found that _§ 227(c)(5)_, which creates a private right of action for those who have received unwanted telephone calls, does not cover text messages. Because the crux of the consolidated class action complaint was the receipt of numerous text messages, the district court concluded that the plaintiffs failed to state claims for violations of the TCPA.[*] The court declined to exercise supplemental jurisdiction over the remaining FTSA claim and dismissed the plaintiffs' suit.

II

---

[*] The plaintiffs didn't contend below or on appeal that their suit could proceed based on the alleged calls alone, so that argument is waived and we do not consider it. See _Oates v. Discovery Zone, 116 F.3d 1161, 1168 (7th Cir. 1997)_ (finding it "axiomatic that arguments not raised below are waived on appeal") (citation modified).

A

We review a district court's decision to dismiss a complaint, along with issues of statutory interpretation, de novo. _Nat'l Shopmen Pension Fund v. DISA Indus., Inc., 653 F.3d 573, 578 (7th Cir. 2011)_. This appeal turns on a single issue: whether text messages are telephone calls within the meaning of _§ 227(c)(5)_. Based on the ordinary public meaning of telephone call at the time of the TCPA's enactment, as well as the context provided by surrounding provisions of _§ 227_, we find that texts are not calls, so _§ 227(c)(5)_ does not authorize the plaintiffs' suit.

We start **[*4]** with the statute's text, interpreting it "in accord with the ordinary public meaning of its terms at the time of its enactment." _Bostock v. Clayton County, 590 U.S. 644, 654, 140 S. Ct. 1731, 207 L. Ed. 2d 218 (2020)_. _Section 227(c)(5)_ creates a private right of action for an individual "who has received more than one _telephone call_ within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection[.]" _47 U.S.C. § 227(c)(5)_ (emphasis added). It's undisputed that "telephone call" couldn't have been thought to cover text messages when the TCPA was enacted in 1991, because the first text message was not sent until the following year. See _Blow v. Bijora, Inc., 191 F. Supp. 3d 780, 786 n.3 (N.D. Ill. 2016)_ (noting that the first text message was sent in December 1992).

Blackstone thus argues that the ordinary public meaning of telephone call can't encompass a text message. But "[w]hile every statute's _meaning_ is fixed at the time of enactment, new _applications_ may arise in light of changes in the world." _Wis. Cent. Ltd. v. United States, 585 U.S. 274, 284, 138 S. Ct. 2067, 201 L. Ed. 2d 490 (2018)_. So, for instance, "'money' ... must always mean a 'medium of exchange,'"

but "what *qualifies* as a 'medium of exchange' may depend on the facts of the day." *Id.* (giving, as an example of money, electronic transfers of paychecks).

With that principle in mind, we consider what telephone call meant in 1991. The TCPA doesn't **[*5]** offer a definition, so we turn to contemporaneous dictionary definitions for guidance. See *Delaware v. Pennsylvania, 598 U.S. 115, 127-28, 143 S. Ct. 696, 215 L. Ed. 2d 24 (2023)*. Then, a telephone was "[a]n instrument for reproducing sounds at a distance[.]" *Telephone*, Webster's Ninth New Collegiate Dictionary (1991). And a call meant "to get or try to get into communication by telephone." *Call, id.* Thus, in 1991, a "telephone call" referred to communication via sound.

Text messages do not reproduce sounds, suggesting that they do not qualify as a new application of telephone call within the meaning of that term. See *Wis. Cent. Ltd., 585 U.S. at 284*. The plaintiffs reject this conclusion and advocate for a broader meaning of telephone call, which would encompass all communications by telephone. Otherwise, they argue, the TCPA's protections will become increasingly ineffectual as new technologies emerge. Though the plaintiffs are correct that *§ 227(c)(5)* covers more than telephone calls as they existed in 1991 (when such calls were often to landlines), we are cognizant that "[t]oo much 'liberality' will undermine the statute as surely as too literal an interpretation would." *Matter of Erickson, 815 F.2d 1090, 1094 (7th Cir. 1987)*. We've therefore rejected "the march of technology" standing alone as sufficient to identify the meaning of statutory language. *Id.*

The provisions **[*6]** surrounding *§ 227(c)(5)* provide further evidence that it doesn't create a private right of action for text messages. *Sections 227(c)(1)* and *(c)(2)* direct the Federal Communications Commission to engage in rulemaking "to protect residential telephone subscribers' privacy rights to avoid receiving *telephone solicitations* to which they object." *47 U.S.C. § 227(c)(1)* (emphasis added). And *§ 227(c)(3)* and *(c)(4)* discuss the creation of a national database of individuals "who object to receiving *telephone solicitations*," i.e., the creation of the National Do-Not-Call Registry. *Id. § 227(c)(3)* (emphasis added).

We note that these other subsections of *§ 227(c)* consistently use the term "telephone solicitation," which the TCPA defines as "the initiation of a *telephone call or message* for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person[.]" *Id. § 227(a)(4)* (emphasis added). Yet *§ 227(c)(5)* only creates a private right of action for the receipt of more than one "telephone call" within a 12-month period. It doesn't mention telephone messages, nor does it use the more encompassing term, telephone solicitation.

The plaintiffs urge us to overlook this difference and insist that *§ 227(c)(5)* creates a private right of action for all telephone **[*7]** solicitations. But we read the words of a statute in their context, which includes the overall statutory scheme. *FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 133, 120 S. Ct. 1291, 146 L. Ed. 2d 121 (2000)*. And we presume that because Congress used a different term in these two subsections of *§ 227*, it intended a different meaning. See *Sw. Airlines Co. v. Saxon, 596 U.S. 450, 457-58, 142 S. Ct. 1783, 213 L. Ed. 2d 27 (2022)* (explaining the meaningful-variation canon). The best reading of *§ 227(c)(5)* is therefore that it provides a narrower remedy than recovery for all forms of telephone solicitation; plaintiffs may sue after receiving unwanted telephone calls, but not unwanted telephone

solicitations (which include not merely calls but also messages).

Because *§ 227*'s definition of telephone solicitation distinguishes between calls and messages, the two must refer to different forms of communication by telephone. See *Nielsen v. Preap, 586 U.S. 392, 414, 139 S. Ct. 954, 203 L. Ed. 2d 333 (2019)* (per the canon against surplus-age, "every word and every provision is to be given effect"). Based on how telephone messages were understood at the time of enactment, we conclude that modern-day text messages are better understood as messages, not calls. The kinds of unwanted messages contemplated in 1991 include those delivered by an artificial or prerecorded voice, see *§ 227(b)(1)(B)*, and those sent via fax machine, see *§ 227(d)(1)*. *Section 227(d)(1)*, about fax messages, is particularly instructive. The statute **[*8]** defines a telephone facsimile machine as equipment that can "transcribe text or images, or both, from paper into an electronic signal," or vice versa (i.e., transcribe text or images from an electronic signal onto paper). *47 U.S.C. § 227(a)(3)*. And it articulates standards for "send[ing] any message" via a telephone facsimile machine "us[ing] a computer or other electronic device." *Id. § 227(d)(1)(B)*. *Section 227(d)(1)* shows that—though Congress in 1991 didn't contemplate text messages—it did consider something analogous, i.e., text-based communications sent by an electronic deNo. vice through a telephone line. And it regarded those communications as messages, not calls.

*Section 227(c)(1)(D)* doesn't suggest otherwise. It refers to "calls exempted under *subsection (a)(3)*," and *(a)(3)* defines telephone facsimile machine. But this doesn't mean that faxes are calls. Rather, this is a drafting error stemming from Congress's 2005 amendments to the TCPA. Congress changed the numbering in section (a) without updating the cross-reference in *§ 227(c)(1)(D)*, which

should refer—as it did at enactment—to the definition of telephone solicitation, which is now *§ 227(a)(4)*. See *Junk Fax Prevention Act of 2005, sec. 2(b), § 227(a), 119 Stat. 359, 360* (amending and renumbering *§ 227(a)* without changes to *§ 227(c)(1)(D)*); *Chickasaw Nation v. United States, 534 U.S. 84, 90-91, 122 S. Ct. 528, 151 L. Ed. 2d 474 (2001)* (finding that a legislative drafting mistake doesn't create interpretive ambiguity). Thus, **[*9]** both the overall statutory scheme and the ordinary public meaning of telephone call indicate that *§ 227(c)(5)*'s private right of action does not extend to unwanted text messages.

B

The plaintiffs assert that decisions by the Supreme Court, this circuit, and other circuits support their reading of *§ 227(c)(5)*. They are mistaken. The plaintiffs point to the Supreme Court's decision in *Campbell-Ewald Co. v. Gomez, 577 U.S. 153, 136 S. Ct. 663, 193 L. Ed. 2d 571 (2016)*, which involved a suit brought under *§ 227(b)(3)*, a different provision of the TCPA. There, the Court observed that "[a] text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of *§ 227(b)(1)(A)(iii)*." *Id. at 156*. But the Court subsequently indicated that this was not a substantive decision on the meaning of "call," just an assumption for the purposes of the case since neither party contested the issue. See *Facebook, Inc. v. Duguid, 592 U.S. 395, 400, 141 S. Ct. 1163, 209 L. Ed. 2d 272 & n.2 (2021)* (citing *Campbell-Ewald* and stating that because "[n]either party disputes that the TCPA's prohibition also extends to sending unsolicited text messages," the Court would "therefore assume that it does without considering or resolving that issue"). Here, the parties dispute the meaning of telephone call, so we confront a question that the Supreme Court hasn't answered.

Our precedent interpreting the TCPA doesn't

bear on the present issue, **[\*10]** either. Citing *Campbell-Ewald*, and in a case involving *§ 227(b)(1)(A)(iii)*, we previously stated that text messages qualify as calls within the meaning of the TCPA. See *Warciak v. Subway Rests., Inc., 949 F.3d 354, 356 (7th Cir. 2020)*; see also, e.g., *Douglas v. W. Union Co., 955 F.3d 662, 663 (7th Cir. 2020)*. But those cases were about another provision of *§ 227*. See *Warciak, 949 F.3d at 356*; *Douglas, 955 F.3d at 663*. And they were decided before the Supreme Court's opinion in *Duguid*, which explained that *Campbell-Ewald* didn't resolve whether a text message is a call. See *Duguid, 592 U.S. at 400 & n.2*.

For the same reasons, we are uncompelled by other circuits' decisions finding that texts are calls within the meaning of the TCPA. See, e.g., *Breda v. Cellco P'ship, 934 F.3d 1, 4 n.1 (1st Cir. 2019)* (considering a claim under *§ 227(b)(1)(A)(iii)* and citing *Campbell-Ewald* for the proposition that the TCPA also applies to text messages); *Melito v. Experian Mktg. Sols., Inc., 923 F.3d 85, 88-89 (2d Cir. 2019)* (same); *Howard v. Republican Nat'l Comm., 164 F.4th 1119, 1124 (9th Cir. 2026)* (considering a claim under *§ 227(b)* and holding that "a text message is properly deemed to be a 'call' within the meaning of the TCPA"); *Murphy v. DCI Biologicals Orlando, LLC, 797 F.3d 1302, 1305 (11th Cir. 2015)* (considering a claim under *§ 227(b)(1)(A)(iii)* and relying on an FCC order to find that "[t]he prohibition against auto dialed calls applies to text message calls as well as voice calls"). *Breda* and *Melito* were decided based on *Campbell-Ewald*, before the Supreme Court's decision in *Duguid*. And all of these cases concern claims brought under *§ 227(b)*, not *§ 227(c)(5)*.

As an alternate source of authority, the plaintiffs note that the FCC's interpretation of *§ 227(c)* supports their own. Congress authorized the FCC to make rules **[\*11]** and regulations implementing the TCPA. See, e.g.,

*47 U.S.C. § 227(c)(1)* (directing the FCC to initiate a rulemaking proceeding "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object"). In doing so, the FCC has interpreted "call" to include text messages, though it has not engaged in rulemaking to define the term for the purpose of *§ 227(c)(5)*. Most relevantly, the plaintiffs point to the FCC's decision to extend National Do-Not- Call Registry protections to text messages. *Targeting and Eliminating Unlawful Text Messages, Implementation of the Telephone Consumer Protection Act of 1991, Advanced Methods to Target and Eliminate Unlawful Robocalls, 89 Fed. Reg. 5098, 5099 (Jan. 26, 2024)* (codified at *47 C.F.R. § 64.1200(e)*). But the National Do-Not-Call Registry was implemented pursuant to *§ 227(c)(3)*, which refers to "telephone solicitations," so the FCC's interpretation doesn't inform our understanding of *§ 227(c)(5)*, which refers only to telephone calls.

Even if it did, we aren't bound by the FCC's interpretation. *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp., 606 U.S. 146, 168, 145 S. Ct. 2006, 222 L. Ed. 2d 405 (2025)*. Rather, we "interpret the statute as courts traditionally do under ordinary principles of statutory inter10 pretation, affording appropriate respect to the agency's interpretation." *Id.* The plaintiffs suggest that appropriate respect means deference under the arbitrary-and-capricious standard, but that's reserved for review of an agency's exercise of discretion granted by a statute. *Seven Cnty. Infrastructure Coal. v. Eagle County, 605 U.S. 168, 179-80, 145 S. Ct. 1497, 221 L. Ed. 2d 820 (2025)*. This **[\*12]** is a question of statutory interpretation, which we review de novo. *Id. at 179*. That the FCC may have a different interpretation of call as that word appears elsewhere in the statute or in other contexts isn't sufficient to override our conclusion about the meaning of *§ 227(c)(5)*.

See *McLaughlin Chiropractic Assocs., Inc., 606 U.S. at 155*. And to the extent that the plaintiffs contend that FCC regulations promulgated under other portions of *subsection (c)* must be actionable under *§ 227(c)(5)* because *(c)(5)* refers to calls made "in violation of the regulations prescribed under this subsection," they are mistaken. That language simply clarifies which calls—i.e., those that violate relevant regulations—are the basis for a suit.

The plaintiffs' other counterarguments are similarly unpersuasive. They argue that Congress effectively adopted the FCC's interpretation when it repeatedly amended the TCPA without challenging the FCC's regulation of text messages as telephone calls. But that observation cuts both ways. We could presume, as the plaintiffs contend, that Congress was aware of the FCC's interpretation and adopted it when it amended the TCPA without changes to *§ 227(c)*. See *Forest Grove Sch. Dist. v. T.A., 557 U.S. 230, 239-40, 129 S. Ct. 2484, 174 L. Ed. 2d 168 (2009)*. On the other hand, Congress has changed other portions of *§ 227* to clarify that text messages are covered. See *Consolidated Appropriations Act, sec. 503(a), § 227(e)(1), (8), 132 Stat. 348, 1091-92 (2018)* (amending **[\*13]** *§ 227(e)* to cover text messages and defining "text message" for the purposes of that subsection). It could have done the same for *§ 227(c)(5)* but did not. Acknowledging these difficulties in interpreting congressional inaction, the Supreme Court has remarked that when "Congress has not comprehensively revised a statutory scheme but has made only isolated amendments ... it is impossible to assert with any degree of assurance that congressional failure to act represents affirmative congressional approval." *Alexander v. Sandoval, 532 U.S. 275, 292, 121 S. Ct. 1511, 149 L. Ed. 2d 517 (2001)* (citation modified). Because that's the situation we find ourselves in here, we reject the

plaintiffs' invitation to attribute persuasive significance to Congress's inaction regarding *§ 227(c)*. See also *Star Athletica, L.L.C. v. Varsity Brands, Inc., 580 U.S. 405, 424, 137 S. Ct. 1002, 197 L. Ed. 2d 354 (2017)* (emphasizing that "[c]ongressional inaction lacks persuasive significance in most circumstances").

The plaintiffs also invoke the presumption of consistent usage, observing that, in subsequent revisions of *§ 227*, Congress has indicated that *§ 227(b)* applies to text messages. See *Pallone-Thune Telephone Robocall Abuse Criminal Enforcement and Deterrence Act, sec. 10(a), § 227(i), 133 Stat. 3274, 3284 (2019)* (discussing "a call made or a text message sent in violation of *subsection (b)*"). The plaintiffs suggest that since *§ 227(b)* applies to text messages, *§ 227(c)(5)* must also cover texts based on the "presumption that a given term is used to mean the same thing throughout a statute." **[\*14]** *Brown v. Gardner, 513 U.S. 115, 118, 115 S. Ct. 552, 130 L. Ed. 2d 462 (1994)*. This argument fails at the first step, because *§ 227(b)* and *§ 227(c)(5)* contain different language. *Subsection (b)* prohibits a wide range of conduct, including certain calls to paging services and uses of telephone facsimile machines. See *47 U.S.C. § 227(b)(1)*. And *subsection (b)*'s corresponding private right of action is broadly framed: an individual may bring "an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation." *Id. § 227(b)(3)(A)*. Conversely, *§ 227(c)(5)* only creates a private right of action for "[a] person who has received more than one telephone call within any 12-month period ... in violation of the regulations prescribed under this subsection." Thus, there is a difference in language that both explains and supports our conclusion that *§ 227(c)(5)* does not apply to text messages.

Finally, the plaintiffs' policy arguments and broad invocation of the TCPA's remedial nature "cannot overcome the clear commands of [*§ 227(c)(5)*'s] text and the statutory context." *Duguid, 592 U.S. at 406*; see also *Hulce v. Zipongo Inc., 132 F.4th 493, 500 (7th Cir. 2025)* (rejecting "appeals to the remedial nature of the TCPA" because the court's interpretation was based "on clear statutory language"). Congress's general concern about intrusive telemarketing practices doesn't necessarily mean that it adopted a broad **[*15]** definition of telephone call. *Duguid, 592 U.S. at 408*. In fact, Congress specifically found that telemarketing calls create a public safety risk when they seize telephone lines needed for emergency or medical assistance. See *Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2, 105 Stat. 2394, 2394*. Spam text messages don't pose this risk, making it unsurprising, or at the very least reasonable, that *§ 227(c)(5)*'s private right of action would cover telephone calls but not messages.

Repeated, unwanted text messages are undoubtedly a nuisance. But they do not fall within the private right of action created by *§ 227(c)(5)*. Instead, spam messages may be curbed through agency action pursuant to other provisions of *§ 227*, which we leave undisturbed. The district court's rejection of the plaintiffs' TCPA claims was appropriate, as was its dismissal of the present suit.

AFFIRMED

---

**End of Document**

# EXHIBIT 2

# *Richards v. Shein Distrib. Corp.*

United States District Court for the Southern District of Indiana, Indianapolis Division

March 26, 2026, Decided; March 26, 2026, Filed

No. 1:25-cv-01385-TWP-TAB

**Reporter**

2026 U.S. Dist. LEXIS 65697 *; 2026 LX 170711

WARREN RICHARDS, Plaintiff, v. SHEIN DISTRIBUTION CORPORATION, Defendant.

**Prior History:** *Richards v. Shein Distrib. Corp., 2025 U.S. Dist. LEXIS 219347, 2025 WL 3079658 (Nov. 4, 2025)*

**Counsel: [*1]** For WARREN RICHARDS, Plaintiff: Anthony Paronich, PARONICH LAW. P.C., Hingham, MA; Jessica Garland, PRO HAC VICE, Matthew Wessler, Gupta Wessler LLP, Washington, DC.

For SHEIN DISTRIBUTION CORPORATION, Defendant: David M. Krueger, Benesch Friedlander Coplan & Aronoff, Cleveland, OH; Mark S. Eisen, PRO HAC VICE, Benesch Friedlander Coplan & Aronoff LLP, Chicago, IL.

**Judges:** Hon. Tanya Walton Pratt, United States District Judge.

**Opinion by:** Tanya Walton Pratt

# Opinion

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

This matter is before the Court on Defendant Shein Distribution Corporation's ("Defendant") Motion to Dismiss filed pursuant to *Federal Rule of Civil Procedure 12(b)(6)* (Filing No. 16). Plaintiff Warren Richards ("Richards") initiated this putative class action against Defendant under *47 U.S.C. § 227(c)(5) of the Telephone Consumer Protection Act ("TCPA")* after receiving unsolicited text messages from Defendant, despite his cell phone number being on the national "Do Not Call" Registry. Defendant moves to dismiss Richards' Complaint on the premise that a text message is not a "telephone call" for purposes of establishing a violation of *§ 227(c)(5)*. For the reasons explained below, Defendant's Motion to Dismiss is **granted**.

## I. BACKGROUND

The following facts are not necessarily objectively true, but as required when reviewing a motion **[*2]** to dismiss, the Court accepts as true all factual allegations in the complaint and draws all inferences in favor of Richards as the non-moving party. *See Bielanski v. Cnty. of Kane, 550 F.3d 632, 633 (7th Cir. 2008)*.

Richards registered his cell phone number on the Do Not Call Registry on April 25, 2025 (Filing No. 1 ¶ 15). In June 2025, Defendant sent marketing text messages to Richards' cell phone number without his consent. *Id.* ¶¶ 16-22. Richards now brings suit under *§ 227(c)(5) of the TCPA*, which, in short, creates a private right of action for persons who have received more than one unsolicited "telephone call" within a 12-month period. Defendant moves to dismiss Richards' claims, arguing solely that a text message is not a "telephone call," so Richards has no claim under *§ 227(c)(5)*. The parties have fully briefed the Motion to Dismiss

and filed several notices of supplemental authority, and the parties presented oral argument on March 10, 2026 (Filing No. 58). The Motion is now ripe for the Court's review.

## II. LEGAL STANDARD

*Federal Rule of Civil Procedure 12(b)(6)* allows a defendant to move to dismiss a complaint that has failed to "state a claim upon which relief can be granted." *Fed. R. Civ. P. 12(b)(6)*. When deciding a motion to dismiss under *Rule 12(b)(6)*, the Court accepts as true all factual allegations in the complaint and draws all inferences **[*3]** in favor of the plaintiff. *Bielanski, 550 F.3d at 633*. However, courts "are not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon, 287 F.3d 656, 658 (7th Cir. 2002)*.

The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Fed. R. Civ. P. 8(a)(2)*. In *Bell Atlantic Corp. v. Twombly*, the Supreme Court explained that the complaint must allege facts that are "enough to raise a right to relief above the speculative level." *550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)*. Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Id.*; *see also Bissessur v. Ind. Univ. Bd. of Trs., 581 F.3d 599, 603 (7th Cir. 2009)* ("it is not enough to give a threadbare recitation of the elements of a claim without factual support"). The allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly, 550 U.S. at 555*. Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co., 556 F.3d 575, 580 (7th Cir. 2009)* (citation modified). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)* (citing *Twombly, 550 U.S. at 556*).

## III. DISCUSSION

This case turns on a single issue: **[*4]** whether a text message is a "telephone call" under *§ 227(c)(5) of the TCPA*. Richards argues it is, and Defendant argues it is not. For many years, most courts assumed that a text message is a "telephone call" because the Federal Communications Commission ("FCC") said so, and the FCC was entitled to deference. But in *Loper Bright Enterprises v. Raimondo, 603 U.S. 369, 144 S. Ct. 2244, 219 L. Ed. 2d 832 (2024)*, the United States Supreme Court held that courts may not defer to agencies to interpret ambiguous statutes, and in *McLaughlin Chiropractic Associates, Inc. v. McKesson Corp., 606 U.S. 146, 145 S. Ct. 2006, 222 L. Ed. 2d 405 (2025)*, the Supreme Court further held that courts are not bound by the FCC's interpretation of the TCPA. These two decisions prompted a flood of lawsuits seeking judicial interpretations of "telephone call" under *§ 227(c)(5)*. The results are split, and the Seventh Circuit has not yet resolved this issue.[1] Both parties' positions are supported by persuasive arguments and authority, but ultimately, the Court agrees with Defendant.

"Voluminous consumer complaints about abuses of telephone technology . . . prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368, 370-71, 132 S. Ct. 740, 181 L. Ed. 2d 881 (2012)*. To help

---

[1] This issue is pending before the Seventh Circuit as of the date of this Entry. *Steidinger v. Blackstone Medical Servs.*, No. 25-2398 (7th Cir. Aug. 12, 2025).

curb these abuses, the TCPA created private causes of action. *Section 227(c)(5)* provides:

> A person who has received more than one *telephone call* within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection **[*5]** may . . . bring [an action] in an appropriate court of that State . . . . to enjoin such violation . . . for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater, or . . . both such actions.

*47 U.S.C. § 227(c)(5)* (emphasis added). One of the TCPA's implementing regulations further provides that "[n]o person or entity shall initiate any telephone solicitation to . . . [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry." *47 C.F.R. § 64.1200(c)(2).*

*Section 227(c)(5)* does not define "telephone call," so the Court must independently determine its meaning. *McLaughlin, 606 U.S. at 155*. In making that determination, the Court must begin with the statutory text. *Jimenez v. Quarterman, 555 U.S. 113, 118, 129 S. Ct. 681, 172 L. Ed. 2d 475 (2009)* ("As with any question of statutory interpretation, our analysis begins with the plain language of the statute."). "Unless words are otherwise defined, they 'will be interpreted as taking their ordinary, contemporary, common meaning.'" *United States v. Melvin, 948 F.3d 848, 852 (7th Cir. 2020)* (quoting *Sandifer v. U.S. Steel Corp., 571 U.S. 220, 227, 134 S. Ct. 870, 187 L. Ed. 2d 729 (2014)*). As Defendant points out, text messaging did not exist when the TCPA was enacted in 1991, so "telephone call" would not have included text messages. *See id.* ("We find words' ordinary, contemporary, common meaning by looking at what they meant **[*6]** when the statute was enacted."); *Dilanyan v. Hugo Boss Fashions,*

*Inc., No. 25-cv-5092, 2025 U.S. Dist. LEXIS 254358, 2025 WL 3549868, at *2 (C.D. Cal. Dec. 3, 2025)*; *Jones v. Blackstone Med. Servs., LLC, 792 F. Supp. 3d 894, 899 (C.D. Ill. July 21, 2025)*. Likewise, the 1990 edition of Webster's Dictionary defined "call" as "the act of calling on the telephone," and defined "telephone" as "an instrument for reproducing *sounds* at a distance." Merriam-Webster New Collegiate Dictionary (9th ed. 1990) (emphasis added). *Loper Bright, 603 U.S. at 400* ("[E]very statute's meaning is fixed at the time of enactment." (quoting *Wis. Cent. Ltd. v. United States, 585 U.S. 274, 284, 138 S. Ct. 2067, 201 L. Ed. 2d 490 (2018)* (emphasis deleted))). A plain reading of *§ 227(c)(5)* therefore supports Defendant's position that under *§ 227(c)(5)*, "telephone call" does not mean text messages. *See West v. Hoy, 126 F.4th 567, 575 (7th Cir. 2025)* (stating a court's "inquiry begins with the statutory text, and ends there as well if the text is unambiguous.") (quoting *BedRoc Ltd., LLC v. United States, 541 U.S. 176, 183, 124 S. Ct. 1587, 158 L. Ed. 2d 338 (2004)*); *Melvin, 948 F.3d at 852* ("If the statutory language's plain meaning is unambiguous, [the court's] inquiry ends there.").

Richards argues that even though text messaging had not yet been invented, the "ordinary, contemporary, common meaning" of the word "call" in 1991 was broader than Defendant suggests and instead means "'to communicate with or try to get into communication with a person by a telephone.'" (Filing No. 35 at 14 (quoting *Satterfield v. Simon & Schuster, Inc., 569 F.3d 946, 953-54 & n.3 (9th Cir. 2009)*)).[2] Richards is correct that

---

[2] The Ninth Circuit's decision in *Satterfield* is inapposite for three reasons. First, *Satterfield* adjudicated claims under *§ 227(b)*, not *§ (c)*. Second, the Ninth Circuit sourced its definition of "call" from the 2002 edition of Webster's Dictionary, rather than a 1990s edition contemporary with the TCPA's enactment. And third, the *Satterfield* court did not find that the 2002 dictionary definition unambiguously showed that

the nonexistence of text messaging in 1991 is not necessarily dispositive; "[w]hile every statute's *meaning* is **[\*7]** fixed at the time of enactment, new *applications* may arise in light of changes in the world." *Wis. Central Ltd., 585 U.S. at 284* (explaining, for example, that although "money" may always mean "medium of exchange," "what qualifies as a 'medium of exchange' may depend on the facts of the day"). However, "telephone calls" (as of 1991) and text messages are different in several important ways. *In re Erickson, 815 F.2d 1090, 1092 (7th Cir. 1987)* ("A statutory word of description does not designate a particular item . . . but a class of things that share some important feature."). Most notably, telephone calls involve the use of sounds and a voice. *See Telephone*, Merriam-Webster New Collegiate Dictionary (9th ed. 1990). And a text message does not require that a person pick up a call, listen to a voice, or tie up their phone's line. *Cf. Facebook, Inc. v. Duguid, 592 U.S. 395, 399, 141 S. Ct. 1163, 209 L. Ed. 2d 272 (2021)* ("Congress found autodialer technology . . . threatened public safety by 'seizing the telephone lines of public emergency services, dangerously preventing those lines from being utilized to receive calls from those needing emergency services.' Indeed . . .autodialers could simultaneously tie up all the lines of any business with sequentially numbered phone lines. Nor were individual consumers spared: Autodialers could reach cell phones, **[\*8]** pagers, and unlisted numbers, inconveniencing consumers and imposing unwanted fees." (citation omitted)). As such, this Court finds that text messages do not present the same type of nuisance that phone calls do and concludes that a text message is not merely a "new application" of *§ 227(c)(5)*. *Wis. Central Ltd.,*

*585 U.S. at 284*.

Another textual clue confirms that "telephone call" does not mean text message—namely, *§ 227(c)*'s use of "telephone call" to describe a right of action but "telephone solicitations" to describe an affirmative defense. *47 U.S.C. § 227(c)(5)*. The TCPA defines "telephone solicitation" for purposes of *§ 227* as "the initiation of a telephone call *or* message,"[3] indicating that "telephone call" does not also include "message[s]." *§ 227(a)(4)* (emphasis added). If "telephone call" already included "calls and messages," then the TCPA's definition of "telephone solicitation" would be redundant. "If an interpretation of one provision 'would render another provision superfluous, courts presume that interpretation is incorrect.'" *Castañon-Nava v. U.S. Dep't of Homeland Sec., 161 F.4th 1048, 1061 (7th Cir. 2025)* (quoting *Bilski v. Kappos, 561 U.S. 593, 607-08, 130 S. Ct. 3218, 177 L. Ed. 2d 792 (2010)*); *see Radvansky v. 1-800-Flowers.com, Inc., No. 25-CV-2811, 2026 U.S. Dist. LEXIS 32415, 2026 WL 456919, at \*4 (N.D. Ga. Feb. 17, 2026)*; *Davis v. CVS Pharmacy, Inc., 797 F. Supp. 3d 1270, 1274 (N.D. Fla. 2025)* ("Congress's use of the phrase 'telephone call or message' in a neighboring provision only undermines [plaintiff's] position. It shows that Congress does not use the term 'telephone call' **[\*9]** to encompass all 'messages.'"); *Dilanyan, 2025 U.S. Dist. LEXIS 254358, 2025 WL 3549868, at \*2*.

In support of his position, Richards cites the TCPA's use of "call" in *§ 227(b)*. He explains that *§ 227(b)* prohibits the use of autodialers or robocallers to make "calls" to pagers, which

---

*§ 227(b)* applies to text messages. Rather, the Court held that *§ 227(b)* applies to text messages because the *FCC's interpretation* of *§ 227(b)* was *consistent* with the 2002 dictionary's definition. Courts may no longer rely on the FCC's interpretation in this way.

---

[3] The Court is not presently deciding whether "message" as used in the definition of "telephone solicitation" in *§ 227* includes text messages. The definition of "telephone solicitation" serves only to show that the phrase "telephone call" is limited to live/voice calls, and does not also include "messages."

display written text. *47 U.S.C. § 227(b)(1)(A)(iii)*. The prohibition on "calls" to pagers, Richards contends, confirms that Congress understood "calls" to include both voice calls and text-based messages (Filing No. 35 at 8-9, 15). However, the fact that Congress expressly included calls to pagers in *§ 227(b)* only evidences Congress's intent to omit pagers—and their modern analogs (Filing No. 35 at 8)—from *§ 227(c)*. Richards offers no evidence that as of 1991, Congress considered "telephone calls" to be the same as calls to pagers.

Richards further argues that *§ 227(e)*'s reference to text messaging "reinforces that texts *are* calls in the lexicon of the TCPA" because it identifies the senders of text messages as "callers." (Filing No. 35 at 28 (emphasis in original)). In 2018, Congress amended *§ 227(e)*—which prohibits "spoofing" phone numbers on caller ID—to include "call[s] made using a voice service or a text message sent using a text messaging service." *See Consolidated Appropriations Act, 2018, H.R. 1625, 115th Cong., Pub. L. No. 115-141, div. P, § 503(a)* (2018) (codified at *47 U.S.C. § 227(e)*). Defendant responds that the explicit reference to text messages **[*10]** in *§ 227(e)* only highlights the term's absence from *§ 227(c)*. The Court again agrees with Defendant. The reference to text messages in *§ 227(e)* shows that if Congress had wanted *§ 227(c)* to apply to text messages, it knew how to say so. *See Dilanyan, 2025 U.S. Dist. LEXIS 254358, 2025 WL 3549868, at *2* ("That Congress updated *§ 227(e)* to include text messages in addition to calls, but has not similarly amended *§ 227(c)(5)*, suggests that Congress views a text message as a distinct form of communication to which *§ 227(c)(5)*'s private right of action does not apply.").

Congress highlighted the distinction between *§§ 227(b)* and *(e)*, which do include text messages, and *§ 227(c)*, which does not, in

2019 when it enacted two TCPA reporting provisions: *§§ 227(h)* and *(i)*. The *Pallone-Thune Telephone Robocall Abuse Criminal Enforcement and Deterrence Act, PL 116-105, Dec. 30, 2019, 133 Stat 3274* (2019). *Section 227(h)* requires the Federal Trade Commission ("FTC") to submit an annual report to Congress regarding consumer complaints and the enforcement of "calls made" in violation of *§§ 227(b)*, *(c)*, and *(e)*. *Section 227(i)*, by contrast, requires the FTC to prescribe regulations to facilitate the sharing of information about "a call made *or a text message sent*" in violation of *§§ 227(b)* or *(e)*. *47 U.S.C. § 227(i)(1)* (emphasis added). Importantly, these statutory subsections make no mention of a text message sent in violation of *§ 227(c)*.

Richards also asks the Court to rely on a 2003 FCC order stating that text messages are telephone calls under the **[*11]** TCPA, asserting that *Loper Bright* permits such reliance because Congress expressly delegated to the FCC the authority "to give meaning to a particular statutory term" and to "fill up the details of [the] statutory scheme." *Loper Bright, 603 U.S. at 395* (citation modified); (Filing No. 35 at 29-31). Other district courts have addressed and rejected this same argument. This Court agrees with their reasoning:

> Determining whether "telephone call" in *§ 227(c)(5)* includes text messages would likely more than double the number of private causes of action authorized by the TCPA. Doubling the scope of the provision is not "filling up the details." In actuality, *§ 227(c)(1)(E)* may run afoul of the nondelegation doctrine, since there are no delimitations on the discretion it grants the Commission. . . . we [thus] reject Plaintiff's request that we use *§ 227(c)(1)(E)* to resurrect *Chevron* out of the grave. *§ 227(c)(1)(E)* does not require this Court to

defer to the Commission's interpretation of *§ 227(c)(5)*.

*McGonigle v. Pure Green Franchise Corp., No. 25-61164-CIV, 2026 U.S. Dist. LEXIS 8059, 2026 WL 111338, at *2 (S.D. Fla. Jan. 15, 2026)*; *see Radvansky, 2026 U.S. Dist. LEXIS 32415, 2026 WL 456919, at *4* (adopting same reasoning).

Lastly, Richards argues that his position better serves the TCPA's purpose of protecting the privacy rights of residential telephone subscribers (Filing No. 35 at 7). However, Defendant correctly responds that policy considerations do not permit courts to stray from **[*12]** the best reading of a statute, as written. (Filing No. 36 at 12-13); *Facebook, 592 U.S. at 409* ("[Plaintiff's] quarrel is with Congress, which did not define [the term at issue] as malleably as he would have liked. 'Senescent'[4] as a number generator (and perhaps the TCPA itself) may be, that is no justification for eschewing the best reading of [the statute]."); *see also Wis. Central Ltd., 585 U.S. at 284* ("Congress alone has the institutional competence, democratic legitimacy, and (most importantly) constitutional authority to revise statutes in light of new social problems and preferences. Until it exercises that power, the people may rely on the original meaning of the written law.").

This Court, like many others, finds that Richards' reading of *§ 227(c)* "is an eminently reasonable one, . . . . Nevertheless, '[i]n the business of statutory interpretation, if [an interpretation] is not the best, it is not permissible.' The 'ordinary' principle of statutory interpretation — to start with the text of the statute to ascertain its plain meaning — provides the answer. It is not for a court to

legislate by reading into the TCPA something that is not there." *Jones, 792 F. Supp. 3d at 901* (quoting *Loper Bright, 603 U.S. at 392, 400*). "It is for Congress to respond to the issues presented in this case and to address **[*13]** the realities of today's technology (and the intrusions caused therefrom) which is commonplace in American life in 202[6]. The Court confines itself to its assigned role which does not include legislating." *Id.*; *see Stockdale v. Skymount Prop. Grp., LLC, No. 25 CV 1282, 2026 U.S. Dist. LEXIS 42954, 2026 WL 591842, at *4 (N.D. Ohio Mar. 3, 2026)* ("[I]t is for Congress—not this Court—to fill those gaps in the wake of *Chevron*'s reversal.").

Because the Court conclude that "telephone call" under *§ 227(c)(5) of the TCPA* does not include text messages, Richards fails to state a claim, and this action must be dismissed.

## IV. CONCLUSION

For the reasons explained above, Defendant's Motion to Dismiss (Filing No. 16) is **GRANTED**. Richards' claims are **dismissed without prejudice**.[5] Richards is granted leave of **fourteen (14) days** from the date of this Order to file an amended complaint, if such filing would not be futile. If nothing is filed within that time, the Motion to Dismiss will be converted to a dismissal with prejudice, and final judgment will issue.

**SO ORDERED**.

Date: 3/26/2026

/s/ Tanya Walton Pratt

---

[4] "'[S]enescent technology,' *i.e.*, one likely to become outdated quickly." *Facebook, 592 U.S. at 396-97*.

[5] "[A] plaintiff whose original complaint has been dismissed under *Rule 12(b)(6)* should be given at least one opportunity to try to amend her complaint before the entire action is dismissed . . . [unless] amendment would be futile or otherwise unwarranted." *Runnion v. Girl Scouts of Greater Chi. & Nw. Ind., 786 F.3d 510, 519, 520 (7th Cir. 2015)*.

2026 U.S. Dist. LEXIS 65697, *13

Hon. Tanya Walton Pratt, Judge

United States District Court

Southern District of Indiana

---

**End of Document**

# EXHIBIT 3

# *Richards v. Fashion Nova, LLC*

United States District Court for the Southern District of Indiana, Indianapolis Division

March 26, 2026, Decided; March 26, 2026, Filed

No. 1:25-cv-01145-TWP-MKK

**Reporter**

2026 U.S. Dist. LEXIS 65696 *; 2026 LX 189113

WARREN RICHARDS on behalf of himself and others similarly situated, Plaintiff, v. FASHION NOVA, LLC, Defendant.

**Prior History:** *Richards v. Fashion Nova, LLC, 807 F. Supp. 3d 861, 2025 U.S. Dist. LEXIS 223913, 2025 WL 3167069 (Oct. 24, 2025)*

**Counsel:  [*1]** For WARREN RICHARDS, on behalf of himself and others similarly situated, Plaintiff: Anthony Paronich, PARONICH LAW. P.C., Hingham, MA; Jessica Garland, PRO HAC VICE, Gupta Wessler LLP, Washington, DC.

For FASHION NOVA, LLC, Defendant: David M. Krueger, Benesch Friedlander Coplan & Aronoff, Cleveland, OH; Mark S. Eisen, PRO HAC VICE, Benesch Friedlander Coplan & Aronoff LLP, Chicago, IL.

**Judges:** Hon. Tanya Walton Pratt, United States District Judge.

**Opinion by:** Tanya Walton Pratt

# Opinion

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

This matter is before the Court on Defendant Fashion Nova, LLC's ("Defendant"), Motion to Dismiss filed pursuant to *Federal Rule of Civil Procedure 12(b)(6)* (Filing No. 15). Plaintiff Warren Richards ("Richards") initiated this putative class action against Defendant under *47 U.S.C. § 227(c)(5) of the Telephone Consumer Protection Act ("TCPA")* after receiving unsolicited text messages from Defendant, despite his cell phone number being on the national "Do Not Call" Registry. Defendant moves to dismiss Richards' Complaint on the premise that a text message is not a "telephone call" for purposes of establishing a violation of *§ 227(c)(5)*. For the reasons explained below, Defendant's Motion to Dismiss is **granted**.

## I. BACKGROUND

The following facts are not necessarily objectively true, but as required when reviewing **[*2]** a motion to dismiss, the Court accepts as true all factual allegations in the complaint and draws all inferences in favor of Richards as the non-moving party. *See Bielanski v. Cnty. of Kane, 550 F.3d 632, 633 (7th Cir. 2008)*.

Richards registered his cell phone number on the Do Not Call Registry on March 25, 2025 (Filing No. 1 ¶ 15). In May and June 2025, Defendant sent marketing text messages to Richards' cell phone number without his consent. *Id.* ¶¶ 16-22. Richards now brings suit under *§ 227(c)(5) of the TCPA*, which, in short, creates a private right of action for persons who have received more than one unsolicited "telephone call" within a 12-month period. Defendant moves to dismiss Richards' claims, arguing solely that a text message is not a "telephone call," so Richards has no claim

2026 U.S. Dist. LEXIS 65696, *2

under *§ 227(c)(5)*. The parties have fully briefed the Motion to Dismiss and filed several notices of supplemental authority, and the parties presented oral argument on March 10, 2026 (Filing No. 60). The Motion is now ripe for the Court's review.

## II. LEGAL STANDARD

*Federal Rule of Civil Procedure 12(b)(6)* allows a defendant to move to dismiss a complaint that has failed to "state a claim upon which relief can be granted." *Fed. R. Civ. P. 12(b)(6)*. When deciding a motion to dismiss under *Rule 12(b)(6)*, the Court accepts as true all factual allegations in the complaint and **[*3]** draws all inferences in favor of the plaintiff. *Bielanski, 550 F.3d at 633*. However, courts "are not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon, 287 F.3d 656, 658 (7th Cir. 2002)*.

The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Fed. R. Civ. P. 8(a)(2)*. In *Bell Atlantic Corp. v. Twombly*, the Supreme Court explained that the complaint must allege facts that are "enough to raise a right to relief above the speculative level." *550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)*. Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Id.*; *see also Bissessur v. Ind. Univ. Bd. of Trs., 581 F.3d 599, 603 (7th Cir. 2009)* ("it is not enough to give a threadbare recitation of the elements of a claim without factual support"). The allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly, 550 U.S. at 555*. Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co., 556 F.3d 575, 580 (7th Cir. 2009)* (citation

modified). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)* (citing *Twombly, 550 U.S. at 556*).

## III. DISCUSSION

This case turns **[*4]** on a single issue: whether a text message is a "telephone call" under *§ 227(c)(5) of the TCPA*. Richards argues it is, and Defendant argues it is not. For many years, most courts assumed that a text message is a "telephone call" because the Federal Communications Commission ("FCC") said so, and the FCC was entitled to deference. But in *Loper Bright Enterprises v. Raimondo, 603 U.S. 369, 144 S. Ct. 2244, 219 L. Ed. 2d 832 (2024)*, the United States Supreme Court held that courts may not defer to agencies to interpret ambiguous statutes, and in *McLaughlin Chiropractic Associates, Inc. v. McKesson Corp., 606 U.S. 146, 145 S. Ct. 2006, 222 L. Ed. 2d 405 (2025)*, the Supreme Court further held that courts are not bound by the FCC's interpretation of the TCPA. These two decisions prompted a flood of lawsuits seeking judicial interpretations of "telephone call" under *§ 227(c)(5)*. The results are split, and the Seventh Circuit has not yet resolved this issue.[1] Both parties' positions are supported by persuasive arguments and authority, but ultimately, the Court agrees with Defendant.

"Voluminous consumer complaints about abuses of telephone technology . . . prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368, 370-71, 132 S.*

---

[1] This issue is pending before the Seventh Circuit as of the date of this Entry. *Steidinger v. Blackstone Medical Servs.*, No. 25-2398 (7th Cir. Aug. 12, 2025).

*Ct. 740, 181 L. Ed. 2d 881 (2012)*. To help curb these abuses, in 1991, the TCPA created private causes of action. *Section 227(c)(5)* provides:

> A person who has received more than one *telephone call* within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed **[*5]** under this subsection may . . . bring [an action] in an appropriate court of that State . . . . to enjoin such violation . . . for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater, or . . . both such actions.

*47 U.S.C. § 227(c)(5)* (emphasis added). One of the TCPA's implementing regulations further provides that "[n]o person or entity shall initiate any telephone solicitation to . . . [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry." *47 C.F.R. § 64.1200(c)(2).*

*Section 227(c)(5)* does not define "telephone call," so the Court must independently determine its meaning. *McLaughlin, 606 U.S. at 155*. In making that determination, the Court must begin with the statutory text. *Jimenez v. Quarterman, 555 U.S. 113, 118, 129 S. Ct. 681, 172 L. Ed. 2d 475 (2009)* ("As with any question of statutory interpretation, our analysis begins with the plain language of the statute."). "Unless words are otherwise defined, they 'will be interpreted as taking their ordinary, contemporary, common meaning.'" *United States v. Melvin, 948 F.3d 848, 852 (7th Cir. 2020)* (quoting *Sandifer v. U.S. Steel Corp., 571 U.S. 220, 227, 134 S. Ct. 870, 187 L. Ed. 2d 729 (2014)*). As Defendant points out, text messaging did not exist when the TCPA was enacted in 1991, so "telephone call" would not have included text messages. *See id.* ("We find words' ordinary, contemporary, common meaning by **[*6]**

looking at what they meant when the statute was enacted."); *Dilanyan v. Hugo Boss Fashions, Inc., No. 25-cv-5092, 2025 U.S. Dist. LEXIS 254358, 2025 WL 3549868, at *2 (C.D. Cal. Dec. 3, 2025)*; *Jones v. Blackstone Med. Servs., LLC, 792 F. Supp. 3d 894, 899 (C.D. Ill. July 21, 2025)*. Likewise, the 1990 edition of Webster's Dictionary defined "call" as "the act of calling on the telephone," and defined "telephone" as "an instrument for reproducing *sounds* at a distance." Merriam-Webster New Collegiate Dictionary (9th ed. 1990) (emphasis added). *Loper Bright, 603 U.S. at 400* ("[E]very statute's meaning is fixed at the time of enactment." (quoting *Wis. Cent. Ltd. v. United States, 585 U.S. 274, 284, 138 S. Ct. 2067, 201 L. Ed. 2d 490 (2018)* (emphasis deleted))). A plain reading of *§ 227(c)(5)* therefore supports Defendant's position that under a plain reading of *§ 227(c)(5)*, "telephone call" does not mean text messages. *See West v. Hoy, 126 F.4th 567, 575 (7th Cir. 2025)* (stating a court's "inquiry begins with the statutory text, and ends there as well if the text is unambiguous.") (quoting *BedRoc Ltd., LLC v. United States, 541 U.S. 176, 183, 124 S. Ct. 1587, 158 L. Ed. 2d 338 (2004)*); *Melvin, 948 F.3d at 852* ("If the statutory language's plain meaning is unambiguous, [the court's] inquiry ends there.").

Richards argues that even though text messaging had not yet been invented, the "ordinary, contemporary, common meaning" of the word "call" in 1991 was broader than Defendant suggests and instead means "'to communicate with or try to get into communication with a person by a telephone.'" (Filing No. 31 at 11 (quoting *Satterfield v. Simon & Schuster, Inc., 569 F.3d 946, 953-54 & n.3 (9th Cir. 2009)*)).[2] Richards is correct that

---

[2] The Ninth Circuit's decision in *Satterfield* is inapposite for three reasons. First, *Satterfield* adjudicated claims under *§ 227(b)*, not *§ (c)*. Second, the Ninth Circuit sourced its

the nonexistence of text messaging in 1991 is not necessarily dispositive; **[\*7]** "[w]hile every statute's *meaning* is fixed at the time of enactment, new *applications* may arise in light of changes in the world." *Wis. Central Ltd., 585 U.S. at 284* (explaining, for example, that although "money" may always mean "medium of exchange," "what qualifies as a 'medium of exchange' may depend on the facts of the day"). However, "telephone calls" (as of 1991) and text messages are different in several important ways. *In re Erickson, 815 F.2d 1090, 1092 (7th Cir. 1987)* ("A statutory word of description does not designate a particular item . . . but a class of things that share some important feature."). Most notably, telephone calls involve the use of sounds and a voice. *See Telephone,* Merriam-Webster New Collegiate Dictionary (9th ed. 1990). And a text message does not require that a person pick up a call, listen to a voice, or tie up their phone's line. *Cf. Facebook, Inc. v. Duguid, 592 U.S. 395, 399, 141 S. Ct. 1163, 209 L. Ed. 2d 272 (2021)* ("Congress found autodialer technology . . . threatened public safety by 'seizing the telephone lines of public emergency services, dangerously preventing those lines from being utilized to receive calls from those needing emergency services.' Indeed . . .autodialers could simultaneously tie up all the lines of any business with sequentially numbered phone lines. Nor were individual consumers spared: **[\*8]** Autodialers could reach cell phones, pagers, and unlisted numbers, inconveniencing consumers and imposing unwanted fees." (citation omitted)). As such, this Court finds that text messages

do not present the same type of nuisance that phone calls do and concludes that a text message is not merely a "new application" of *§ 227(c)(5)*. *Wis. Central Ltd., 585 U.S. at 284*.

Another textual clue confirms that "telephone call" does not mean text message—namely, *§ 227(c)*'s use of "telephone call" to describe a right of action but "telephone solicitations" to describe an affirmative defense. *47 U.S.C. § 227(c)(5)*. The TCPA defines "telephone solicitation" for purposes of *§ 227* as "the initiation of a telephone call *or* message,"[3] indicating that "telephone call" does not also include "telephone message[s]." *§ 227(a)(4)* (emphasis added). If "telephone call" already included "calls and messages," then the TCPA's definition of "telephone solicitation" would be redundant. "If an interpretation of one provision 'would render another provision superfluous, courts presume that interpretation is incorrect.'" *Castañon-Nava v. U.S. Dep't of Homeland Sec., 161 F.4th 1048, 1061 (7th Cir. 2025)* (quoting *Bilski v. Kappos, 561 U.S. 593, 607-08, 130 S. Ct. 3218, 177 L. Ed. 2d 792 (2010)*); *see Radvansky v. 1-800-Flowers.com, Inc., No. 25-CV-2811, 2026 U.S. Dist. LEXIS 32415, 2026 WL 456919, at \*4 (N.D. Ga. Feb. 17, 2026)*; *Davis v. CVS Pharmacy, Inc., 797 F. Supp. 3d 1270, 1274 (N.D. Fla. 2025)* ("Congress's use of the phrase 'telephone call or message' in a neighboring provision only undermines [plaintiff's] position. It shows that **[\*9]** Congress does not use the term 'telephone call' to encompass all 'messages.'"); *Dilanyan, 2025 U.S. Dist. LEXIS 254358, 2025 WL 354686, at \*2*.

In support of his position, Richards cites the

---

definition of "call" from the 2002 edition of Webster's Dictionary, rather than a 1990s edition contemporary with the TCPA's enactment. And third, the *Satterfield* court did not find that the 2002 dictionary definition unambiguously showed that *§ 227(b)* applies to text messages. Rather, the Court held that *§ 227(b)* applies to text messages because the *FCC's interpretation* of *§ 227(b)* was *consistent* with the 2002 dictionary's definition. Courts may no longer rely on the FCC's interpretation in this way.

---

[3] The Court is not presently deciding whether "message" as used in the definition of "telephone solicitation" in *§ 227* includes text messages. The definition of "telephone solicitation" serves only to show that the phrase "telephone call" is limited to live/voice calls, and does not also include "messages."

TCPA's use of "call" in *§ 227(b)*. He explains that *§ 227(b)* prohibits the use of autodialers or robocallers to make "calls" to pagers, which display written text. *47 U.S.C. § 227(b)(1)(A)(iii)*. The prohibition on "calls" to pagers, Richards contends, confirms that Congress understood "calls" to include both voice calls and text-based messages (Filing No. 31 at 13). However, the fact that Congress expressly included calls to pagers in *§ 227(b)* only evidences Congress's intent to omit pagers—and their modern analogs (Filing No. 31 at 7)—from *§ 227(c)*. Richards offers no evidence that as of 1991, Congress considered "telephone calls" to be the same as calls to pagers.

Richards further argues that *§ 227(e)*'s reference to text messaging "reinforces that texts *are* calls in the lexicon of the TCPA" because it identifies the senders of text messages as "callers." (Filing No. 31 at 23 (emphasis in original)). In 2018, Congress amended *§ 227(e)*—which prohibits "spoofing" phone numbers on caller ID—to include "call[s] made using a voice service or a text message sent using a text messaging service." *See Consolidated Appropriations Act, 2018, H.R. 1625, 115th Cong., Pub. L. No. 115-141, div. P, § 503(a)* (2018) (codified at *47 U.S.C. § 227(e)*). Defendant responds **[*10]** that the explicit reference to text messages in *§ 227(e)* only highlights the term's absence from *§ 227(c)*. The Court again agrees with Defendant. The reference to text messages in *§ 227(e)* shows that if Congress had wanted *§ 227(c)* to apply to text messages, it knew how to say so. *See Dilanyan, 2025 U.S. Dist. LEXIS 254358, 2025 WL 3549868, at *2* ("That Congress updated *§ 227(e)* to include text messages in addition to calls, but has not similarly amended *§ 227(c)(5)*, suggests that Congress views a text message as a distinct form of communication to which *§ 227(c)(5)*'s private right of action does not apply.").

Congress highlighted the distinction between *§§ 227(b)* and *(e)*, which do include text messages, and *§ 227(c)*, which does not, in 2019 when it enacted two TCPA reporting provisions: *§§ 227(h)* and *(i)*. The *Pallone-Thune Telephone Robocall Abuse Criminal Enforcement and Deterrence Act, PL 116-105, Dec. 30, 2019, 133 Stat 3274* (2019). *Section 227(h)* requires the Federal Trade Commission ("FTC") to submit an annual report to Congress regarding consumer complaints and the enforcement of "calls made" in violation of *§§ 227(b)*, *(c)*, and *(e)*. *Section 227(i)*, by contrast, requires the FTC to prescribe regulations to facilitate the sharing of information about "a call made *or a text message sent*" in violation of *§§ 227(b)* or *(e)*. *47 U.S.C. § 227(i)(1)* (emphasis added). Importantly, these statutory subsections make no mention of a text message sent in violation of *§ 227(c)*.

Richards also asks the Court to rely on a 2003 FCC order stating that **[*11]** text messages are telephone calls under the TCPA, asserting that *Loper Bright* permits such reliance because Congress expressly delegated to the FCC the authority "to give meaning to a particular statutory term" and to "fill up the details of [the] statutory scheme." *Loper Bright, 603 U.S. at 395* (citation modified); (Filing No. 31 at 28-30). Other district courts have addressed and rejected this same argument. This Court agrees with their reasoning:

> Determining whether "telephone call" in *§ 227(c)(5)* includes text messages would likely more than double the number of private causes of action authorized by the TCPA. Doubling the scope of the provision is not "filling up the details." In actuality, *§ 227(c)(1)(E)* may run afoul of the nondelegation doctrine, since there are no delimitations on the discretion it grants the Commission. . . . we [thus] reject Plaintiff's request that we use *§ 227(c)(1)(E)* to

resurrect *Chevron* out of the grave. *§ 227(c)(1)(E)* does not require this Court to defer to the Commission's interpretation of *§ 227(c)(5)*.

*McGonigle v. Pure Green Franchise Corp., No. 25-61164-CIV, 2026 U.S. Dist. LEXIS 8059, 2026 WL 111338, at \*2 (S.D. Fla. Jan. 15, 2026)*; *see Radvansky, 2026 U.S. Dist. LEXIS 32415, 2026 WL 456919, at \*4* (adopting same reasoning).

Lastly, Richards argues that his position better serves the TCPA's purpose of protecting the privacy rights of residential telephone subscribers (Filing No. 31 at 6). However, Defendant correctly responds that policy considerations **[\*12]** do not permit courts to stray from the best reading of a statute, as written. (Filing No. 38 at 13-14); *Facebook, 592 U.S. at 409* ("[Plaintiff's] quarrel is with Congress, which did not define [the term at issue] as malleably as he would have liked. 'Senescent'4 as a number generator (and perhaps the TCPA itself) may be, that is no justification for eschewing the best reading of [the statute]."); *see also Wis. Central Ltd., 585 U.S. at 284* ("Congress alone has the institutional competence, democratic legitimacy, and (most importantly) constitutional authority to revise statutes in light of new social problems and preferences. Until it exercises that power, the people may rely on the original meaning of the written law.").

This Court, like many others, finds that Richards' reading of *§ 227(c)* "is an eminently reasonable one, . . . . Nevertheless, '[i]n the business of statutory interpretation, if [an interpretation] is not the best, it is not permissible.' The 'ordinary' principle of statutory interpretation — to start with the text

of the statute to ascertain its plain meaning — provides the answer. It is not for a court to legislate by reading into the TCPA something that is not there." *Jones, 792 F. Supp. 3d at 901* (quoting *Loper Bright, 603 U.S. at 392, 400*). "It is for Congress to respond to the issues **[\*13]** presented in this case and to address the realities of today's technology (and the intrusions caused therefrom) which is commonplace in American life in 202[6]. The Court confines itself to its assigned role which does not include legislating." *Id.*; *see Stockdale v. Skymount Prop. Grp., LLC, No. 25 CV 1282, 2026 U.S. Dist. LEXIS 42954, 2026 WL 591842, at \*4 (N.D. Ohio Mar. 3, 2026)* ("[I]t is for Congress—not this Court—to fill those gaps in the wake of *Chevron*'s reversal.").

Because the Court conclude that "telephone call" under *§ 227(c)(5) of the TCPA* does not include text messages, Richards fails to state a claim, and Defendants motion to dismiss must be **granted**.

## IV. <u>CONCLUSION</u>

For the reasons explained above, Defendant's Motion to Dismiss (Filing No. 15) is **GRANTED**. Richards' claims are **dismissed without prejudice**.[5] Richards is granted leave of **fourteen (14) days** from the date of this Order to file an amended complaint, if such filing would not be futile. If nothing is filed within that time, the Motion to Dismiss will be converted to a dismissal with prejudice, and final judgment will issue.

## **SO ORDERED**.

---

[4] "'[S]enescent technology,' *i.e.*, one likely to become outdated quickly." *Facebook, 592 U.S. at 396-97*.

[5] "[A] plaintiff whose original complaint has been dismissed under *Rule 12(b)(6)* should be given at least one opportunity to try to amend her complaint before the entire action is dismissed . . . [unless] amendment would be futile or otherwise unwarranted." *Runnion v. Girl Scouts of Greater Chi. & Nw. Ind., 786 F.3d 510, 519, 520 (7th Cir. 2015)*.

2026 U.S. Dist. LEXIS 65696, *13

Date: 3/26/2026

/s/ Tanya Walton Pratt

Hon. Tanya Walton Pratt, Judge

United States District Court

Southern District of Indiana

---

**End of Document**

# EXHIBIT 4

## *Irvin v. Sonic Indus. Servs., LLC*

United States District Court for the Northern District of Georgia, Atlanta Division

April 20, 2026, Decided; April 20, 2026, Filed

CIVIL ACTION NO. 3:25-cv-00242-LMM

### Reporter

2026 U.S. Dist. LEXIS 90262 *; 2026 LX 273970; 2026 WL 1098403

JOE IRVIN, on behalf of himself and others similarly situated, Plaintiff, v. SONIC INDUSTRIES SERVICES, LLC, Defendant.

**Counsel:  [*1]** For Joe Irvin, on behalf of himself and others similarly situated, Plaintiff: Valerie Lorraine Chinn, LEAD ATTORNEY, Chinn Law Firm LLC, Atlanta, GA; Anthony I. Paronich, LEAD ATTORNEY, PRO HAC VICE, Paronich Law P.C., Hingham, MA.

For Sonic Industries Services LLC, Defendant: Nancy H. Baughan, Bradley Arant Boult Cummings, Atlanta, GA; Aaron Paul Heeringa, LEAD ATTORNEY, PRO HAC VICE, Manatt Phelps & Phillips LLP-IL, Chicago, IL; Spencer Matthew Stephens, Bradley Arant Boult Cummings LLP- ATL, Atlanta, GA.

**Judges:** Leigh Martin May, Chief United States District Judge.

**Opinion by:** Leigh Martin May

# Opinion

### ORDER

This case comes before the Court on Defendant's motion to dismiss, Dkt. No. [12], and Defendant's motion to dismiss Plaintiff's First Amended Complaint, Dkt. No. [16]. After due consideration, the Court enters the following Order.

### I. BACKGROUND

This action arises from telemarketing text messages Defendant Sonic Industries Services, LLC sent to Plaintiff Joe Irvin. Dkt. No. [1]. Plaintiff owns a telephone number he uses for personal purposes. Id. ¶¶ 17, 19. Plaintiff registered this phone number on the national Do Not Call ("DNC") registry in February of 2025. Id. ¶ 20. Nevertheless, Plaintiff has received at least **[*2]** twelve text messages from Defendant between August and October of 2025. Id. ¶ 22. The messages included Defendant's name, branding, and hyperlinks to Defendant's website. Id. ¶¶ 24-25. Plaintiff brings this putative class action, alleging that Defendant violated the Telephone Consumer Protection Act ("TCPA") by sending him text messages after he registered with the national DNC registry. Id. ¶¶ 43-44. Defendant now moves to dismiss Plaintiff's First Amended Complaint. Dkt. No. [16].

### II. LEGAL STANDARD

Under *Rule 8(a)(2) of the Federal Rules of Civil Procedure*, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Fed. R. Civ. P. 8(a)(2)*. While this pleading standard does not require "detailed factual allegations," the Supreme Court has held that "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)* (quoting *Bell Atl. Corp. v. Twombly, 550 U.S.*

*544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)*).

To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting *Twombly, 550 U.S. at 570*). A complaint is plausible on its face when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. (citing **[*3]** *Twombly, 550 U.S. at 556*).

At the motion-to-dismiss stage, "'all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff.'" *FindWhat Inv. Grp. v. FindWhat.com, 658 F.3d 1282, 1296 (11th Cir. 2011)* (quoting *Garfield v. NDC Health Corp., 466 F.3d 1255, 1261 (11th Cir. 2006)*). However, this principle does not apply to legal conclusions set forth in the complaint. *Iqbal, 556 U.S. at 678*. Nor will the Court "accept as true a legal conclusion couched as a factual allegation." *Twombly, 550 U.S. at 555*.

## III. DISCUSSION

Defendant moves to dismiss Plaintiff's First Amended Complaint, arguing that Plaintiff's sole claim fails for two reasons. Dkt. No. [16-1]. First, Defendant argues that Plaintiff cannot bring suit under *47 U.S.C. § 227(c)(5)* because that Section applies only to phone calls and not text messages. Id. at 7. Second, Defendant argues that, even if this Court were to conclude that *Section 227(c)* applies to text messages, Plaintiff still fails to plead a viable theory of TCPA liability. Id. at 14. Plaintiff opposes each of these arguments. Dkt. No. [17]. However, as explained below, the Court agrees with Defendant that *Section 227(c)(5)* does not apply to text messages.

As an initial matter, the Court notes that the Supreme Court's decision in *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp., 606 U.S. 146, 145 S. Ct. 2006, 222 L. Ed. 2d 405 (2025)*, is informative in interpreting the TCPA. In *McLaughlin*, the Supreme Court held that the Hobbs Act does not preclude district **[*4]** courts from disagreeing with the FCC's interpretations of the TCPA. *606 U.S. at 162*. Thus, in light of *McLaughlin*, this Court must independently—and without deference to the FCC's interpretation—evaluate Defendant's argument that the term "telephone call" excludes text messages.

The Court begins its analysis with the "plain language of the provision to be interpreted." *Pugliese v. Pukka Dev., Inc., 550 F.3d 1299, 1303 (11th Cir. 2008)* (citation modified). If the Court finds the text to be clear, the analysis ends there too. See *Young v. Grand Canyon Univ., Inc., 980 F.3d 814, 819 (11th Cir. 2020)*. Here, *Section 227(c)(5)* creates a private right of action for persons who "received more than one telephone call" in violation of the TCPA. *47 U.S.C. § 227(c)(5)*. As the only other district courts in the Eleventh Circuit to substantively address this question have noted, "the statutory text here is clear, and a text message is not a 'telephone call.'" See *Davis v. CVS Pharmacy, Inc., 797 F. Supp. 3d 1270, 1273 (N.D. Fla. 2025)* (citation modified); *Sayed v. Naturopathica Holistic Health, Inc., No. 8:25-CV-00847-SDM-CPT, 2025 U.S. Dist. LEXIS 209469, 2025 WL 2997759, at *2 (M.D. Fla. Oct. 24, 2025)* (quoting id.). Plaintiff argues against this conclusion for two reasons, which the Court will address in turn.

### 1. Definition of "Calls" Under *§ 227(c)(5)*

First, Plaintiff cites a broad swath of pre-*McLaughlin* authority to assert that "nearly every court to consider the question" has held that text messages are "calls" under *Section*

227(c)(5).[1] Dkt. No. [17] at 5. The authority Plaintiff cites does not support this assertion, either because the courts **[*5]** in those cases: (1) had no occasion to decide the issue; or (2) merely deferred to the FCC's position that the TCPA covers text messages—an approach subsequently rejected by the Supreme Court in *McLaughlin. 606 U.S. at 168*.

In the first category, Plaintiff cites cases wherein the issue of whether a text constitutes a "call" was not decided. Dkt. No. [17] at 5-6. For example, Plaintiff cites *Campbell-Ewald Co. v. Gomez, 577 U.S. 153, 136 S. Ct. 663, 193 L. Ed. 2d 571 (2016)*, for the proposition that a text message is included in the contemporary definition of the word "call." Id. But, as courts have previously noted, in that case the Supreme Court "assumed, but did not decide," that a text message falls into a broader prohibition of "any call" under *Section 227(b)* because the issue was not disputed. See *Davis, 797 F. Supp. 3d at 1273*; *Campbell-Ewald, 577 U.S. at 156*.[2] Similarly, Plaintiff relies on various circuit court decisions holding that unsolicited text messages constitute sufficient injury to confer Article III standing. Dkt. No. [17] at 5 (citing *Drazen v. Pinto, 74 F.4th 1336, 1346 (11th Cir. 2023)*);

---

[1] Plaintiff seemingly excludes from his measure of "nearly every court" the recent decisions in this Circuit holding to the contrary. See *Davis, 797 F. Supp. 3d at 1273* (holding that the phrase "telephone call" in *Section 227(c)(5)* does not encompass text messages); *Sayed, 2025 U.S. Dist. LEXIS 209469, 2025 WL 2997759, at *2* (holding the same).

[2] Plaintiff later cites *Barton v. Temescal Wellness, LLC, 525 F. Supp. 3d 195, 198-99 (D. Mass.)*, adhered to on denial of reconsideration, *541 F. Supp. 3d 138 (D. Mass. 2021)*, as support for reading the *Campbell-Ewald* Court's "assumption" that the TCPA applied to texts as black-letter law, rather than dicta. Dkt. No. [17] at 6. However, this reading is belied by the Court's later reference to Campbell-Ewald in Facebook, Inc. v. Duguid, where the Court again noted that neither party disputed whether the TCPA applied to texts, and therefore "assume[d] that it [did] without considering or resolving that issue." *592 U.S. 395, 400 n.2, 141 S. Ct. 1163, 209 L. Ed. 2d 272 (2021)*.

*Hall v. Smosh Dot Com, Inc., 72 F.4th 983, 986 (9th Cir. 2023)*; *Gadelhak v. AT&T Servs., Inc., 950 F.3d 458, 463 (7th Cir. 2020)*. However, in none of these decisions did the courts "interpret the statute at all[.]" *Davis, 797 F. Supp. 3d at 1273*.

In the second category, Plaintiff cites various authorities that rely on the FCC's interpretation of the TCPA as applying to text messages. Dkt. No. [17] **[*6]** at 6-7. Each was decided before the Supreme Court's decision in *McLaughlin*, and moreover, each deferred to the same 2003 FCC Order relating to *Section 227(b) of the TCPA*.[3] See *Ins. Mktg. Coal. Ltd. v. Fed. Commc'ns Comm'n, 127 F.4th 303, 307 n.2 (11th Cir. 2025)* ("We note that even though the statute on its face does not mention text messages, the FCC—by regulation—has interpreted the word 'call' to include text messages."); see also *Barton v. Temescal Wellness, LLC, 525 F. Supp. 3d 195, 199 (D. Mass.)*, adhered to on denial of reconsideration, *541 F. Supp. 3d 138 (D. Mass. 2021)* (construing *Barr v. Am. Ass'n of Pol. Consultants, Inc., 591 U.S. 610, 140 S. Ct. 2335, 207 L. Ed. 2d 784 (2020)*, as endorsing the FCC's 2003 Order as the "current applicable legal standard").[4] Thus, each of Plaintiff's cited authorities demonstrates deference to agency interpretation that the Supreme Court in

---

[3] See *In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991, 18 F.C.C. Rcd. 14014 (2003)*. In contrast, Plaintiff attempts to bring this putative class action under the TCPA's private right of action provision, *47 U.S.C. § 227(c)(5)*.

[4] It is worth noting that Justice Kavanaugh—who authored the Court's opinion in Barr—also authored the Court's opinion in *McLaughlin*. There, the Court expressly rejected the deference to agency interpretations exhibited earlier in Barr based on a 2003 FCC Order interpreting *Section 227(b)*'s prohibition on robocalls to encompass text messages. See *Barr, 591 U.S. at 615 n.1*; see also *McLaughlin, 606 U.S. at 168*. Thus, the Barton court's description of the 2003 FCC Order relied upon in *Barr* was accurate at that time, but no longer in light of *McLaughlin*.

*McLaughlin* expressly rejected after its decision in *Loper Bright Enters. v. Raimondo, 603 U.S. 369, 144 S. Ct. 2244, 219 L. Ed. 2d 832 (2024)*. See *McLaughlin, 606 U.S. at 155* ("District courts are not bound by the agency's interpretation, but instead must determine the meaning of the law under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation.").

The Court therefore rejects Plaintiff's reliance on pre-*McLaughlin* precedent to contend that the plain meaning of "telephone call" in *Section 227(c)(5)* includes text messages.

### 2. FCC's Authority to Prohibit Text Messages Under *§ 227(c)*

Plaintiff next contends through a host of arguments that the TCPA clearly delegates authority to the FCC to regulate and prohibit **[*7]** text messages through *Section 227(c)*'s DNC provisions. Dkt. No. [17] at 7-20. The Court addresses each in turn below.

First, Plaintiff argues that the "ordinary, contemporary, common meaning" of the word "call" in the context of the TCPA is "to communicate with or try to get into communication with a person by telephone." Id. (quoting *Satterfield v. Simon & Schuster, Inc., 569 F.3d 946, 953-54 & n.3 (9th Cir. 2009)*). This argument runs afoul of the Supreme Court's instruction in *Loper Bright* that a statute's meaning is "fixed at the time of enactment." *603 U.S. at 400*. And, as Defendant rightfully points out, various courts in this Circuit and others have concluded that, because text messaging was not an available technology in 1991 when the TCPA was enacted, the phrase "telephone call" would not have included text messages. Dkt. No. [16-1] at 8 (citing *Jones v. Blackstone Med. Servs., LLC, 792 F. Supp. 3d 894, 899 (C.D. Ill. 2025)*; *Davis, 797 F. Supp. 3d at 1273*; *Sayed, 2025*

*U.S. Dist. LEXIS 209469, 2025 WL 2997759, at *2*). In response, Plaintiff cites *New Prime Inc. v. Oliveira, 586 U.S. 105, 114, 139 S. Ct. 532, 202 L. Ed. 2d 536 (2019)*, as support for the proposition that "modern intuition doesn't always match evidence of a term's meaning at the time of [a statute's] enactment." Dkt. No. [17] at 14 (citation modified). But that case only undermines Plaintiff's position. See *New Prime Inc., 586 U.S. at 114* (concluding that the modern definition of "employment" did not align with evidence of the term's meaning at the time of the Federal Arbitration Act's adoption in 1925). Thus, the Court agrees with Defendant **[*8]** and prior decisions in this circuit that the statutory text here is clear: a text message is not a telephone call.

Second, Plaintiff argues that, because *Section 227(c)(1)* directed the FCC to protect residential telephone subscribers from "telephone solicitations"—defined in *Section 227(a)(4)* as "the initiation of a telephone call *or message* . . ."—*Section 227(c)(5)*'s private right of action must necessarily encompass claims for unsolicited text messages. Dkt. No. [17] at 10-11 (emphasis added). But, as each court to hear similar arguments in this Circuit has held, *Section 227(a)(4)* only undermines this argument, since it shows that Congress "does not use the term 'telephone call' to encompass all 'messages.'"[5] *Davis, 797 F. Supp. 3d at 1274*. Plaintiff contends that *Section 227(c)(5)* cannot be "read in isolation."

---

[5] Defendant argues that "message" as used in this subsection presumably referred to any "artificial or prerecorded voice message" delivered via telephone—as provided in *Section 227(d)(3)*. Dkt. No. [20] at 6-7. Unlike the phrase "text message(s)," these "messages" were expressly included in the original TCPA, and were an already-existing technology at the time of the TCPA's enactment. Id. Regardless of the correct meaning of "message," the canon against surplusage counsels against treating "telephone call" and "telephone call *or message*" the same where Congress saw fit to use the two distinct terms. *Radvansky, 2026 U.S. Dist. LEXIS 32415, 2026 WL 456919, at *3*.

Dkt. No. [17] at 11. But to hold otherwise would be to render Congress's use of the distinct terms "telephone call" and "telephone call or message" superfluous. *Radvansky v. 1-800-Flowers.com, Inc., No. 1:25-CV-2811-TWT, 2026 U.S. Dist. LEXIS 32415, 2026 WL 456919, at *3 (N.D. Ga. Feb. 17, 2026)* ("[C]onstruing these distinct phrases identically would render superfluous the different terms Congress chose to use in each subsection, a result which would violate the canon against surplusage.").

Third, Plaintiff argues that such a reading of the TCPA would leave consumers no statutory remedy to enforce *Section 227(c)*'s prohibitions, **[*9]** and that Congress would not have cabined *Section 227(c)(5)*'s scope "to *exclude* text messages by using a term that elsewhere in the statute *includes* them." Dkt. No. [17] at 12-15. As to the former of Plaintiff's arguments, the *Davis* court properly recognized that "Congress could reasonably conclude that unwanted telephone calls are more bothersome and intrusive than unwanted text messages, and it could provide broader protections against the former than the latter," and that, "[w]hatever its reasoning, it clearly limited the private right to those receiving 'telephone calls.'" *797 F. Supp. 3d at 1274.*[6]

And as to the latter, "the fact remains that *Section 227(c)(5) of the TCPA* includes 'telephone call' and does not mention text messages or SMS messages," and nowhere does the statute "define 'telephone call' to include text and/or SMS messages." *Jones, 792 F. Supp. 3d at 901.* While other jurisdictions may have read the term "call" to include text messages when used elsewhere in the TCPA, Plaintiff cites no post-*McLaughlin* binding authority supporting his contention that the term "telephone call" does the same when used in *Section 227(c)(5).* Dkt. No. [17] at 15.

Fourth, Plaintiff argues that, although "mere ambiguity" is no longer automatic cause **[*10]** to defer to agency interpretations after *Loper Bright*, *Section 227(c)* is an "express delegation of rulemaking discretion to the FCC." Dkt. No. [17] at 16. Specifically, Plaintiff asserts that Congress granted the FCC authority to "fill up the details" of the TCPA's DNC provisions by directing the agency to "develop proposed regulations . . . the Commission determines are most effective and efficient to accomplish the purposes of this section." Id.; *47 U.S.C. § 227(c)(1)(E).* Plaintiff next cites an entirely different provision of Title 47 of the U.S. Code as evidence of Congress expressly delegating authority for the FCC to "give meaning to a particular statutory term." Dkt. No. [17] at 17 (citing *47 U.S.C. § 332(a)(1)(A)* for the term "common carrier"). The Court observes that no such express delegation to define "telephone call" is evident anywhere in *Section 227(c)*—the subsection Plaintiff asserts his sole claim under. Moreover, Plaintiff's argument that *Section 227(c)(1)(E)* instructs the FCC to "fill up the

---

[6] In this vein, Plaintiff further asserts that *Section 227(c)(1)(D)* renders "immaterial" the recognized distinction between the phrase "telephone call *or message*" in *227(a)(4)* and "telephone call" standing alone in 227(c)(5). Dkt. No. [17] at 13 n.2. In Plaintiff's view, by directing the FCC to consider the need for additional restrictions on "telephone solicitations," including "*calls* exempted under" what is now *Section 227(a)(4)*, Congress must have intended the scope of this possible additional regulatory authority to "mirror" the definition of "telephone solicitation" and its exemptions—both of which encompass a "telephone call *or message*"—bringing us neatly back to the conclusion that text messages are covered by *Section 227(c)(5).* Id. This argument suffers from the same inattention to distinctions in statutory language *as that* present in the plaintiff's argument in *Davis, 797 F. Supp. 3d at 1274*; just as Congress *could* have chosen to create a private right of action for any person receiving a "telephone call *or message*" in *Section 227(c)(5)*, it similarly *could* have directed the FCC to

suggest further regulations on those "calls *or messages*" within the definition of "telephone solicitation" in *Section 227(c)(1)(D).* It chose to do neither, instead limiting the relevant language to "those *calls* exempted . . . ." *47 U.S.C. § 227(c)(1)(D).* And "when a statute uses one term in one place and a distinct term elsewhere," courts should presume that "the difference matters—that is, the distinct words have different meanings." *Davis, 797 F. Supp. 3d at 1274.*

details" of the TCPA's DNC provisions by defining "telephone call" is unavailing. As other courts to hear similar arguments have held, claiming authority to make such a determination under *Loper Bright* "would likely more than double the number of private causes of action authorized by the TCPA." *Radvansky, 2026 U.S. Dist. LEXIS 32415, 2026 WL 456919, at *4* (quoting *McGonigle v. Pure Green Franchise Corp., No. 25-61164-CIV, 2026 U.S. Dist. LEXIS 8059, 2026 WL 111338, at *2 (S.D. Fla. Jan. 15, 2026)*). That is not **[*11]** merely "filling up the details" of a statutory scheme.[7] Id.

Finally, Plaintiff contends that, if Congress expressly delegated to the FCC the authority to "fill up the details" of the TCPA's DNC provisions in *Section 227(c)(1)(E)*, then the proper standard of review is for "arbitrary and capricious" agency action—not *de novo*. Dkt. No. [17] at 18 (quoting *Seven Cnty. Infrastructure Coal. v. Eagle Cnty., 605 U.S. 168, 179-80, 145 S. Ct. 1497, 221 L. Ed. 2d 820 (2025)*). Again, however, the Court disagrees with Plaintiff's characterization of *Section 227(c)(1)(E)* as granting the FCC discretion to "fill up the details" of the DNC provisions by defining "telephone call." In cases "involving undefined or ambiguous terms . . .," the relevant inquiry is whether "Congress intended for the [agency] to have the power to interpret and define" such terms;

if not, the Court "cannot defer to the agency's interpretation but must resolve the ambiguity independently." *Sharma v. Peters, 756 F. Supp. 3d 1271, 1283 (M.D. Ala. 2024)* (citing *Loper Bright, 603 U.S. at 395*). Plaintiff insists that the FCC's clarification that text messages fall under the DNC provisions of the TCPA is "well within the bounds of permissible regulation." Dkt. No. [17] at 20. However, in doing so, Plaintiff advocates for exactly the type of deference to agency interpretation that the Supreme Court rejected in *Loper Bright. 603 U.S. at 400* ("It therefore makes no sense to speak of a 'permissible' **[*12]** interpretation that is not the one the court, after applying all relevant interpretive tools, concludes is best."). Thus, the Court declines to give any more respect to the FCC's interpretation of *Section 227(c)* than required under *Loper Bright* and *McLaughlin*.

The Court agrees with Defendant that Plaintiff's claim fails as a matter of law under Rule 12(b)(6) because *Section 227(c)(5)*'s private right of action is limited to "telephone call[s]," a term the Court finds does not encompass text messages, contrary to the FCC's interpretation in *47 C.F.R. § 64.1200(e)*. Therefore, the Court does not reach Defendant's separate and independent ground for dismissal—i.e., that Plaintiff fails to plead a viable TCPA liability theory.

## IV. CONCLUSION

In accordance with the foregoing, Defendant's motion to dismiss, Dkt. No. [16], is **GRANTED**, and this case is **DISMISSED**. Defendant's motion to dismiss Plaintiff's original complaint, Dkt. No. [12], is **DENIED as moot**. The Clerk is **DIRECTED** to close this case.

**IT IS SO ORDERED** this 20th day of April, 2026.

/s/ Leigh Martin May

---

[7] Indeed, Plaintiff's arguments fail to find footing in *Loper Bright*'s examples of express delegations of agency discretion to "fill up the details" of a statutory scheme. *Loper Bright, 603 U.S. at 395 n.6*. Neither of the Court's examples in *Loper Bright* nor *Section 227(c)(1)(E)* contains the type of explicit language necessary to recognize the separate and distinct category of agency discretion to "give meaning to a particular statutory term." See *Id. at 395 n.5* (finding such discretion pursuant only to language as specific as "as such terms are defined and delimited by regulations of the Secretary"). The Court finds Plaintiff's attempt to conflate the two types of delegations—by arguing that the FCC may "fill up the details" of *Section 227(c)* by "giving meaning" to "telephone call"—unpersuasive.

2026 U.S. Dist. LEXIS 90262, *12

**Leigh Martin May**

**Chief United States District Judge**

---

**End of Document**

# EXHIBIT 5

## *Irvin v. Sonic Indus. Servs., LLC*

United States District Court for the Northern District of Georgia, Atlanta Division

April 20, 2026, Decided; April 20, 2026, Filed

CIVIL ACTION NO. 3:25-cv-00242-LMM

**Reporter**
2026 U.S. Dist. LEXIS 90262 *; 2026 LX 273970; 2026 WL 1098403

JOE IRVIN, on behalf of himself and others similarly situated, Plaintiff, v. SONIC INDUSTRIES SERVICES, LLC, Defendant.

**Counsel: [*1]** For Joe Irvin, on behalf of himself and others similarly situated, Plaintiff: Valerie Lorraine Chinn, LEAD ATTORNEY, Chinn Law Firm LLC, Atlanta, GA; Anthony I. Paronich, LEAD ATTORNEY, PRO HAC VICE, Paronich Law P.C., Hingham, MA.

For Sonic Industries Services LLC, Defendant: Nancy H. Baughan, Bradley Arant Boult Cummings, Atlanta, GA; Aaron Paul Heeringa, LEAD ATTORNEY, PRO HAC VICE, Manatt Phelps & Phillips LLP-IL, Chicago, IL; Spencer Matthew Stephens, Bradley Arant Boult Cummings LLP- ATL, Atlanta, GA.

**Judges:** Leigh Martin May, Chief United States District Judge.

**Opinion by:** Leigh Martin May

# Opinion

## ORDER

This case comes before the Court on Defendant's motion to dismiss, Dkt. No. [12], and Defendant's motion to dismiss Plaintiff's First Amended Complaint, Dkt. No. [16]. After due consideration, the Court enters the following Order.

## I. BACKGROUND

This action arises from telemarketing text messages Defendant Sonic Industries Services, LLC sent to Plaintiff Joe Irvin. Dkt. No. [1]. Plaintiff owns a telephone number he uses for personal purposes. Id. ¶¶ 17, 19. Plaintiff registered this phone number on the national Do Not Call ("DNC") registry in February of 2025. Id. ¶ 20. Nevertheless, Plaintiff has received at least **[*2]** twelve text messages from Defendant between August and October of 2025. Id. ¶ 22. The messages included Defendant's name, branding, and hyperlinks to Defendant's website. Id. ¶¶ 24-25. Plaintiff brings this putative class action, alleging that Defendant violated the Telephone Consumer Protection Act ("TCPA") by sending him text messages after he registered with the national DNC registry. Id. ¶¶ 43-44. Defendant now moves to dismiss Plaintiff's First Amended Complaint. Dkt. No. [16].

## II. LEGAL STANDARD

Under *Rule 8(a)(2) of the Federal Rules of Civil Procedure*, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Fed. R. Civ. P. 8(a)(2)*. While this pleading standard does not require "detailed factual allegations," the Supreme Court has held that "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)* (quoting *Bell Atl. Corp. v. Twombly, 550 U.S.*

*544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)*).

To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting *Twombly, 550 U.S. at 570*). A complaint is plausible on its face when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. (citing **[*3]** *Twombly, 550 U.S. at 556*).

At the motion-to-dismiss stage, "'all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff.'" *FindWhat Inv. Grp. v. FindWhat.com, 658 F.3d 1282, 1296 (11th Cir. 2011)* (quoting *Garfield v. NDC Health Corp., 466 F.3d 1255, 1261 (11th Cir. 2006)*). However, this principle does not apply to legal conclusions set forth in the complaint. *Iqbal, 556 U.S. at 678*. Nor will the Court "accept as true a legal conclusion couched as a factual allegation." *Twombly, 550 U.S. at 555*.

## III. DISCUSSION

Defendant moves to dismiss Plaintiff's First Amended Complaint, arguing that Plaintiff's sole claim fails for two reasons. Dkt. No. [16-1]. First, Defendant argues that Plaintiff cannot bring suit under *47 U.S.C. § 227(c)(5)* because that Section applies only to phone calls and not text messages. Id. at 7. Second, Defendant argues that, even if this Court were to conclude that *Section 227(c)* applies to text messages, Plaintiff still fails to plead a viable theory of TCPA liability. Id. at 14. Plaintiff opposes each of these arguments. Dkt. No. [17]. However, as explained below, the Court agrees with Defendant that *Section 227(c)(5)* does not apply to text messages.

As an initial matter, the Court notes that the Supreme Court's decision in *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp., 606 U.S. 146, 145 S. Ct. 2006, 222 L. Ed. 2d 405 (2025)*, is informative in interpreting the TCPA. In *McLaughlin*, the Supreme Court held that the Hobbs Act does not preclude district **[*4]** courts from disagreeing with the FCC's interpretations of the TCPA. *606 U.S. at 162*. Thus, in light of *McLaughlin*, this Court must independently—and without deference to the FCC's interpretation—evaluate Defendant's argument that the term "telephone call" excludes text messages.

The Court begins its analysis with the "plain language of the provision to be interpreted." *Pugliese v. Pukka Dev., Inc., 550 F.3d 1299, 1303 (11th Cir. 2008)* (citation modified). If the Court finds the text to be clear, the analysis ends there too. See *Young v. Grand Canyon Univ., Inc., 980 F.3d 814, 819 (11th Cir. 2020)*. Here, *Section 227(c)(5)* creates a private right of action for persons who "received more than one telephone call" in violation of the TCPA. *47 U.S.C. § 227(c)(5)*. As the only other district courts in the Eleventh Circuit to substantively address this question have noted, "the statutory text here is clear, and a text message is not a 'telephone call.'" See *Davis v. CVS Pharmacy, Inc., 797 F. Supp. 3d 1270, 1273 (N.D. Fla. 2025)* (citation modified); *Sayed v. Naturopathica Holistic Health, Inc., No. 8:25-CV-00847-SDM-CPT, 2025 U.S. Dist. LEXIS 209469, 2025 WL 2997759, at *2 (M.D. Fla. Oct. 24, 2025)* (quoting id.). Plaintiff argues against this conclusion for two reasons, which the Court will address in turn.

### 1. Definition of "Calls" Under *§ 227(c)(5)*

First, Plaintiff cites a broad swath of pre-*McLaughlin* authority to assert that "nearly every court to consider the question" has held that text messages are "calls" under *Section*

227(c)(5).[1] Dkt. No. [17] at 5. The authority Plaintiff cites does not support this assertion, either because the courts **[\*5]** in those cases: (1) had no occasion to decide the issue; or (2) merely deferred to the FCC's position that the TCPA covers text messages—an approach subsequently rejected by the Supreme Court in *McLaughlin. 606 U.S. at 168*.

In the first category, Plaintiff cites cases wherein the issue of whether a text constitutes a "call" was not decided. Dkt. No. [17] at 5-6. For example, Plaintiff cites *Campbell-Ewald Co. v. Gomez, 577 U.S. 153, 136 S. Ct. 663, 193 L. Ed. 2d 571 (2016)*, for the proposition that a text message is included in the contemporary definition of the word "call." Id. But, as courts have previously noted, in that case the Supreme Court "assumed, but did not decide," that a text message falls into a broader prohibition of "any call" under *Section 227(b)* because the issue was not disputed. See *Davis, 797 F. Supp. 3d at 1273*; *Campbell-Ewald, 577 U.S. at 156*.[2] Similarly, Plaintiff relies on various circuit court decisions holding that unsolicited text messages constitute sufficient injury to confer Article III standing. Dkt. No. [17] at 5 (citing *Drazen v. Pinto, 74 F.4th 1336, 1346 (11th Cir. 2023)*);

*Hall v. Smosh Dot Com, Inc., 72 F.4th 983, 986 (9th Cir. 2023)*; *Gadelhak v. AT&T Servs., Inc., 950 F.3d 458, 463 (7th Cir. 2020)*. However, in none of these decisions did the courts "interpret the statute at all[.]" *Davis, 797 F. Supp. 3d at 1273*.

In the second category, Plaintiff cites various authorities that rely on the FCC's interpretation of the TCPA as applying to text messages. Dkt. No. [17] **[\*6]** at 6-7. Each was decided before the Supreme Court's decision in *McLaughlin*, and moreover, each deferred to the same 2003 FCC Order relating to *Section 227(b) of the TCPA*.[3] See *Ins. Mktg. Coal. Ltd. v. Fed. Commc'ns Comm'n, 127 F.4th 303, 307 n.2 (11th Cir. 2025)* ("We note that even though the statute on its face does not mention text messages, the FCC—by regulation—has interpreted the word 'call' to include text messages."); see also *Barton v. Temescal Wellness, LLC, 525 F. Supp. 3d 195, 199 (D. Mass.)*, adhered to on denial of reconsideration, *541 F. Supp. 3d 138 (D. Mass. 2021)* (construing *Barr v. Am. Ass'n of Pol. Consultants, Inc., 591 U.S. 610, 140 S. Ct. 2335, 207 L. Ed. 2d 784 (2020)*, as endorsing the FCC's 2003 Order as the "current applicable legal standard").[4] Thus, each of Plaintiff's cited authorities demonstrates deference to agency interpretation that the Supreme Court in

---

[1] Plaintiff seemingly excludes from his measure of "nearly every court" the recent decisions in this Circuit holding to the contrary. See *Davis, 797 F. Supp. 3d at 1273* (holding that the phrase "telephone call" in *Section 227(c)(5)* does not encompass text messages); *Sayed, 2025 U.S. Dist. LEXIS 209469, 2025 WL 2997759, at \*2* (holding the same).

[2] Plaintiff later cites *Barton v. Temescal Wellness, LLC, 525 F. Supp. 3d 195, 198-99 (D. Mass.)*, adhered to on denial of reconsideration, *541 F. Supp. 3d 138 (D. Mass. 2021)*, as support for reading the *Campbell-Ewald* Court's "assumption" that the TCPA applied to texts as black-letter law, rather than dicta. Dkt. No. [17] at 6. However, this reading is belied by the Court's later reference to Campbell-Ewald in Facebook, Inc. v. Duguid, where the Court again noted that neither party disputed whether the TCPA applied to texts, and therefore "assume[d] that it [did] without considering or resolving that issue." *592 U.S. 395, 400 n.2, 141 S. Ct. 1163, 209 L. Ed. 2d 272 (2021)*.

[3] See *In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991, 18 F.C.C. Rcd. 14014 (2003)*. In contrast, Plaintiff attempts to bring this putative class action under the TCPA's private right of action provision, *47 U.S.C. § 227(c)(5)*.

[4] It is worth noting that Justice Kavanaugh—who authored the Court's opinion in Barr—also authored the Court's opinion in *McLaughlin*. There, the Court expressly rejected the deference to agency interpretations exhibited earlier in Barr based on a 2003 FCC Order interpreting *Section 227(b)*'s prohibition on robocalls to encompass text messages. See *Barr, 591 U.S. at 615 n.1*; see also *McLaughlin, 606 U.S. at 168*. Thus, the Barton court's description of the 2003 FCC Order relied upon in *Barr* was accurate at that time, but no longer in light of *McLaughlin*.

*McLaughlin* expressly rejected after its decision in *Loper Bright Enters. v. Raimondo, 603 U.S. 369, 144 S. Ct. 2244, 219 L. Ed. 2d 832 (2024)*. See *McLaughlin, 606 U.S. at 155* ("District courts are not bound by the agency's interpretation, but instead must determine the meaning of the law under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation.").

The Court therefore rejects Plaintiff's reliance on pre-*McLaughlin* precedent to contend that the plain meaning of "telephone call" in *Section 227(c)(5)* includes text messages.

### 2. FCC's Authority to Prohibit Text Messages Under *§ 227(c)*

Plaintiff next contends through a host of arguments that the TCPA clearly delegates authority to the FCC to regulate and prohibit **[*7]** text messages through *Section 227(c)*'s DNC provisions. Dkt. No. [17] at 7-20. The Court addresses each in turn below.

First, Plaintiff argues that the "ordinary, contemporary, common meaning" of the word "call" in the context of the TCPA is "to communicate with or try to get into communication with a person by telephone." Id. (quoting *Satterfield v. Simon & Schuster, Inc., 569 F.3d 946, 953-54 & n.3 (9th Cir. 2009)*). This argument runs afoul of the Supreme Court's instruction in *Loper Bright* that a statute's meaning is "fixed at the time of enactment." *603 U.S. at 400*. And, as Defendant rightfully points out, various courts in this Circuit and others have concluded that, because text messaging was not an available technology in 1991 when the TCPA was enacted, the phrase "telephone call" would not have included text messages. Dkt. No. [16-1] at 8 (citing *Jones v. Blackstone Med. Servs., LLC, 792 F. Supp. 3d 894, 899 (C.D. Ill. 2025)*; *Davis, 797 F. Supp. 3d at 1273*; *Sayed, 2025*

*U.S. Dist. LEXIS 209469, 2025 WL 2997759, at *2*). In response, Plaintiff cites *New Prime Inc. v. Oliveira, 586 U.S. 105, 114, 139 S. Ct. 532, 202 L. Ed. 2d 536 (2019)*, as support for the proposition that "modern intuition doesn't always match evidence of a term's meaning at the time of [a statute's] enactment." Dkt. No. [17] at 14 (citation modified). But that case only undermines Plaintiff's position. See *New Prime Inc., 586 U.S. at 114* (concluding that the modern definition of "employment" did not align with evidence of the term's meaning at the time of the Federal Arbitration Act's adoption in 1925). Thus, the Court agrees with Defendant **[*8]** and prior decisions in this circuit that the statutory text here is clear: a text message is not a telephone call.

Second, Plaintiff argues that, because *Section 227(c)(1)* directed the FCC to protect residential telephone subscribers from "telephone solicitations"—defined in *Section 227(a)(4)* as "the initiation of a telephone call *or message* . . ."—*Section 227(c)(5)*'s private right of action must necessarily encompass claims for unsolicited text messages. Dkt. No. [17] at 10-11 (emphasis added). But, as each court to hear similar arguments in this Circuit has held, *Section 227(a)(4)* only undermines this argument, since it shows that Congress "does not use the term 'telephone call' to encompass all 'messages.'"[5] *Davis, 797 F. Supp. 3d at 1274*. Plaintiff contends that *Section 227(c)(5)* cannot be "read in isolation."

---

[5] Defendant argues that "message" as used in this subsection presumably referred to any "artificial or prerecorded voice message" delivered via telephone—as provided in *Section 227(d)(3)*. Dkt. No. [20] at 6-7. Unlike the phrase "text message(s)," these "messages" were expressly included in the original TCPA, and were an already-existing technology at the time of the TCPA's enactment. Id. Regardless of the correct meaning of "message," the canon against surplusage counsels against treating "telephone call" and "telephone call *or message*" the same where Congress saw fit to use the two distinct terms. *Radvansky, 2026 U.S. Dist. LEXIS 32415, 2026 WL 456919, at *3*.

Dkt. No. [17] at 11. But to hold otherwise would be to render Congress's use of the distinct terms "telephone call" and "telephone call or message" superfluous. *Radvansky v. 1-800-Flowers.com, Inc., No. 1:25-CV-2811-TWT, 2026 U.S. Dist. LEXIS 32415, 2026 WL 456919, at \*3 (N.D. Ga. Feb. 17, 2026)* ("[C]onstruing these distinct phrases identically would render superfluous the different terms Congress chose to use in each subsection, a result which would violate the canon against surplusage.").

Third, Plaintiff argues that such a reading of the TCPA would leave consumers no statutory remedy to enforce *Section 227(c)*'s prohibitions, **[\*9]** and that Congress would not have cabined *Section 227(c)(5)*'s scope "to *exclude* text messages by using a term that elsewhere in the statute *includes* them." Dkt. No. [17] at 12-15. As to the former of Plaintiff's arguments, the *Davis* court properly recognized that "Congress could reasonably conclude that unwanted telephone calls are more bothersome and intrusive than unwanted text messages, and it could provide broader protections against the former than the latter," and that, "[w]hatever its reasoning, it clearly limited the private right to those receiving 'telephone calls.'" *797 F. Supp. 3d at 1274*.[6]

And as to the latter, "the fact remains that *Section 227(c)(5) of the TCPA* includes 'telephone call' and does not mention text messages or SMS messages," and nowhere does the statute "define 'telephone call' to include text and/or SMS messages." *Jones, 792 F. Supp. 3d at 901*. While other jurisdictions may have read the term "call" to include text messages when used elsewhere in the TCPA, Plaintiff cites no post-*McLaughlin* binding authority supporting his contention that the term "telephone call" does the same when used in *Section 227(c)(5)*. Dkt. No. [17] at 15.

Fourth, Plaintiff argues that, although "mere ambiguity" is no longer automatic cause **[\*10]** to defer to agency interpretations after *Loper Bright*, *Section 227(c)* is an "express delegation of rulemaking discretion to the FCC." Dkt. No. [17] at 16. Specifically, Plaintiff asserts that Congress granted the FCC authority to "fill up the details" of the TCPA's DNC provisions by directing the agency to "develop proposed regulations . . . the Commission determines are most effective and efficient to accomplish the purposes of this section." Id.; *47 U.S.C. § 227(c)(1)(E)*. Plaintiff next cites an entirely different provision of Title 47 of the U.S. Code as evidence of Congress expressly delegating authority for the FCC to "give meaning to a particular statutory term." Dkt. No. [17] at 17 (citing *47 U.S.C. § 332(a)(1)(A)* for the term "common carrier"). The Court observes that no such express delegation to define "telephone call" is evident anywhere in *Section 227(c)*—the subsection Plaintiff asserts his sole claim under. Moreover, Plaintiff's argument that *Section 227(c)(1)(E)* instructs the FCC to "fill up the

---

[6] In this vein, Plaintiff further asserts that *Section 227(c)(1)(D)* renders "immaterial" the recognized distinction between the phrase "telephone call *or message*" in *227(a)(4)* and "telephone call" standing alone in 227(c)(5). Dkt. No. [17] at 13 n.2. In Plaintiff's view, by directing the FCC to consider the need for additional restrictions on "telephone solicitations," including "*calls* exempted under" what is now *Section 227(a)(4)*, Congress must have intended the scope of this possible additional regulatory authority to "mirror" the definition of "telephone solicitation" and its exemptions—both of which encompass a "telephone call *or message*"—bringing us neatly back to the conclusion that text messages are covered by *Section 227(c)(5)*. Id. This argument suffers from the same inattention to distinctions in statutory language *as that* present in the plaintiff's argument in *Davis, 797 F. Supp. 3d at 1274*; just as Congress *could* have chosen to create a private right of action for any person receiving a "telephone call *or message*" in *Section 227(c)(5)*, it similarly *could* have directed the FCC to

suggest further regulations on those "calls *or messages*" within the definition of "telephone solicitation" in *Section 227(c)(1)(D)*. It chose to do neither, instead limiting the relevant language to "those *calls* exempted . . . ." *47 U.S.C. § 227(c)(1)(D)*. And "when a statute uses one term in one place and a distinct term elsewhere," courts should presume that "the difference matters—that is, the distinct words have different meanings." *Davis, 797 F. Supp. 3d at 1274*.

details" of the TCPA's DNC provisions by defining "telephone call" is unavailing. As other courts to hear similar arguments have held, claiming authority to make such a determination under *Loper Bright* "would likely more than double the number of private causes of action authorized by the TCPA." *Radvansky, 2026 U.S. Dist. LEXIS 32415, 2026 WL 456919, at \*4* (quoting *McGonigle v. Pure Green Franchise Corp., No. 25-61164-CIV, 2026 U.S. Dist. LEXIS 8059, 2026 WL 111338, at \*2 (S.D. Fla. Jan. 15, 2026)*). That is not **[\*11]** merely "filling up the details" of a statutory scheme.[7] Id.

Finally, Plaintiff contends that, if Congress expressly delegated to the FCC the authority to "fill up the details" of the TCPA's DNC provisions in *Section 227(c)(1)(E)*, then the proper standard of review is for "arbitrary and capricious" agency action—not *de novo*. Dkt. No. [17] at 18 (quoting *Seven Cnty. Infrastructure Coal. v. Eagle Cnty., 605 U.S. 168, 179-80, 145 S. Ct. 1497, 221 L. Ed. 2d 820 (2025)*). Again, however, the Court disagrees with Plaintiff's characterization of *Section 227(c)(1)(E)* as granting the FCC discretion to "fill up the details" of the DNC provisions by defining "telephone call." In cases "involving undefined or ambiguous terms . . .," the relevant inquiry is whether "Congress intended for the [agency] to have the power to interpret and define" such terms;

if not, the Court "cannot defer to the agency's interpretation but must resolve the ambiguity independently." *Sharma v. Peters, 756 F. Supp. 3d 1271, 1283 (M.D. Ala. 2024)* (citing *Loper Bright, 603 U.S. at 395*). Plaintiff insists that the FCC's clarification that text messages fall under the DNC provisions of the TCPA is "well within the bounds of permissible regulation." Dkt. No. [17] at 20. However, in doing so, Plaintiff advocates for exactly the type of deference to agency interpretation that the Supreme Court rejected in *Loper Bright. 603 U.S. at 400* ("It therefore makes no sense to speak of a 'permissible' **[\*12]** interpretation that is not the one the court, after applying all relevant interpretive tools, concludes is best."). Thus, the Court declines to give any more respect to the FCC's interpretation of *Section 227(c)* than required under *Loper Bright* and *McLaughlin*.

The Court agrees with Defendant that Plaintiff's claim fails as a matter of law under Rule 12(b)(6) because *Section 227(c)(5)*'s private right of action is limited to "telephone call[s]," a term the Court finds does not encompass text messages, contrary to the FCC's interpretation in *47 C.F.R. § 64.1200(e)*. Therefore, the Court does not reach Defendant's separate and independent ground for dismissal—i.e., that Plaintiff fails to plead a viable TCPA liability theory.

## IV. CONCLUSION

In accordance with the foregoing, Defendant's motion to dismiss, Dkt. No. [16], is **GRANTED**, and this case is **DISMISSED**. Defendant's motion to dismiss Plaintiff's original complaint, Dkt. No. [12], is **DENIED as moot**. The Clerk is **DIRECTED** to close this case.

**IT IS SO ORDERED** this 20th day of April, 2026.

/s/ Leigh Martin May

---

[7] Indeed, Plaintiff's arguments fail to find footing in *Loper Bright*'s examples of express delegations of agency discretion to "fill up the details" of a statutory scheme. *Loper Bright, 603 U.S. at 395 n.6*. Neither of the Court's examples in *Loper Bright* nor *Section 227(c)(1)(E)* contains the type of explicit language necessary to recognize the separate and distinct category of agency discretion to "give meaning to a particular statutory term." See *Id. at 395 n.5* (finding such discretion pursuant only to language as specific as "as such terms are defined and delimited by regulations of the Secretary"). The Court finds Plaintiff's attempt to conflate the two types of delegations—by arguing that the FCC may "fill up the details" of *Section 227(c)* by "giving meaning" to "telephone call"—unpersuasive.

2026 U.S. Dist. LEXIS 90262, *12

**Leigh Martin May**

**Chief United States District Judge**

---

**End of Document**

# EXHIBIT 6

## *Irvin v. Sonic Indus. Servs., LLC*

United States District Court for the Northern District of Georgia, Atlanta Division

April 20, 2026, Decided; April 20, 2026, Filed

CIVIL ACTION NO. 3:25-cv-00242-LMM

**Reporter**

2026 U.S. Dist. LEXIS 90262 *; 2026 LX 273970; 2026 WL 1098403

JOE IRVIN, on behalf of himself and others similarly situated, Plaintiff, v. SONIC INDUSTRIES SERVICES, LLC, Defendant.

**Counsel: [*1]** For Joe Irvin, on behalf of himself and others similarly situated, Plaintiff: Valerie Lorraine Chinn, LEAD ATTORNEY, Chinn Law Firm LLC, Atlanta, GA; Anthony I. Paronich, LEAD ATTORNEY, PRO HAC VICE, Paronich Law P.C., Hingham, MA.

For Sonic Industries Services LLC, Defendant: Nancy H. Baughan, Bradley Arant Boult Cummings, Atlanta, GA; Aaron Paul Heeringa, LEAD ATTORNEY, PRO HAC VICE, Manatt Phelps & Phillips LLP-IL, Chicago, IL; Spencer Matthew Stephens, Bradley Arant Boult Cummings LLP- ATL, Atlanta, GA.

**Judges:** Leigh Martin May, Chief United States District Judge.

**Opinion by:** Leigh Martin May

# Opinion

## ORDER

This case comes before the Court on Defendant's motion to dismiss, Dkt. No. [12], and Defendant's motion to dismiss Plaintiff's First Amended Complaint, Dkt. No. [16]. After due consideration, the Court enters the following Order.

## I. BACKGROUND

This action arises from telemarketing text messages Defendant Sonic Industries Services, LLC sent to Plaintiff Joe Irvin. Dkt. No. [1]. Plaintiff owns a telephone number he uses for personal purposes. Id. ¶¶ 17, 19. Plaintiff registered this phone number on the national Do Not Call ("DNC") registry in February of 2025. Id. ¶ 20. Nevertheless, Plaintiff has received at least **[*2]** twelve text messages from Defendant between August and October of 2025. Id. ¶ 22. The messages included Defendant's name, branding, and hyperlinks to Defendant's website. Id. ¶¶ 24-25. Plaintiff brings this putative class action, alleging that Defendant violated the Telephone Consumer Protection Act ("TCPA") by sending him text messages after he registered with the national DNC registry. Id. ¶¶ 43-44. Defendant now moves to dismiss Plaintiff's First Amended Complaint. Dkt. No. [16].

## II. LEGAL STANDARD

Under *Rule 8(a)(2) of the Federal Rules of Civil Procedure*, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Fed. R. Civ. P. 8(a)(2)*. While this pleading standard does not require "detailed factual allegations," the Supreme Court has held that "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)* (quoting *Bell Atl. Corp. v. Twombly, 550 U.S.*

544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). A complaint is plausible on its face when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. (citing [*3] Twombly, 550 U.S. at 556).

At the motion-to-dismiss stage, "'all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff.'" FindWhat Inv. Grp. v. FindWhat.com, 658 F.3d 1282, 1296 (11th Cir. 2011) (quoting Garfield v. NDC Health Corp., 466 F.3d 1255, 1261 (11th Cir. 2006)). However, this principle does not apply to legal conclusions set forth in the complaint. Iqbal, 556 U.S. at 678. Nor will the Court "accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555.

## III. DISCUSSION

Defendant moves to dismiss Plaintiff's First Amended Complaint, arguing that Plaintiff's sole claim fails for two reasons. Dkt. No. [16-1]. First, Defendant argues that Plaintiff cannot bring suit under 47 U.S.C. § 227(c)(5) because that Section applies only to phone calls and not text messages. Id. at 7. Second, Defendant argues that, even if this Court were to conclude that Section 227(c) applies to text messages, Plaintiff still fails to plead a viable theory of TCPA liability. Id. at 14. Plaintiff opposes each of these arguments. Dkt. No. [17]. However, as explained below, the Court agrees with Defendant that Section 227(c)(5) does not apply to text messages.

As an initial matter, the Court notes that the Supreme Court's decision in McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp., 606 U.S. 146, 145 S. Ct. 2006, 222 L. Ed. 2d 405 (2025), is informative in interpreting the TCPA. In McLaughlin, the Supreme Court held that the Hobbs Act does not preclude district [*4] courts from disagreeing with the FCC's interpretations of the TCPA. 606 U.S. at 162. Thus, in light of McLaughlin, this Court must independently—and without deference to the FCC's interpretation—evaluate Defendant's argument that the term "telephone call" excludes text messages.

The Court begins its analysis with the "plain language of the provision to be interpreted." Pugliese v. Pukka Dev., Inc., 550 F.3d 1299, 1303 (11th Cir. 2008) (citation modified). If the Court finds the text to be clear, the analysis ends there too. See Young v. Grand Canyon Univ., Inc., 980 F.3d 814, 819 (11th Cir. 2020). Here, Section 227(c)(5) creates a private right of action for persons who "received more than one telephone call" in violation of the TCPA. 47 U.S.C. § 227(c)(5). As the only other district courts in the Eleventh Circuit to substantively address this question have noted, "the statutory text here is clear, and a text message is not a 'telephone call.'" See Davis v. CVS Pharmacy, Inc., 797 F. Supp. 3d 1270, 1273 (N.D. Fla. 2025) (citation modified); Sayed v. Naturopathica Holistic Health, Inc., No. 8:25-CV-00847-SDM-CPT, 2025 U.S. Dist. LEXIS 209469, 2025 WL 2997759, at *2 (M.D. Fla. Oct. 24, 2025) (quoting id.). Plaintiff argues against this conclusion for two reasons, which the Court will address in turn.

### 1. Definition of "Calls" Under § 227(c)(5)

First, Plaintiff cites a broad swath of pre-McLaughlin authority to assert that "nearly every court to consider the question" has held that text messages are "calls" under Section

227(c)(5).[1] Dkt. No. [17] at 5. The authority Plaintiff cites does not support this assertion, either because the courts [*5] in those cases: (1) had no occasion to decide the issue; or (2) merely deferred to the FCC's position that the TCPA covers text messages—an approach subsequently rejected by the Supreme Court in *McLaughlin. 606 U.S. at 168*.

In the first category, Plaintiff cites cases wherein the issue of whether a text constitutes a "call" was not decided. Dkt. No. [17] at 5-6. For example, Plaintiff cites *Campbell-Ewald Co. v. Gomez, 577 U.S. 153, 136 S. Ct. 663, 193 L. Ed. 2d 571 (2016)*, for the proposition that a text message is included in the contemporary definition of the word "call." Id. But, as courts have previously noted, in that case the Supreme Court "assumed, but did not decide," that a text message falls into a broader prohibition of "any call" under *Section 227(b)* because the issue was not disputed. See *Davis, 797 F. Supp. 3d at 1273*; *Campbell-Ewald, 577 U.S. at 156*.[2] Similarly, Plaintiff relies on various circuit court decisions holding that unsolicited text messages constitute sufficient injury to confer Article III standing. Dkt. No. [17] at 5 (citing *Drazen v. Pinto, 74 F.4th 1336, 1346 (11th Cir. 2023)*);

*Hall v. Smosh Dot Com, Inc., 72 F.4th 983, 986 (9th Cir. 2023)*; *Gadelhak v. AT&T Servs., Inc.,* 950 F.3d 458, 463 (7th Cir. 2020). However, in none of these decisions did the courts "interpret the statute at all[.]" *Davis, 797 F. Supp. 3d at 1273*.

In the second category, Plaintiff cites various authorities that rely on the FCC's interpretation of the TCPA as applying to text messages. Dkt. No. [17] [*6] at 6-7. Each was decided before the Supreme Court's decision in *McLaughlin*, and moreover, each deferred to the same 2003 FCC Order relating to *Section 227(b) of the TCPA*.[3] See *Ins. Mktg. Coal. Ltd. v. Fed. Commc'ns Comm'n, 127 F.4th 303, 307 n.2 (11th Cir. 2025)* ("We note that even though the statute on its face does not mention text messages, the FCC—by regulation—has interpreted the word 'call' to include text messages."); see also *Barton v. Temescal Wellness, LLC, 525 F. Supp. 3d 195, 199 (D. Mass.)*, adhered to on denial of reconsideration, *541 F. Supp. 3d 138 (D. Mass. 2021)* (construing *Barr v. Am. Ass'n of Pol. Consultants, Inc., 591 U.S. 610, 140 S. Ct. 2335, 207 L. Ed. 2d 784 (2020)*, as endorsing the FCC's 2003 Order as the "current applicable legal standard").[4] Thus, each of Plaintiff's cited authorities demonstrates deference to agency interpretation that the Supreme Court in

---

[1] Plaintiff seemingly excludes from his measure of "nearly every court" the recent decisions in this Circuit holding to the contrary. See *Davis, 797 F. Supp. 3d at 1273* (holding that the phrase "telephone call" in *Section 227(c)(5)* does not encompass text messages); *Sayed, 2025 U.S. Dist. LEXIS 209469, 2025 WL 2997759, at *2* (holding the same).

[2] Plaintiff later cites *Barton v. Temescal Wellness, LLC, 525 F. Supp. 3d 195, 198-99 (D. Mass.)*, adhered to on denial of reconsideration, *541 F. Supp. 3d 138 (D. Mass. 2021)*, as support for reading the *Campbell-Ewald* Court's "assumption" that the TCPA applied to texts as black-letter law, rather than dicta. Dkt. No. [17] at 6. However, this reading is belied by the Court's later reference to Campbell-Ewald in Facebook, Inc. v. Duguid, where the Court again noted that neither party disputed whether the TCPA applied to texts, and therefore "assume[d] that it [did] without considering or resolving that issue." *592 U.S. 395, 400 n.2, 141 S. Ct. 1163, 209 L. Ed. 2d 272 (2021)*.

[3] See *In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991, 18 F.C.C. Rcd. 14014 (2003)*. In contrast, Plaintiff attempts to bring this putative class action under the TCPA's private right of action provision, *47 U.S.C. § 227(c)(5)*.

[4] It is worth noting that Justice Kavanaugh—who authored the Court's opinion in Barr—also authored the Court's opinion in *McLaughlin*. There, the Court expressly rejected the deference to agency interpretations exhibited earlier in Barr based on a 2003 FCC Order interpreting *Section 227(b)*'s prohibition on robocalls to encompass text messages. See *Barr, 591 U.S. at 615 n.1*; see also *McLaughlin, 606 U.S. at 168*. Thus, the Barton court's description of the 2003 FCC Order relied upon in *Barr* was accurate at that time, but no longer in light of *McLaughlin*.

*McLaughlin* expressly rejected after its decision in *Loper Bright Enters. v. Raimondo, 603 U.S. 369, 144 S. Ct. 2244, 219 L. Ed. 2d 832 (2024)*. See *McLaughlin, 606 U.S. at 155* ("District courts are not bound by the agency's interpretation, but instead must determine the meaning of the law under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation.").

The Court therefore rejects Plaintiff's reliance on pre-*McLaughlin* precedent to contend that the plain meaning of "telephone call" in *Section 227(c)(5)* includes text messages.

### 2. FCC's Authority to Prohibit Text Messages Under *§ 227(c)*

Plaintiff next contends through a host of arguments that the TCPA clearly delegates authority to the FCC to regulate and prohibit **[*7]** text messages through *Section 227(c)*'s DNC provisions. Dkt. No. [17] at 7-20. The Court addresses each in turn below.

First, Plaintiff argues that the "ordinary, contemporary, common meaning" of the word "call" in the context of the TCPA is "to communicate with or try to get into communication with a person by telephone." Id. (quoting *Satterfield v. Simon & Schuster, Inc., 569 F.3d 946, 953-54 & n.3 (9th Cir. 2009)*). This argument runs afoul of the Supreme Court's instruction in *Loper Bright* that a statute's meaning is "fixed at the time of enactment." *603 U.S. at 400*. And, as Defendant rightfully points out, various courts in this Circuit and others have concluded that, because text messaging was not an available technology in 1991 when the TCPA was enacted, the phrase "telephone call" would not have included text messages. Dkt. No. [16-1] at 8 (citing *Jones v. Blackstone Med. Servs., LLC, 792 F. Supp. 3d 894, 899 (C.D. Ill. 2025)*; *Davis, 797 F. Supp. 3d at 1273*; *Sayed, 2025*

*U.S. Dist. LEXIS 209469, 2025 WL 2997759, at *2*). In response, Plaintiff cites *New Prime Inc. v. Oliveira, 586 U.S. 105, 114, 139 S. Ct. 532, 202 L. Ed. 2d 536 (2019)*, as support for the proposition that "modern intuition doesn't always match evidence of a term's meaning at the time of [a statute's] enactment." Dkt. No. [17] at 14 (citation modified). But that case only undermines Plaintiff's position. See *New Prime Inc., 586 U.S. at 114* (concluding that the modern definition of "employment" did not align with evidence of the term's meaning at the time of the Federal Arbitration Act's adoption in 1925). Thus, the Court agrees with Defendant **[*8]** and prior decisions in this circuit that the statutory text here is clear: a text message is not a telephone call.

Second, Plaintiff argues that, because *Section 227(c)(1)* directed the FCC to protect residential telephone subscribers from "telephone solicitations"—defined in *Section 227(a)(4)* as "the initiation of a telephone call *or message* . . ."—*Section 227(c)(5)*'s private right of action must necessarily encompass claims for unsolicited text messages. Dkt. No. [17] at 10-11 (emphasis added). But, as each court to hear similar arguments in this Circuit has held, *Section 227(a)(4)* only undermines this argument, since it shows that Congress "does not use the term 'telephone call' to encompass all 'messages.'"[5] *Davis, 797 F. Supp. 3d at 1274*. Plaintiff contends that *Section 227(c)(5)* cannot be "read in isolation."

---

[5] Defendant argues that "message" as used in this subsection presumably referred to any "artificial or prerecorded voice message" delivered via telephone—as provided in *Section 227(d)(3)*. Dkt. No. [20] at 6-7. Unlike the phrase "text message(s)," these "messages" were expressly included in the original TCPA, and were an already-existing technology at the time of the TCPA's enactment. Id. Regardless of the correct meaning of "message," the canon against surplusage counsels against treating "telephone call" and "telephone call *or message*" the same where Congress saw fit to use the two distinct terms. *Radvansky, 2026 U.S. Dist. LEXIS 32415, 2026 WL 456919, at *3*.

Dkt. No. [17] at 11. But to hold otherwise would be to render Congress's use of the distinct terms "telephone call" and "telephone call or message" superfluous. *Radvansky v. 1-800-Flowers.com, Inc., No. 1:25-CV-2811-TWT, 2026 U.S. Dist. LEXIS 32415, 2026 WL 456919, at *3 (N.D. Ga. Feb. 17, 2026)* ("[C]onstruing these distinct phrases identically would render superfluous the different terms Congress chose to use in each subsection, a result which would violate the canon against surplusage.").

Third, Plaintiff argues that such a reading of the TCPA would leave consumers no statutory remedy to enforce *Section 227(c)*'s prohibitions, **[*9]** and that Congress would not have cabined *Section 227(c)(5)*'s scope "to *exclude* text messages by using a term that elsewhere in the statute *includes* them." Dkt. No. [17] at 12-15. As to the former of Plaintiff's arguments, the *Davis* court properly recognized that "Congress could reasonably conclude that unwanted telephone calls are more bothersome and intrusive than unwanted text messages, and it could provide broader protections against the former than the latter," and that, "[w]hatever its reasoning, it clearly limited the private right to those receiving 'telephone calls.'" *797 F. Supp. 3d at 1274*.[6]

And as to the latter, "the fact remains that *Section 227(c)(5) of the TCPA* includes 'telephone call' and does not mention text messages or SMS messages," and nowhere does the statute "define 'telephone call' to include text and/or SMS messages." *Jones, 792 F. Supp. 3d at 901*. While other jurisdictions may have read the term "call" to include text messages when used elsewhere in the TCPA, Plaintiff cites no post-*McLaughlin* binding authority supporting his contention that the term "telephone call" does the same when used in *Section 227(c)(5)*. Dkt. No. [17] at 15.

Fourth, Plaintiff argues that, although "mere ambiguity" is no longer automatic cause **[*10]** to defer to agency interpretations after *Loper Bright*, *Section 227(c)* is an "express delegation of rulemaking discretion to the FCC." Dkt. No. [17] at 16. Specifically, Plaintiff asserts that Congress granted the FCC authority to "fill up the details" of the TCPA's DNC provisions by directing the agency to "develop proposed regulations . . . the Commission determines are most effective and efficient to accomplish the purposes of this section." Id.; *47 U.S.C. § 227(c)(1)(E)*. Plaintiff next cites an entirely different provision of Title 47 of the U.S. Code as evidence of Congress expressly delegating authority for the FCC to "give meaning to a particular statutory term." Dkt. No. [17] at 17 (citing *47 U.S.C. § 332(a)(1)(A)* for the term "common carrier"). The Court observes that no such express delegation to define "telephone call" is evident anywhere in *Section 227(c)*—the subsection Plaintiff asserts his sole claim under. Moreover, Plaintiff's argument that *Section 227(c)(1)(E)* instructs the FCC to "fill up the

---

[6] In this vein, Plaintiff further asserts that *Section 227(c)(1)(D)* renders "immaterial" the recognized distinction between the phrase "telephone call *or message*" in *227(a)(4)* and "telephone call" standing alone in 227(c)(5). Dkt. No. [17] at 13 n.2. In Plaintiff's view, by directing the FCC to consider the need for additional restrictions on "telephone solicitations," including "*calls* exempted under" what is now *Section 227(a)(4)*, Congress must have intended the scope of this possible additional regulatory authority to "mirror" the definition of "telephone solicitation" and its exemptions—both of which encompass a "telephone call *or message*"—bringing us neatly back to the conclusion that text messages are covered by *Section 227(c)(5)*. Id. This argument suffers from the same inattention to distinctions in statutory language *as that* present in the plaintiff's argument in *Davis, 797 F. Supp. 3d at 1274*; just as Congress *could* have chosen to create a private right of action for any person receiving a "telephone call *or message*" in *Section 227(c)(5)*, it similarly *could* have directed the FCC to

suggest further regulations on those "calls *or messages*" within the definition of "telephone solicitation" in *Section 227(c)(1)(D)*. It chose to do neither, instead limiting the relevant language to "those *calls* exempted . . . ." *47 U.S.C. § 227(c)(1)(D)*. And "when a statute uses one term in one place and a distinct term elsewhere," courts should presume that "the difference matters—that is, the distinct words have different meanings." *Davis, 797 F. Supp. 3d at 1274*.

details" of the TCPA's DNC provisions by defining "telephone call" is unavailing. As other courts to hear similar arguments have held, claiming authority to make such a determination under *Loper Bright* "would likely more than double the number of private causes of action authorized by the TCPA." *Radvansky, 2026 U.S. Dist. LEXIS 32415, 2026 WL 456919, at \*4* (quoting *McGonigle v. Pure Green Franchise Corp., No. 25-61164-CIV, 2026 U.S. Dist. LEXIS 8059, 2026 WL 111338, at \*2 (S.D. Fla. Jan. 15, 2026)*). That is not **[\*11]** merely "filling up the details" of a statutory scheme.[7] Id.

Finally, Plaintiff contends that, if Congress expressly delegated to the FCC the authority to "fill up the details" of the TCPA's DNC provisions in *Section 227(c)(1)(E)*, then the proper standard of review is for "arbitrary and capricious" agency action—not *de novo*. Dkt. No. [17] at 18 (quoting *Seven Cnty. Infrastructure Coal. v. Eagle Cnty., 605 U.S. 168, 179-80, 145 S. Ct. 1497, 221 L. Ed. 2d 820 (2025)*). Again, however, the Court disagrees with Plaintiff's characterization of *Section 227(c)(1)(E)* as granting the FCC discretion to "fill up the details" of the DNC provisions by defining "telephone call." In cases "involving undefined or ambiguous terms . . .," the relevant inquiry is whether "Congress intended for the [agency] to have the power to interpret and define" such terms;

if not, the Court "cannot defer to the agency's interpretation but must resolve the ambiguity independently." *Sharma v. Peters, 756 F. Supp. 3d 1271, 1283 (M.D. Ala. 2024)* (citing *Loper Bright, 603 U.S. at 395*). Plaintiff insists that the FCC's clarification that text messages fall under the DNC provisions of the TCPA is "well within the bounds of permissible regulation." Dkt. No. [17] at 20. However, in doing so, Plaintiff advocates for exactly the type of deference to agency interpretation that the Supreme Court rejected in *Loper Bright. 603 U.S. at 400* ("It therefore makes no sense to speak of a 'permissible' **[\*12]** interpretation that is not the one the court, after applying all relevant interpretive tools, concludes is best."). Thus, the Court declines to give any more respect to the FCC's interpretation of *Section 227(c)* than required under *Loper Bright* and *McLaughlin*.

The Court agrees with Defendant that Plaintiff's claim fails as a matter of law under Rule 12(b)(6) because *Section 227(c)(5)*'s private right of action is limited to "telephone call[s]," a term the Court finds does not encompass text messages, contrary to the FCC's interpretation in *47 C.F.R. § 64.1200(e)*. Therefore, the Court does not reach Defendant's separate and independent ground for dismissal—i.e., that Plaintiff fails to plead a viable TCPA liability theory.

## IV. CONCLUSION

In accordance with the foregoing, Defendant's motion to dismiss, Dkt. No. [16], is **GRANTED**, and this case is **DISMISSED**. Defendant's motion to dismiss Plaintiff's original complaint, Dkt. No. [12], is **DENIED as moot**. The Clerk is **DIRECTED** to close this case.

**IT IS SO ORDERED** this 20th day of April, 2026.

/s/ Leigh Martin May

---

[7] Indeed, Plaintiff's arguments fail to find footing in *Loper Bright*'s examples of express delegations of agency discretion to "fill up the details" of a statutory scheme. *Loper Bright, 603 U.S. at 395 n.6*. Neither of the Court's examples in *Loper Bright* nor *Section 227(c)(1)(E)* contains the type of explicit language necessary to recognize the separate and distinct category of agency discretion to "give meaning to a particular statutory term." See *Id. at 395 n.5* (finding such discretion pursuant only to language as specific as "as such terms are defined and delimited by regulations of the Secretary"). The Court finds Plaintiff's attempt to conflate the two types of delegations—by arguing that the FCC may "fill up the details" of *Section 227(c)* by "giving meaning" to "telephone call"—unpersuasive.

2026 U.S. Dist. LEXIS 90262, *12

**Leigh Martin May**

**Chief United States District Judge**

_____

**End of Document**