

**User Name:** Anthony Paronich

**Date and Time:** Monday, July 27, 2026 1:16 PM EDT

**Job Number:** 291145051

## Document (1)

1. *Pero v. Brown-Daub Chevrolet of Nazareth*

   **Client/Matter:** -None-

   **Search Terms:** Text Messages Calls TCPA Motion to Dismiss Denied

   **Search Type:** Natural Language

   **Narrowed by:**

   | Content Type | Narrowed by |
   | --- | --- |
   | | -None- |

Anthony Paronich

 Cited
As of: July 27, 2026 5:16 PM Z

## *Pero v. Brown-Daub Chevrolet of Nazareth*

United States District Court for the Eastern District of Pennsylvania

June 17, 2026, Decided; June 17, 2026, Filed

CIVIL ACTION NO. 25-7016

### Reporter

2026 U.S. Dist. LEXIS 134498 *; 2026 LX 377290; 2026 WL 1747214

CATHERINE PERO, individually and on behalf of all others similarly situated v. BROWN-DAUB CHEVROLET OF NAZARETH

## Core Terms

*text message*, telephone, message, telephone *call*, telephone solicitation, unwanted, deference, phone

**Counsel:  [*1]** For CATHERINE PERO, individually and on behalf of all others similarly situated, Plaintiff: ERIC LECHTZIN, LEAD ATTORNEY, ANDREW J. LAPAT, Edelson Lechtzin LLP, Newtown, PA.

For BROWN-DAUB CHEVROLET OF NAZARETH, Defendant: JAMES J. SCANLON, Norris McLaughlin, P.A., Allentown, PA; MICAH BROWN, Norris McLaughlin, Allentown, PA.

**Judges:** TIMOTHY J. SAVAGE, J.

**Opinion by:** TIMOTHY J. SAVAGE

## Opinion

### MEMORANDUM OPINION

**Savage, J.**

The threshold issue in this case is whether a *text message* is a "telephone *call*" for purposes of *Section 227(c) of the Telephone Consumer Protection Act (TCPA)*, which prohibits telephone solicitations to numbers on the National Do Not *Call* Registry (DNCR). Considering the statutory language and the Federal Communications Commission's (FCC) regulations and interpretations, we conclude that *text messages* are *calls* for purposes of *Section 227(c) of the TCPA*.

Plaintiff Catherine Pero brought this putative class action against defendant Brown-Daub Chevrolet of Nazareth for violating *Section 227(c) of the TCPA*.[1] Pero alleges she received multiple unwanted *text messages* from Brown-Daub on her cell phone number which was registered on the DNCR. Brown-Daub moves to dismiss, arguing that the *TCPA* regulates telephone *calls* and not *text messages*.

### Factual Background

In 2021, Pero registered her phone number with the DNCR, a national **[*2]** list of persons who do not want to receive unsolicited telemarketing messages.[2] In October 2024, Pero gave Brown-Daub her number to receive information about trucks for sale.[3] She later opted out of receiving texts.[4] After Brown-Daub had initially confirmed

---

[1] *Section 227(c)(5)* provides a private right of action for a person who "has received more than one telephone *call* within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed[.]" *47 U.S.C.A. § 227(c)(5)*.

[2] Compl. ¶¶ 12-13, ECF No. 1.

[3] *Id.* ¶ 14.

[4] *Id.* ¶ 16.

that she was unsubscribed,[5] a Brown-Daub employee overrode her opt-out request.[6] She received six unwanted texts from January 8, 2025 to March 28, 2025,[7] and an additional two undated texts.[8]

Pero claims a ***text message*** alerts and disturbs her.[9] Additionally, she contends the texts are an ongoing nuisance, an invasion of her privacy, and a distraction.[10] Pero claims the texts violated *Section 227(c) of the TCPA*.

**Analysis**

The FCC includes ***text messages*** within the ambit of prohibited telephone communications. For years, applying *Chevron* deference, which directed courts to defer to an agency's interpretation of a statute, courts relied on the FCC's determination that ***text messages*** were ***calls*** for purposes of the ***TCPA***.

*Chevron* deference has been abolished. *Loper Bright Enters. v. Raimondo, 603 U.S. 369, 412, 144 S. Ct. 2244, 219 L. Ed. 2d 832 (2024)*. When conducting statutory interpretation, courts are no longer obligated to defer to an agency's interpretation. *Id. at 413*. Instead, they must exercise their independent judgment. *Id. at 412*.

Although they are no longer **[*3]** bound by an agency's interpretation, courts must respect it. *Id. at 394*. Courts may still consider an agency's interpretations because those interpretations are the product of a "body of experience and informed judgment." *Id. at 394* (quoting *Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S. Ct. 161, 89 L. Ed. 124*

*(1944)*). This is especially true where, as here, Congress explicitly directs an agency to implement the goals of the statute. *See id. at 413* ("[W]hen a particular statute delegates authority to an agency consistent with constitutional limits, courts must respect the delegation, while ensuring that the agency acts within it.").

In *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, a case where the FCC interpreted the ***TCPA***'s definition of "telephone facsimile machine", the Supreme Court instructed district courts to use ordinary principles of traditional statutory interpretation when deciding civil enforcement proceedings. *606 U.S. 146, 168, 145 S. Ct. 2006, 222 L. Ed. 2d 405 (2025)*. Where an agency has interpreted a statute, district courts should give it appropriate respect, but they are not bound by it and need not interpret the statute the same way. *Id.*

Guided by these principles, we now decide whether a ***text message*** solicitation to a number on the DNCR violates the ***TCPA***. We begin with statutory construction.

Statutory Language

When **[*4]** interpreting a statute, we start with the text itself, giving ordinary words their ordinary meaning. *Artis v. District of Columbia, 583 U.S. 71, 83, 138 S. Ct. 594, 199 L. Ed. 2d 473 (2018)* (quoting *Moskal v. United States, 498 U.S. 103, 108, 111 S. Ct. 461, 112 L. Ed. 2d 449 (1990)*). The words of a statute are interpreted in accordance with their ordinary meaning at the time of the statute's enactment. *Wis. Cent. Ltd. v. United States, 585 U.S. 274, 284, 138 S. Ct. 2067, 201 L. Ed. 2d 490 (2018)* (quoting *Perrin v. United States, 444 U.S. 37, 42, 100 S. Ct. 311, 62 L. Ed. 2d 199 (1979)*).

***Text messages*** did not exist when the ***TCPA*** was enacted.[11] Congress could not have contemplated

---

[5] *Id.* ¶ 17.

[6] *Id.* ¶ 19.

[7] *Id.* ¶¶ 19, 21-24.

[8] *Id.* ¶ 25.

[9] *Id.* ¶ 26.

[10] *Id.*

[11] The first ***text message*** was sent on December 3, 1992. *This Day in*

*text messages* when it passed the *TCPA*. But, Congress intended to prohibit more than solicitations by telephone. It also included communications "by message." Clearly, the prohibition was not limited to telephone *calls*.

*Section 227(a)(4)* defines telephone solicitation as the "initiation of a telephone *call* or *message* for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." *47 U.S.C.A. § 227(a)(4)* (emphasis added).

The telephone solicitation definition does not include *text messages* specifically. But, it is not limited to a telephone *call*. It includes solicitation by message. Congress intended to prohibit intrusive and unwanted contacts using a telephone line.

The *TCPA* does not define "telephone *call* or message." So, we must examine its meaning as it was commonly and ordinarily used when Congress **[*5]** enacted the statute in 1991. *Wis. Cent. Ltd., 585 U.S. at 284*. When the *TCPA* was enacted, "telephone" was defined as "[a]n instrument, apparatus, or device for conveying sound to a distance."[12] A "*call*" meant "[a] summons or communication by telephone; a telephone conversation."[13] "Message" was defined as "[a] communication transmitted through a messenger or other agency; an oral or written communication sent from one person to another."[14]

A *text message* is a communication (message) transmitted by a telephone (an agency). Thus, it is a "message" within the scope of the *TCPA*'s prohibition of unwanted telephone solicitations.

---

*History*, History.com (https://www.history.com/this-day-in-history/december-3/first-sms-*text-message*-sent) (last visited June 12, 2026).

[12] *Telephone*, Oxford English Dictionary (1989), https://www.oed.com/oedv2/00248465 (last visited June 12, 2026).

[13] *Call*, Oxford English Dictionary (1989), https://www.oed.com/oedv2/00031625 (last visited June 12, 2026).

[14] *Message*, Oxford English Dictionary (1989), https://www.oed.com/oedv2/00144966 (last visited June 12, 2026).

FCC Interpretation of *Sections 227(c)* and *(b)*

Congress directed the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object" and to "prescribe regulations" to protect their privacy rights. *47 U.S.C.A. §§ 227(c)(1)-(2)*.

There is no doubt that Congress delegated broad power to the FCC to implement Congress's goal to protect telephone subscribers from intrusive and unwanted telephone *calls* and messages. The FCC did not intrude on Congressional prerogative or exceed its mandate. Thus, we accord its interpretation **[*6]** considerable weight in our analysis.

The FCC codified its DNCR regulations in *47 C.F.R. § 64.1200*, titled "Delivery Restrictions." The regulations provide that no person or entity shall initiate any telephone solicitation to a residential telephone subscriber registered with the DNCR. *47 C.F.R. § 64.1200(c)(2)*. A "do not *call*" registration must be honored either indefinitely, until the registration is canceled by the consumer, or until the phone number is removed by the database administrator. *Id.* A person making telephone solicitations is not liable if they can demonstrate the violation was an error and they have routine business practices for complying with the DNCR. *Id. § 64.1200(c)(2)(i)(A)-(E)*.

The FCC has clarified that the DNCR's protections extend to *text messages*. In *Targeting and Eliminating Unlawful **Text Messages**, Implementation of the Telephone Consumer Protection Act of 1991, Advanced Methods to Target and Eliminate Unlawful Robocalls*, the FCC "codifie[d] that the National Do-Not-*Call* (DNC) Registry's protections extend to *text messages*." *89 FR 5098-01, 2024 WL 283571 (F.R.), 5098 (Jan. 26, 2024)*. It warned that "[t]exters must have the consumer's prior express invitation or permission before sending a marketing text to a wireless

number in the DNC Registry." *Id.* at 5099. The Commission explained that the regulation was consistent with **[\*7]** court opinions and would "both deter illegal texts and make DNC enforcement easier." *Id.* Additionally, the FCC has explicitly ruled that sending *text messages* can violate the DNCR provisions of the *TCPA*. *In The Matter of Emanuel "Manny" Hernandez; Click Cash Mktg., LLC; and Rock Solid Traffic, 33 FCC Rcd 12382, 2018 WL 6830220 at \*1 (F.C.C. Dec. 21, 2018)*.

In 2024, the FCC amended the regulations to clarify that *Section 227(c)* applies to any person or entity making telephone solicitations or telemarketing *calls* or *text messages* as described in the specific regulations cited above. *47 C.F.R. § 64.1200(e)*; *89 FR 5104* (Jan. 26, 2024).

The FCC has included a text in the definition of a "telephone *call*" in regulations implementing other *TCPA* sections. In a regulation interpretating *Section 227(b) of the TCPA*, the FCC explained that the *TCPA*'s prohibition on making *calls* using an autodialer "encompasses both voice *calls* and text *calls* to wireless numbers including, for example, short message service (SMS) *calls*, provided the *call* is made to a telephone number assigned to such service." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 F.C.C. Rcd. 14014, 14115 (2003)*.

The Supreme Court and lower courts have acknowledged this interpretation and have not rejected it. See *Barr v. Am. Ass'n of Pol. Consultants, Inc., 591 U.S. 610, 615 n.1, 140 S. Ct. 2335, 207 L. Ed. 2d 784 (2020)* (identifying the regulation as an example of the robocall restriction barring both automated voice *calls* and *text messages*); *Gomez v. Campbell-Ewald Co., 768 F.3d 871, 874 (9th Cir. 2014)*, *aff'd*, *577 U.S. 153, 136 S. Ct. 663, 193 L. Ed. 2d 571 (2016)*; *Satterfield v. Simon & Schuster, Inc., 569 F.3d 946, 952 (9th Cir. 2008)*.

The FCC issued a ruling in 2012 where it considered **[\*8]** whether a confirmation text violated the *TCPA* automatic dialing system prohibitions. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, SoundBite Communications, Inc. Petition for Expedited Declaratory Ruling, 27 F.C.C. Rcd. 15391, 15392 (2012)* ("*SoundBite* decision"). The Commission noted it "had concluded that the *TCPA*'s prohibition on autodialers encompasses both voice and *text calls*, including short *message* service (SMS) *calls*," citing its 2003 regulation. *Id.*

Although this interpretation applies to *Section 227(b)*, it shows the FCC has determined that a "*text message*" is a "telephone *call*" for purposes of the *TCPA*. The same phrases are included in both *Sections 227(b)* and *(c)*, so we presume they have the same meaning and will conclude the interpretation applies to both sections. *See Pereira v. Sessions, 585 U.S. 198, 211, 138 S. Ct. 2105, 201 L. Ed. 2d 433 (2018)* (quoting *Taniguchi v. Kan Pac. Saipan, Ltd., 566 U.S. 560, 571, 132 S. Ct. 1997, 182 L. Ed. 2d 903 (2012)*); *Cellco P'ship v. White Deer Twp. Zoning Hearing Bd., 74 F.4th 96, 105 (3d Cir. 2023)*.

When evaluating *Section 227(b)*, the Third Circuit held that the *TCPA*'s prohibitions on using automatic dialing systems included *text messages*. *Gager v. Dell Fin. Servs., L.L.C., 727 F.3d 265, 269 n.2 (3d Cir. 2013)*. In a footnote, the Court approvingly cited the FCC's *Soundbite* decision and the Ninth Circuit's *Satterfield* decision. *Id.* However, *Gager* predated *McLaughlin* and *Loper Bright*. It was decided before *Chevron* deference was abolished. The Third Circuit has not yet considered the issue applying statutory interpretation principles post-*Chevron*.

Six Circuits have determined that a text is a *call*. See *Breda v. Cellco P'ship, 934 F.3d 1, 4 n.1 (1st Cir. 2019)*; *Cranor v. 5 Star Nutrition, L.L.C., 998 F.3d 686, 690 (5th Cir. 2021)*; *Keating v. Peterson's Nelnet, LLC, 615 F. App'x 365, 370 (6th*

*Cir. 2015)*; *Gadelhak v. AT&T Servs., Inc., 950 F.3d 458, 463 (7th Cir. 2020)*; *Hall v. Smosh Dot Com, Inc., 72 F.4th 983, 986 (9th Cir. 2023)*; *Ins. Mktg. Coal. Ltd. v. Fed. Commc'ns Comm'n, 127 F.4th 303, 307 n.2 (11th Cir. 2025)*.

All but one of these cases were decided while *Chevron* was alive. They all **[*9]** predated *McLaughlin*. Additionally, the *Breda, Cranor, Keating, Gadelhak*, and *Insurance Marketing Coalition* cases analyzed *Section 227(b)*, not *Section 227(c)*. Nevertheless, their reasoning is persuasive.

*Hall*, decided post-*Chevron*, considered whether the plaintiff who had received unwanted **text messages** had standing to bring an action under *Section 227(c)*. The Ninth Circuit held that the owner and subscriber of a phone number on the DNCR suffered an injury-in-fact for Article III purposes when unsolicited telemarketing **calls** or **text messages** were sent to the number. *Hall, 72 F. 4th at 985-986*.

District courts addressing this issue after *McLaughlin* have held that a text is a **call** for purposes of *Section 227(c)*. *See Wilson v. MEDVIDI Inc., 5:25-cv-03996, 2025 U.S. Dist. LEXIS 198827, 2025 WL 2856295, at *1, *4 (N.D. Cal. Oct. 7, 2025)* ("nothing in the text, structure, or purpose of the **TCPA** suggests [a] distinction between written and oral communications"); *Bosley v. A Bradley Hosp. LLC, 25-cv-22336, 2025 U.S. Dist. LEXIS 183986, 2025 WL 2686984, at *1, *5 (S.D. Fl. Sep. 19, 2025)* ("a **text message** constitutes a '**call**' under the **TCPA**"); *Wilson v. Skopos Fin., LLC, 6:25-cv-00376-MC, 2025 U.S. Dist. LEXIS 138638, 2025 WL 2029274, at *1, *4 (D. Or. July 21, 2025)* ("It cannot be argued in good faith that **text messages** are so categorically different from phone **calls** that the former cannot be considered an invasion of consumer privacy when directed at numbers on the DNC Registry"); *Duron v. Kings Cap. Holding LLC, 3:25-cv-00149-DCG, 2026 U.S. Dist. LEXIS 6340, 2026 WL 319779, at *1, *6 (W.D. Tex. Jan. 13, 2026)* ("the Court's

interpretation aligns with the weight of authority, confirming that **text messages** are actionable under *§ 227(c)(5)*").

Courts in this district have held that a text is a **call** for purposes **[*10]** of *Section 227(c)*. *See e.g., Newell v. Child.'s Dental Health Assocs., LLC, Civil Action No. 25-5238, 2026 U.S. Dist. LEXIS 74360, 2026 WL 927378, at *1, *9 (E.D. Pa. Apr. 6, 2026)* (Murphy, J.) ("We agree with the FCC and many courts that have considered the question that the statutory language '**calls**' includes **text messages**"); *Cole v. C/T Install America, LLC, Civil Action No. 25-3531, 2026 U.S. Dist. LEXIS 63254, 2026 WL 916582, at *1 n.1 (E.D. Pa. March 23, 2026)* (Henry, J.) ("[N]othing in the text, structure, or purpose of the **TCPA** suggests the barring of **text messages** under *§ 227(c)*...[the Court] conclude[s] that *§ 227(c)* includes **text messages** within its definition of a 'telephone **call**.'").

## Conclusion

Considering the statutory language, the FCC regulations, and the decisions of an overwhelming majority of courts, we hold that a **text message** is a **call** for purposes of *47 U.S.C. § 227(c)*. Thus, we will **deny** Pero's **motion to dismiss**.

## ORDER

**NOW**, this 17th day of June, 2026, upon consideration of Defendant's **Motion to Dismiss** the First Amended Complaint (Doc. No. 6), and the plaintiff's response, it is **ORDERED** that the motion is **DENIED**.

/s/ Timothy J. Savage

TIMOTHY J. SAVAGE, J.

---

**End of Document**



**User Name:** Anthony Paronich

**Date and Time:** Monday, July 27, 2026 1:16 PM EDT

**Job Number:** 291145041

## Document (1)

1. *Wilson v. Cirkul Inc.*

   **Client/Matter:** -None-

   **Search Terms:** Text Messages Calls TCPA Motion to Dismiss Denied

   **Search Type:** Natural Language

   **Narrowed by:**

   | Content Type | Narrowed by |
   |---|---|
   | | -None- |

About LexisNexis | Privacy Policy | Terms & Conditions | Copyright © 2026 LexisNexis

 Positive
As of: July 27, 2026 5:16 PM Z

# *Wilson v. Cirkul Inc.*

United States District Court for the District of Oregon, Eugene Division

April 14, 2026, Decided; April 14, 2026, Filed

Case No. 6:25-cv-02036-AP

**Reporter**

2026 U.S. Dist. LEXIS 119804 *; 2026 LX 292024

CHET MICHAEL WILSON, individually and on behalf of all others similarly situated, Plaintiff, v. CIRKUL INC., Defendant.

## Core Terms

*text message*, telephone, residential, subscriber, cellular telephone, telephone *call*, telephone solicitation, privacy, phone, district court, cell phone, defer, interlocutory appeal, consumer, landline, registry, statutory language, *motion to dismiss*, statutory purpose, telephone number, plain language, recommend, message, serial

**Counsel: [\*1]** For Chet Michael Wilson, individually and on behalf of all others similarly situated, Plaintiff: Andrew Roman Perrong, LEAD ATTORNEY, Perrong Law LLC, Glenside, PA; Anthony Paronich, PRO HAC VICE, Paronich Law P.C., Hingham, MA.

For Cirkul Inc., Defendant: Jeffrey G. Bradford, LEAD ATTORNEY, Tonkon Torp LLP, Portland, OR; Damon W. Suden, PRO HAC VICE, KELLEY DRYE & WARREN LLP, New York, NY; Lauri Anne Mazzuchetti, PRO HAC VICE, Kelley Drye & Warren LLP, Madison, NJ; Frances McDonald, PRO HAC VICE, Kelley Drye & Warren LLP, New York, NY.

**Judges:** AMY E. POTTER, United States Magistrate Judge.

**Opinion by:** AMY E. POTTER

## Opinion

## FINDINGS AND RECOMMENDATION

POTTER, United States Magistrate Judge:

Chet Michael Wilson (Plaintiff) filed this putative class action against Cirkul Inc., (Defendant), based on purported violations of the *Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 et seq.* Defendant now moves to dismiss Plaintiff's Complaint under *Fed. R. Civ. P. 12(b)(6)*. For the reasons stated below, Defendant's motion should be *denied*.

## BACKGROUND

In his Complaint, Plaintiff alleges he is the "subscriber to and customary user of his cellular telephone." Compl. ¶ 10. Plaintiff alleges he uses his cellular telephone for "personal and household purposes." Compl. ¶ 13. Plaintiff states that he received "at least **[\*2]** 6 *text messages*" from Defendant to his private phone number, despite his number being on the National Do Not *Call* Registry (DNCR). Compl. ¶¶ 18-19. The Complaint alleges these six *text messages* constitute violations of the Do-Not-*Call* (DNC) provision of the *TCPA*. In Plaintiff's view, the *text messages* at issue were sent for marketing and advertising purposes. Compl. ¶ 24. According to Plaintiff, Defendant's alleged violations of the *TCPA* caused him actual harm, including "invasion of privacy, an intrusion into his life, and a private nuisance." Compl. ¶ 27.

Plaintiff brings class allegations under *Fed. R. Civ.*

*P. 23* and Local Rule 23-2, on behalf of a proposed Class, including:

> All persons throughout the United States (1) who did not provide their telephone number to Defendant, (2) to whom Defendant delivered, or caused to be delivered more than one voice *message* or *text message* within a 12-month period, promoting Defendant's goods or services, (3) where the person's residential or cellular telephone number had been registered with the National Do Not *Call* Registry for at least thirty days before Defendant delivered, or caused to be delivered, at least two of the voice *messages* or *text messages* within the 12-month period, **[\*3]** (4) within four years preceding the date of this complaint and through the date of class certification.

Compl. ¶ 29. Plaintiff seeks class wide damages, as outlined in *47 C.F.R. § 64.1200(c)(5)*.

Defendant now moves to dismiss Plaintiff's Complaint in its entirety under *Fed. R. Civ. P. 12(b)(6)* for failing to plead sufficient facts to support his National DNC Registry claim. Def.'s Mot. 2-3, ECF No. 17. Defendant first argues that Plaintiff's Complaint is legally deficient because *Section 227(c) of the TCPA* "does not extend to cellular telephone numbers or *text messages*." Def.'s Mot. 2. Alternatively, Defendant argues that the Court certify the question of whether *text messages* are telephone *calls* under *Section 227(c)(5)* for interlocutory appeal.

Finally, Defendant argues that Plaintiff's status as a "serial litigant" who "uses his 9999 number as a vehicle to manufacture lawsuits" renders Plaintiff's telephone number a business phone number, and thus not eligible to bring a claim under *§ 227(c)(5)*. Def.'s Mot. 3. For the reasons discussed below, Defendant's motions should be *denied*.

## STANDARD OF REVIEW

A complaint may be dismissed under *Fed. R. Civ. P. 12(b)(6)* if it fails to state a claim upon which relief can be granted. In reviewing a *Rule 12(b)(6) motion to dismiss*, the court "must accept as true all factual allegations in **[\*4]** the complaint and draw all reasonable inferences in favor of the nonmoving party." *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am., 768 F.3d 938, 945 (9th Cir. 2014)*.

To survive a *motion to dismiss*, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)*. Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)*. The facts alleged must constitute "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Although the court must take the allegations in the complaint as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (citing *Twombly, 550 U.S. at 555*). If the complaint is dismissed, leave to amend should be granted unless "the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995)*.

## DISCUSSION

Congress passed the *TCPA* to combat intrusive telemarketing tactics; it created the DNCR to allow consumers to opt out of receiving telephone solicitations. *47 U.S.C. § 227(c)(5)*. Companies run afoul of the *TCPA* when they solicit people who have placed their phone number on the DNCR. *47 C.F.R. § 64.1200(c)(2)*. When the *TCPA* was enacted in 1991, most consumers had landlines but today, cell phones predominate. **[\*5]** *See In re Rules and Regul. Implementing the Tel. Consumer Protection Act of 1991, Report and Order, 18 FCC Rcd. 14014 (July 3, 2003)* (hereinafter "2003 Report and Order"). *Section 227(c)(5) of the TCPA* creates a cause of action when a plaintiff receives

"more than one telephone *call* within any 12-month period." *47 U.S.C. § 227(c)(5)*. Here, the Plaintiff complains about *text messages* sent to his cell phone. Defendant responds that *§ 227(c)* does not apply to *text messages* or cell phones. For the reasons discussed below, the Court disagrees.

## I. The Do-Not-*Call* Provision of the *TCPA*

*Section 227(c) of the TCPA* authorized the FCC to create a "single national database" of telephone numbers of "residential subscribers who object to receiving telephone solicitations." *47 U.S.C. § 227(c)(3)*. In response, the FCC created the National Do-Not-*Call* Registry which allows consumers to opt out of receiving marketing *calls* by placing their numbers on a national registry. *47 C.F.R. § 64.1200(c)(2)*. The "sole and express aim" of the *TCPA*'s do-not-*call* provision is "'to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.'" *Wilson v. Hard Eight Nutrition LLC, 804 F. Supp. 3d 1141, 1150 (D. Or. 2025)* (quoting *47 U.S.C. § 227(c)*). To that end, the *TCPA* provides a private right of action for do-not-*call* violations. *47 U.S.C. § 227(c)(5)*. To support a claim under the DNC provision of the *TCPA*, a plaintiff must allege facts showing that his telephone number is on the national DNC registry and that he received **[\*6]** more than one telephone solicitation "within any 12-month period by or on behalf of the same entity in violation of the regulations." *47 U.S.C. § 227(c)(5)*; *47 C.F.R. § 64.1200(c)(2)*. Notably, the *TCPA* provides for statutory damages of $500 for each telephone solicitation *call* received, and treble damages where such telephone solicitations are made knowingly and/or willfully. *47 U.S.C. § 227(c)(5)(B)-(C)*.

## A. *Text messages* are *calls* under *§ 227(c)*

Here, Plaintiff's claims are based on his receipt of six *text messages* to his cell phone which is on the DNCR. Defendant contends that these *text messages* do not violate the *TCPA*'s DNC provision because the statutory language references "telephone *calls*" not *text messages*. Def.'s Mot. 7. This issue has been heavily litigated recently and as Defendant acknowledges, many courts within and outside of this circuit have concluded that texts are *calls* for purposes of the *TCPA*. *See, e.g., Satterfield v. Simon & Schuster, Inc., 569 F.3d 946 (9th Cir. 2009)*; *Trim v. Reward Zone USA LLC, 76 F.4th 1157 (9th Cir. 2023)*; *Howard v. Republican Nat'l Comm., 164 F.4th 1119 (9th Cir. 2026)*; *Wilson v. Skopos Fin., LLC, No. 6:25-CV-00376-MC, 2025 U.S. Dist. LEXIS 138638, 2025 WL 2029274 (D. Or. July 21, 2025)*; *Wilson v. MEDVIDI Inc., No. 5:25-CV-03996-BLF, 2025 U.S. Dist. LEXIS 198827, 2025 WL 2856295, at \*3 (N.D. Cal. Oct. 7, 2025)*; *Abboud v. Circle K Stores Inc., 731 F. Supp. 3d 1094, 1102 (D. Ariz. 2024)*. But recently some courts have reached the opposite conclusion. *See, e.g., Wilson v. Easy Spirit, LLC, No. 3:25-CV-112 (SFR), 2026 U.S. Dist. LEXIS 69059, 2026 WL 884170, at \*4 n.3 (D. Conn. Mar. 31, 2026)* (noting this issue has split the federal courts and citing cases). Here, the Court concludes that based on Ninth Circuit precedent as well as an independent review of the statute, *text messages* are *calls* under *§ 227(c)*.

### 1. Existing Ninth Circuit precedent

As a starting **[\*7]** point, the Ninth Circuit has previously concluded, in a case involving a different section of the *TCPA*, "that a *text message* is a '*call*' within the meaning of the *TCPA*." *See Satterfield, 569 F.3d 946*. But in *Satterfield* the Ninth Circuit deferred to the FCC's interpretation of the statute (that a *call* included *text messages*) under the then-existing standard of review under *Chevron U.S.A. Inc., v. Nat. Res. Def. Council, Inc., 467 U.S. 837 (1984), 104 S. Ct. 2778, 81 L. Ed. 2d 694*. *Satterfield, 569 F.3d at 954* (concluding that because the *TCPA* is silent as to whether *calls* include *text messages* the Court must defer to the agency's "permissible construction of the statute"). And as the Defendant points out, the Supreme

Court in two recent decisions—decided after *Satterfield*— overturned prior decisions requiring deference to agency decisions. *See Loper Bright Enters. v. Raimondo Inc., 603 U.S. 369, 144 S. Ct. 2244, 219 L. Ed. 2d 832 (2024)*; *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp., 606 U.S. 146, 145 S. Ct. 2006, 222 L. Ed. 2d 405 (2025)*. Now, instead of deferring to agency interpretation, courts "must determine the meaning of the law under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation." *McLaughlin, 606 U.S. at 155*.

That said, the Supreme Court made clear that the principles of stare decisis still applied to cases that deferred to agency interpretation. *See Loper Bright, 603 U.S. at 412* ("[W]e do not **call** into question prior cases that relied on the *Chevron* framework. The holdings of those cases that specific agency actions are lawful . . . are still subject **[*8]** to statutory stare decisis despite our change in interpretive methodology."). And before disregarding Ninth Circuit precedent, this Court must consider whether *Satterfield* is "clearly irreconcilable" with *Loper Bright* and *McLaughlin. Miller v. Gammie, 335 F.3d 889, 900 (9th Cir. 2003)*. It is not.

While the *Satterfield* Court deferred to the FCC's "permissible" construction of the statute, it did so only after conducting a careful analysis of the statute itself. *569 F.3d at 953-54*. Recognizing that "'the starting point for interpreting a statute is the language of the statute itself," the Court examined the words in the statute "'in their context and with a view to their place in the overall statutory scheme.'" *Id. at 953*. The Court then concluded that defining the term "to make any **call**" to include **text messages** was consistent with the "ordinary, contemporary, and common meaning of the verb 'to **call**.'" *Id.* It was also consistent with the purpose of the statute to prevent the invasion of privacy caused by telemarking **calls**. *Id. at 954*. The Court went further and examined the FCC's regulations only because it recognized that Congress could not speak clearly on the issue of **text message** when the statute was enacted in 1991; it then concluded that the regulations were consistent with the statute. *Id. at 954*. This analysis **[*9]** survives post-*Chevron*.

Recently, the Ninth Circuit specifically reviewed the *Satterfield* analysis of the meaning of the word "**call**" post-*Loper Bright* and *McLaughlin. Howard, 164 F.4th at 1122*. The *Howard* Court concluded that while the *Satterfield* Court framed its holding as one of deference to the FCC's conclusion that **text messages** were **calls**, "it is clear from *Satterfield's* substantive analysis that the conclusion would be the same even in the absence of *Chevron* deference." 164 F. 4th at 1123. The *Satterfield* Court "emphasized two key points about statutory construction"—the plain and ordinary meaning of the term and the purpose of the statute—supported the FCC's definition of "**call**." *Id.* "[A]nd even under de novo review, those same two points support the conclusion that a '**text message**' constitutes a '**call**' within the meaning of the **TCPA**." *Id.* Defendant correctly points out that *Howard*, like *Satterfield*, dealt with *§ 227(b)* not *§ 227(c)*, the provision at issue here. But the language in *Howard* is not limited to *§ 227(b)*; it concerns the more general definition of a **call**. And it controls here.

The decisions in *Satterfield* and *Howard* are not "clearly irreconcilable" with *Loper Bright* and *McLaughlin*; the decisions remain controlling law. A **text message** is a **call** for purposes of *§ 227(c)*. But even if they did not, an independent review of both the plain language of the statute and of **[*10]** the statutory purpose supports the conclusion that a **text message** is a **call** within the meaning of *§ 227(c)*.

*2. The plain language of the statute*

The plain language of the statute supports the conclusion that **text messages** are **calls** within the meaning of the **TCPA**. *See Wilderness Soc'y v. U.S. Fish & Wildlife Serv., 353 F.3d 1051, 1060 (9th*

*Cir. 2003) amended on reh'g sub nom. Wilderness Soc'y v. U.S. Fish & Wildlife Serv., 360 F.3d 1374 (9th Cir. 2004)* ("It is well settled that the starting point for interpreting a statute is the language of the statute itself.") (quoting *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc., 484 U.S. 49, 56, 108 S. Ct. 376, 98 L. Ed. 2d 306, (1987)*). In interpreting statutory language, courts must consider the "ordinary public meaning of its terms at the time of its enactment." *Bostock v. Clayton Cnty., Georgia, 590 U.S. 644, 654, 140 S. Ct. 1731, 207 L. Ed. 2d 218 (2020)*. And "[i]t is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Michigan Dep't of Treasury, 489 U.S. 803, 809, 109 S. Ct. 1500, 103 L. Ed. 2d 891 (1989)*.

At the time the ***TCPA*** was enacted, the ordinary public meaning of a "telephone ***call***" was a communication made by telephone. *Wilson v. Better Mortg. Corp., 811 F. Supp. 3d 631, 637 (S.D.N.Y. 2025)* (citing Webster's Ninth New Collegiate Dictionary 197 (1989) ("the act of ***calling*** on the telephone," *i.e.*, "to get or try to get into communication by telephone," or "to deliver (a ***message***) by telephone")). A ***text message*** fits within this "broad definition." *Id.* Limiting "***call***" to a voice ***call*** would ignore the contemporary, ordinary meaning of the **[\*11]** word in the context of the statute. *Easy Spirit, 2026 U.S. Dist. LEXIS 69059, 2026 WL 884170, at \*5*.

Not all courts agree, though, and Defendant points to several district court cases that reached the opposite conclusion to support their argument. Def.'s Mot. 7-9. Some courts have concluded that the term "telephone ***call***" would not have included ***text messages*** in 1991 because it was not available at the time. *See, e.g., Jones v. Blackstone Med. Servs., LLC, 792 F. Supp. 3d 894, 899 (C.D. Ill. 2025)*. Others have concluded that a ***text message*** was not a ***call*** within the meaning of the Act, because "no ordinary person would think of a ***text message*** as a 'telephone ***call***.'" *Davis v. CVS*

*Pharmacy, Inc., 797 F. Supp. 3d 1270, 1273 (N.D. Fla. 2025)*. This rationale ignores the fact that the operative definition must be what the plain and ordinary meaning of a telephone ***call*** was "at the time of enactment." *Loper Bright, 603 U.S. at 400*. While an individual today might not refer to a text as a telephone ***call***, most individuals would agree that both texts and telephone ***calls*** are types of communication made by telephone. Thus, both fit within the meaning of a ***call*** at the time of the ***TCPA***'s enactment.'" And while there is no dispute that Congress could not have contemplated ***text messages*** at the time the statute was enacted in 1991, it was able to define the type of conduct it intended to prohibit, namely, unwelcome communications via telephone. **[\*12]** This clearly includes ***text messages***.

### 3. Statutory purpose

As discussed, the ***TCPA*** aims to protect citizens from unwanted and intrusive telemarketing tactics. *47 U.S.C. § 227*. *Section 227(c)* was created specifically "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." *§ 227(c)(1)*; *see also Hard Eight Nutrition, 804 F. Supp. 3d. at 1150* ("The do-not-***call*** provision's sole and express aim is 'to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.'") (quoting *47 U.S.C. § 227(c)*). Unsolicited ***text messages*** fall squarely in the realm of the harms Congress was trying to prevent in enacting the ***TCPA***. *See Van Patten v. Vertical Fitness Grp., LLC, 847 F.3d 1037, 1043 (9th Cir. 2017)*. Thus, "treating a ***text message*** as a '***call***' [is] consistent with the statute's declared purpose 'to protect' 'privacy rights.'" *Howard, 164 F.4th at 1124* (quoting *47 U.S.C. § 227(b)(2)(B)(ii)(I)* and *§ 227(b)(2)(C)*).

Defendant argues that this Court should rethink the statutory intent of the ***TCPA*** with regards to ***text messages*** because the "***TCPA*** has been amended

numerous times since its enactment in 1991, but it was not until 2018 . . . that Congress first defined the term *text message* in the **TCPA** at *§ 227(e)(8)(C)*." Def.'s Mot. 9 (citing *Sayed v. Naturopathica Holistic Health, Inc., No. 8:25-CV-00847-SDM-CPT, 2025 U.S. Dist. LEXIS 209469, 2025 WL 2997759 (M.D. Fla. Oct. 24, 2025)*). In *Sayed*, the district court concluded that because Congress had separately used both the terms "*text* [*13] *message*" and "a telephone *call*," that the **TCPA** was created with those distinctions in mind. *2025 WL 2997759, at *2*. But the term *text message* was not included in the language of the original statute and the references to *text messages* that were added in 2018 were added to a different provision of the statute. That is simply not enough to conclude that Congress did not intend to encompass *text messages* in the DNC provision of the statute.

In sum, based on this Court's independent review of the statutory language of *§ 227(c)*, and the purpose under which the statute was created, a *text message* is a telephone *call* within meaning of the **TCPA**.

**B. TCPA DNC provisions are not limited to landline telephones**

Defendant makes a similar argument that *Section 227(c)* protects only residential "landline" phones. Def.'s Mot. 11-15. According to Defendant, Congress intended to differentiate between landline and cellular telephone services because *Section 227(b)* addresses both cellular phone service and residential phone lines, while *Section 227(c)* addresses only residential lines. And to the extent the Ninth Circuit held otherwise in *Chennette v. Porch.com, Inc., 50 F.4th 1217, 1225 (9th Cir. 2022)*, the decisions in *Loper Bright* and *McLaughlin* *call* that into question. The Court disagrees.

The **TCPA** contains multiple provisions. In *§ 227(c)*, the **TCPA** "protect[s] residential [*14] telephone subscribers' privacy rights." *§ 227(c)(1)*. To protect their rights, those subscribers put their number on the DNCR. The focus is protecting the privacy interests by stopping repeated *calls* to residential numbers. Separately, in *§ 227(b)*, Congress focused on prohibiting certain types of *calls* that relied on certain technology to make the *calls*. It prohibits, among other things, initiating *calls* to a "residential telephone line" using automated dialing. *§ 227(b)(1)(B)*.

Unlike the use of the term "*call*" that appears in both sections, the use of the term "line" from *§ 227(b)* does not appear in *§ 227(c)*. Congress's de**cisi**on to address only "residential telephone lines" in one section while providing more broad protections in *§ 227(c)* to "residential telephone subscribers" suggests that Congress knew how to limit the **TCPA** to landlines and declined to do so in *§ 227(c)*. *See Showers v. Pelican Inv. Holdings Grp., LLC, No. 3:23-CV-02864-NJR, 2026 U.S. Dist. LEXIS 20276, 2026 WL 251730, at *5 (S.D. Ill. Jan. 30, 2026)*. This is consistent with the purpose of *§ 227(c)* which focused on the subscriber's privacy interest as opposed to the technology used to make the *calls*. *Hard Eight Nutrition, 804 F. Supp. 3d at 1148* (rejecting defendant's argument as relying on a "strained apples-to-apples comparison of *Sections 227(b)* and *227(c)*" and noting that *§ 227(c)* is not limited to specific technologies).

The plain language of the statute supports the conclusion that *§ 227(c)* applies to [*15] cellular telephones. At the time the **TCPA** was passed, a subscriber was one who received regular services and residential was something used at a residence. *Id. at 1149* (citing WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY (9th ed. 1989)). A cell phone user is clearly a subscriber to a regular telephone service, and a personal cell phone is used at a residence and for private *calls*. Thus, the plain language of the statute supports the conclusion that *§ 227(c)* applies to cellular telephones.

It is also consistent with the statute's purpose to apply § 277(c) to cellular telephones. *Section 227(c) of the TCPA* was designed to protect people

who subscribed to telephone services that they used in the home or for private purposes. *Id. at 1149-50*. A personal cell phone fits in this category.

At bottom, applying the provision of *§ 227(c)* to cellular telephones is consistent with both the plain meaning of the text and the purpose of the statute. Congress made clear the **TCPA** was intended to protect consumers from receiving unwanted telephone solicitations. Defendant would have that protection limited to only those consumers with landline telephones, and not those among the growing number of households who choose to only maintain a cellular telephone. But Congress made no such **[*16]** distinction in crafting the **TCPA**. Nor has Congress taken steps to introduce such limits by amendment.[1]

In sum, after independently reviewing both the text and purpose of the DNC provision of the **TCPA**, this Court is satisfied that the protections afforded to consumers in *§ 227(c)* extend to both cellular telephones and **text messages**.

## II. Plaintiff's Status as a Prolific **TCPA** Litigant

Defendant also argues that Plaintiff is a prolific **TCPA** litigant who uses his telephone for business purposes and is therefore not entitled to protection under the **TCPA**'s DNC provision. Def.'s Mot. 16. *Section 227(c)(5) of the TCPA* protects only residential, and not business, telephone subscribers. According to Defendant, Plaintiff's phone is used for business purposes, as evidenced by the fact that he has "filed 73 **TCPA** lawsuits since early 2024." Def.'s Mot. 16. Defendant cites the number of lawsuits filed by Plaintiff to show that his telephone number is "maintained as part of a litigation-driven enterprise, not for residential use." Def.'s Mot. 16. But Plaintiff has attested to the fact that he uses his phone for personal and not business purposes.

---

[1] Notably, in 2003, the FCC issued implementing regulations that concluded that "wireless subscribers" were presumptively "residential subscribers" under the DNC provision. *See 2003 **TCPA** Report and Order, 18 FCC Rcd. 14014, 14039* and n.139 (2003).

Compl. ¶ 13. This is sufficient at this stage.

Moreover, even if, as Defendant suggests, Plaintiff's **[*17]** phone number creates conditions that are likely to result in unwanted **text messages**, nothing in the statute would prevent him from enforcing his right to be free from those **text messages** under the **TCPA**. This is consistent with the Ninth Circuit decision in *Chennette*, where the Court concluded that individual's registered cell phones used for both personal and business purposes were presumptively "residential" within the meaning of *§227(c)*). *50 F.4th at 1225*. More generally, the Ninth Circuit has cautioned district courts against making credibility determinations against serial litigants solely on basis of their status as serial litigants. *See Langer v. Kiser, 57 F.4th 1085, 1097 (9th Cir. 2023)* (in evaluating a serial ADA litigant, finding that "there must be something other than the fact that the litigant files a lot of ADA cases to instill doubt in his testimony"); *see also Wilson v. Skopos Fin., LLC, No. 6:25-CV-00376-MC, 2026 U.S. Dist. LEXIS 61802, 2026 WL 810636, at *2 n.4 (D. Or. Mar. 24, 2026)* (rejecting argument that plaintiff lacked standing because he was a serial litigant).

Plaintiff in his Complaint has alleged that he uses his cellular telephone for "personal and household purposes." Compl. ¶ 13. At this stage of the case, this is enough to survive a **motion to dismiss**.

## III. Defendant's Request for Interlocutory Appeal Should Be *Denied*

Finally, Defendant has requested that, should **[*18]** the Court **deny** the **motion to dismiss**, the question of whether a **text message** constitutes a telephone **call** under *§ 227(c)(5)* should be certified for immediate interlocutory appeal under *28 U.S.C. § 1292(b)*. Def.'s Mot. 10. For the following reasons, Defendant's motion should be **denied**.

While generally a party cannot seek appellate review until after final judgment, *Section 1292(b)* establishes "a narrow class of decisions that do not

terminate the litigation, but must, in the interest of achieving a healthy legal system, nonetheless be treated as final." *Gopher Media LLC v. Melone, 154 F.4th 696, 701 (9th Cir. 2025)* (quoting *Digital Equip. Corp. v. Desktop Direct, Inc., 511 U.S. 863, 867, 114 S. Ct. 1992, 128 L. Ed. 2d 842 (1994)*). An order for interlocutory appeal may be certified if a district court determines that the order "meets the three certification requirements outlined in *§ 1292(b)*: '(1) that there be a controlling question of law, (2) that there be substantial grounds for difference of opinion [as to that question], and (3) that an immediate [resolution of that question] may materially advance the ultimate termination of the litigation.'" *ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union, 22 F.4th 1125, 1130 (9th Cir. 2022)* (citing *In re Cement Antitrust Litig. (MDL No. 296), 673 F.2d 1020, 1026 (9th Cir. 1981)*).

First, "[a] controlling question of law must be one of law—not fact—and its resolution must 'materially affect the outcome of litigation in the district court.'" *Id.* (quoting *In re Cement Antitrust Litig, 673 F.2d at 1026*). Second, substantial grounds for differences of opinion exists where **[\*19]** "novel legal issues are presented, on which fair-minded jurists might reach contradictory conclusions." *Reese v. BP Expl. (Alaska) Inc., 643 F.3d 681, 688 (9th Cir. 2011)* (citation modified). Finally, the resolution of a question materially advances the litigation "when the resolution of the question 'may appreciably shorten the time, effort, or expense of conducting' the district court proceedings." *ICTSI Oregon, Inc., 22 F.4th at 1131* (quoting *In re Cement Antitrust Litig, 673 F.2d at 1027*). District courts are cautioned that certification requirements are "stringent" because interlocutory review "must remain a narrow exception." *SolarCity Corp. v. Salt River Project Agric. Improvement & Power Dist., 859 F.3d 720, 724 (9th Cir. 2017)*.

This issue simply does not present the "exceptional circumstances" under which a "'departure from the basic policy of postponing appellate review until after the entry of a final judgment.'" *Doe LS 340 v.*

*Uber Techs., Inc., No. 24-5063, 2025 U.S. App. LEXIS 5491, 2025 WL 752485, at \*1 (9th Cir. Mar. 10, 2025)* (quoting *ICTSI Oregon, Inc., 22 F.4th at 1130*). While the first and third conditions appear to be met, Defendant cannot demonstrate a "substantial grounds for difference of opinion." No novel or unsettled questions exist within the Ninth Circuit; the recent decision in *Howard*—which was decided after *Loper Bright* and *McLaughlin*—specifically addressed the issue of whether a ***text message*** is a ***call*** and answered in the affirmative. *164 F.4th at 1124*. Given that, this Court cannot conclude that substantial grounds exist under which fair-minded jurists would reach contradictory conclusions.

The Ninth **[\*20]** Circuit appears to agree. On January 27, 2026, the Ninth Circuit ***denied*** interlocutory review on this precise issue. *See* Case No. 25-7951, ECF No. 7.1. In *Dilanyan v. Hugo Boss Fashions, Inc., No. 2:25-cv-05093, 2025 U.S. Dist. LEXIS 254358, 2025 WL 3549868, at \*2 (C.D. Cal. Dec. 3, 2025)*, the district court concluded that "telephone ***calls*** and ***text messages*** are two distinct forms of communication" and certified the question of whether a ***text message*** was a ***call*** within the meaning of the ***TCPA*** for interlocutory appeal to the Ninth Circuit. The *Dilanyan* court noted that the Ninth Circuit had not had the opportunity to reconsider the conclusions reached in *Satterfield* in the wake of the *Loper Bright* decision and certified the question. *Dilanyan, 2025 U.S. Dist. LEXIS 254358, 2025 WL 3549868, at \*2*. But after *Dilanyan* was decided, the Ninth Circuit decided the *Howard* case. *Howard, 164 F.4th at 1124*. Two week later, the Ninth Circuit ***denied*** the petition for interlocutory appeal in *Dilanyan*.

Based on this, there are no exceptional grounds under which an appeal for interlocutory review could be certified.

## CONCLUSION

Defendant's ***motion to dismiss*** should be ***DENIED***.

Defendant's request to certify a question for interlocutory appeal should also be **_DENIED_**.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections **[*21]** are filed, then the Findings and Recommendation will go under advisement on that date.

A party's failure to timely file objections to any of these findings will be considered a waiver of that party's right to de novo consideration of the factual issues addressed herein and will constitute a waiver of the party's right to review of the findings of fact in any order or judgment entered by a district judge. These Findings and Recommendation are not immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to *Rule 4(a)(1) of the Federal Rules of Appellate Procedure* should not be filed until entry of judgment.

DATED this 14th day of April, 2026.

/s/ Amy E. Potter

AMY E. POTTER

United States Magistrate Judge

---



**User Name:** Anthony Paronich

**Date and Time:** Monday, July 27, 2026 1:15 PM EDT

**Job Number:** 291144984

## Document (1)

1. *Hopkins v. HomeLight, Inc.*

    **Client/Matter:** -None-

    **Search Terms:** Text Messages Calls TCPA Motion to Dismiss Denied

    **Search Type:** Natural Language

    **Narrowed by:**

    |    Content Type    |    Narrowed by    |
    |---|---|
    |    |    -None-    |

| About LexisNexis | Privacy Policy | Terms & Conditions | Copyright © 2026 LexisNexis

Anthony Paronich

No *Shepard's* Signal™
As of: July 27, 2026 5:15 PM Z

## *Hopkins v. HomeLight, Inc.*

United States District Court for the Western District of Washington

July 13, 2026, Decided; July 13, 2026, Filed

CASE NO. 26-cv-5017-BHS

**Reporter**
2026 U.S. Dist. LEXIS 154579 *; 2026 LX 363410; 2026 WL 2017320

CHRISTOPHER HOPKINS, individually and on behalf of all other similarly situated, Plaintiff, v. HOMELIGHT, INC., a Delaware corporation, Defendant.

## Core Terms

*text message*, entity, message, telephone *call*, telephone, telephone solicitation, *motion to dismiss*, prescribe

**Counsel: [\*1]** For Christopher Hopkins, Plaintiff: Ari Marcus, LEAD ATTORNEY, PRO HAC VICE, MARCUS & ZELMAN, LLC, ASHBURY PARK, NJ; Yitzchak Zelman, LEAD ATTORNEY, PRO HAC VICE, MARCUS & ZELMAN LLC, ASBURY PARK, NJ; Michael Clark Brubaker, BRUBAKER LAW GROUP PLLC, WOODINVILLE, WA.

For Homelight Inc, a Delaware corporation, Defendant: Rossi F. Maddalena, MERRICK HOFSTEDT & LINDSEY, SEATTLE, WA.

**Judges:** BENJAMIN H. SETTLE, United States District Judge.

**Opinion by:** BENJAMIN H. SETTLE

## Opinion

ORDER

THIS MATTER is before the Court on defendant HomeLight's *motion to dismiss* plaintiff Christopher Hopkins' first amended complaint. Dkt. 19.

This putative class action arises from alleged violations of the *Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227*. On October 22, 2025, Hopkins received a telephone *call* from HomeLight's agent offering to connect him to a real estate agent for help in selling his home. Dkt. 16 at 8. Hopkins asked the agent to stop *calling* him. *Id.* HomeLight *called* Hopkins three more times that day and two more times the next. *Id.* at 8-9. On October 23, 2025, HomeLight sent Hopkins multiple *text messages* thanking him for expressing interest in selling his home and offering to recommend a list of real estate agents. *Id.* at 9. Hopkins asked the sender to "[p]lease stop **[\*2]** all communication" and received notice that he had been unsubscribed. *Id.* Hopkins continued to receive messages until November 30, 2025, despite repeated attempts to stop communications.

On January 8, 2026, Hopkins sued HomeLight, asserting two statutory claims under *47 U.S.C. § 227(c)(5)*, each based on a different implementing regulation. In Count One, he alleges that HomeLight sent him unsolicited phone *calls* and *text messages* despite his phone number being listed on the national "Do Not *Call*" (DNC) registry, in violation of *47 C.F.R. § 64.1200(c)*. Dkt. 16 at 21-23. In Count 2, he alleges that HomeLight either ignored his "opt-out" requests or failed to maintain internal procedures to comply with such requests, in violation of *47 C.F.R. § 64.1200(d)*. *Id.* at 23-26. He seeks injunctive relief and statutory damages on behalf of himself and the putative class.

HomeLight moves to dismiss, arguing that *47 U.S.C. § 227(c)(5)* applies exclusively to telephone *calls*, rather than *text messages*. Dkt. 19 at 9. It asserts, however, that even if the statute did apply to *text messages*, Hopkins has failed to plausibly allege that the messages qualified as solicitations within the meaning of the *TCPA*. *Id.* at 17. HomeLight further contends that Hopkins failed to allege that it lacked **[*3]** internal DNC procedures, a necessary element of Count 2. *Id.* at 19-22.

Hopkins responds that the Ninth Circuit has already held that the word "*call*" in the *TCPA* includes *text messages*, and that this authority "flatly foreclose[s]" HomeLight's argument. Dkt. 20 at 2 (citing *Satterfield v. Simon & Schuster, Inc., 569 F.3d 946 (9th Cir. 2009)* and *Howard v. Republican Nat'l Comm., 164 F.4th 1119 (9th Cir. 2026)*). He argues that HomeLight's *calls* and *text messages* are "solicitations" because they are meant to "encourage the purchase of a service," and are "commercial in nature." *Id.* at 25. Hopkins makes no rebuttal argument as to the plausibility of Count 2.

## I. DISCUSSION

### A. Legal Standard

Dismissal under *Federal Rule of Civil Procedure 12(b)(6)* may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)*. A plaintiff's complaint must allege facts to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)*. A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Although courts must accept as true the complaint's well-pled facts, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper *Rule 12(b)(6)* *motion to dismiss*. **[*4]** *Vasquez v. Los Angeles Cnty., 487 F.3d 1246, 1249 (9th Cir. 2007)*; *Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001)*. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)* (citations omitted). This requires a plaintiff to plead "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal, 556 U.S. at 678* (citing *Twombly, 550 U.S. at 555*). The Court's review is "limited to the complaint, materials incorporated into the complaint by reference, and matters of which the Court may take judicial notice." *Metzler Inv. GMBH v. Corinthian Colleges, Inc., 540 F.3d 1049, 1061 (9th Cir. 2008)*.

### B. *Text messages* qualify as a *call* under *47 U.S.C. § 227(c)*.

In 1991, Congress enacted the *TCPA* "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." *47 U.S.C. § 227(c)(1)*. It provides a private right of action for "[a] person who has received more than one telephone *call* within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed[.]" *Id.* at *§ 227(c)(5)*. Congress authorized the FCC to "prescribe regulations to implement methods and procedures for protecting the privacy rights described[.]" *Id.* at *§ 227(c)(2)*.

HomeLight contends that **[*5]** Hopkins' complaint fails because *text messages* are not covered under *§ 227(c)*. Dkt. 19 at 9. It explains that *§ 227(c)* refers only to a "telephone *call*," and that at the time of the statute's enactment in 1991, "telephone *call*"

would not have included **text messages** or SMS messages. *Id.* at 10. It asserts that the "the statute's history, plain language, and overall structure confirms that . . . the omission of **text messages** from that section was deliberate." *Id.* HomeLight distinguishes the Ninth Circuit's decisions in *Satterfield* and *Howard* to be confined only to *§ 227(b)* as opposed to *§ 227(c)*. *Id.* at 14.

Hopkins responds that while those decisions arose in the context of *§ 227(b)*, neither court limited its holding to only that provision. Instead, he asserts that a broad reading of "**call**" is "directly in line with how the [**TCPA**] has been applied for decades." Dkt. 20 at 2. He relies on the **TCPA**'s plain language, its structure and purpose, and FCC regulations to support his conclusion that **text messages** are included in *§ 227(c)*.

The Court agrees with Hopkins. Binding Ninth Circuit precedent resolves this issue. In *Satterfield*, the Ninth Circuit analyzed whether a **text message** falls within the meaning of "**call**" as used in *§ 227(b)(1)*.[1] *569 F.3d 946*. Applying *Chevron's*[2] two-step analysis, **[\*6]** the Ninth Circuit first concluded that the statute was ambiguous, noting that text messaging was not available at the time of the statute's enactment. *Id. at 954*. But in making that determination, the Court also found that the **TCPA**'s language, including the "ordinary, contemporary, common meaning" of the term "**call**," and the **TCPA**'s stated purpose to protect privacy rights, supported the conclusion that **text messages** fit within the statute. *Id. at 953-54* (*Call*

---

[1] Relevant here, *47 U.S.C. § 227(b)(1)(A)* makes it unlawful "to make any **call** . . . using any automatic telephone dialing system or an artificial or prerecorded voice," (emphasis added), and *§ 227(b)(1)(B)* makes it unlawful "to initiate any *telephone* **call** . . . using an artificial or prerecorded voice to deliver a message," (emphasis added).

[2] Under *Chevron U.S.A. Inc. v. NRDC, 467 U.S. 837, 843-44, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984)*, an agency interpretation has the force of law if the (1) "**call**" is not defined by the **TCPA** and (2) if the FCC's interpretation of the statute is reasonable. *Chevron* is no longer operative. *See Loper Bright Enters. v. Raimondo, 603 U.S. 369, 377, 144 S. Ct. 2244, 219 L. Ed. 2d 832 (2024)*.

means "to communicate with or try to get into communication with a person by a telephone.") (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 318 (2002); *id.* at n.3 ("Congress used the word '**call**' to refer to an attempt to communicate by telephone.").

The Ninth Circuit next considered whether the FCC's interpretation of the term "**call**" to include a "**text message**" was reasonable. *Id. at 952*; *see In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order, 18 FCC Rcd. 14014, 14115 (July 3, 2003)* ("This encompasses both voice **calls** and text **calls** to wireless numbers including, for example, short message service (SMS) **calls**, provided the **call** is made to a telephone number assigned to such service."). The Court concluded yes, explaining that it was "consistent with the dictionary's definition of **call**" and was "also consistent with the purpose **[\*7]** of the **TCPA**." *Id. at 954*. Deferring to the FCC's interpretation, the Ninth Circuit broadly held that "a **text message** is a '**call**' within the **TCPA**." *Id.*

This holding was recently affirmed in *Howard*, where the Ninth Circuit again addressed whether *§ 227(b)(1)* applies to **text messages**. *164 F.4th 1119*. Applying de novo review, the Ninth Circuit confirmed that even in the absence of *Chevron* deference, "a '**text message**' constitutes a '**call**' within the meaning of the **TCPA**." *164 F.4th at 1123*.

While both *Satterfield* and *Howard* arose in the context of *§ 227(b)*, the same logic and reasoning underlying those decisions applies with equal force to *§ 227(c)*. *Section 227(c)* provides a private right of action for "[a] person who has received more than one *telephone* **call** within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed[.]" *Id.* at *§ 227(c)* (emphasis added). **Text messages** fall within the definition of a "telephone **call**" because, as explained in *Satterfield* and *Howard*, both the ordinary meaning of the term "**call**" and the **TCPA**'s

purpose support that interpretation. The Court is unpersuaded that the meaning of "*call*" differs merely because it is used as a noun in *§ 227(c)* rather than as a verb in *§ 227(b)*. There is no difference in the meaning of "to make a *call*" or "to receive a telephone *call*." Nothing **[\*8]** in the statutory text or ordinary use of the term supports assigning a different meaning based solely on its grammatical form.

This is consistent with the 2024 FCC regulation explicitly confirming that *§ 227(c)* applies to *text messages*: "The Commission adopts the proposal to codify the National DNC Registry's existing protections to *text messages*. Texters must have the consumer's express invitation or permission before sending a marketing text to a wireless number in the DNC Registry." *Targeting and Eliminating Unlawful Text Messages, Implementation of the Telephone Consumer Protection Act of 1991, Advanced Methods to Target and Eliminate Unlawful Robocalls, 89 Fed. Reg. 5098, 5101 (Jan. 26, 2024)*.

Although HomeLight cites to several district court opinions concluding that *§ 227(c)* does not apply to *text messages*, each of those decisions is from outside of this Circuit.[3] By contrast, district courts applying *Satterfield* and *Howard* within this Circuit have made clear that *text messages* must constitute *calls* under *§ 227(c)* as well. *See, e.g., Miller v. Direct Gen. Ins. Agency, Inc., No. 2:26-CV-01480-*

---

[3] Dkt. 19 at 7-8; *see, e.g., Davis v. CVS Pharmacy, Inc., 797 F.Supp.3d 1270, 1272 (N.D. Fla. 2025)*; *El-Sayed v. Naturopathica Holistic Health, Inc., 2025 U.S. Dist. LEXIS 209469, 2025 WL 2997759, at \*2 (M.D. Fla. Oct. 24, 2025)*; *Jones v. Blackstone Med. Servs., LLC, 792 F.Supp.3d 894, 899-902 (C.D. Ill. 2025)*, *appeal filed sub nom.*, No. 25-2398 (7th Cir., August 12, 2025); *Radvansky v. 1-800-Flowers.com, Inc., 2026 U.S. Dist. LEXIS 32415, 2026 WL 456919, at \*3-5 (N.D. Ga. Feb. 17, 2026)*; *Stockdale v. Skymount Prop. Group, LLC, 825 F. Supp. 3d 622, 2026 WL 591842, at \*2-3 (N.D. Ohio Mar. 3, 2026)*; *James v. Smarter Contact, Inc., 2026 U.S. Dist. LEXIS 68492, 2026 WL 879244, at \*3-5 (M.D. Fla. Mar. 31, 2026)*; *Richards v. Fashion Nova, LLC, 2026 U.S. Dist. LEXIS 65696, 2026 WL 847568, at \*3 (S.D. Ind. Mar. 26, 2026); Richards v. Shein Distrib. Corp., 2026 U.S. Dist. LEXIS 65697, 2026 WL 847584, at \*3 (S.D. Ind. Mar. 26, 2026)*.

*MWC-SSC, 2026 U.S. Dist. LEXIS 126614, 2026 WL 1708531, at \*4 (C.D. Cal. June 8, 2026)*; *D'Agostino v. Circle K Stores Inc., No. CV-26-01225-PHX-JAT, 2026 U.S. Dist. LEXIS 89449, 2026 WL 1098239, at \*5 (D. Ariz. Apr. 23, 2026)*; *Wilson v. Cirkul Inc., No. 6:25-cv-02036-AP, 2026 U.S. Dist. LEXIS 119804, 2026 WL 1508003, at \*5 (D. Or. Apr. 14, 2026)*; *Taha v. Momentive Software, Inc., No. 8:25-cv-02330-DOC-JDE, 2026 U.S. Dist. LEXIS 54376, 2026 WL 974297, at \*3 (C.D. Cal. Mar. 11, 2026)*; *Esquivel v. Mona Lee, Inc., No. 3:25-CV-00607-H-BLM, 2025 U.S. Dist. LEXIS 230841, 2025 WL 3275607, at \*3 (S.D. Cal. Nov. 24, 2025)*.

The Court applies the governing law of this Circuit. *Text messages* constitute a *call* under *§ 227(c)*.

**C. Hopkins states a claim under *47 U.S.C. § 227(c)* and *47 C.F.R. § 64.1200(c)*.**

HomeLight also contends that Hopkins fails to plausibly allege that HomeLight's messages qualify as a "telephone solicitation" or "telemarketing *call*," as defined by the *TCPA*. Dkt. 19 at 17. It asserts that Hopkins provides no information **[\*9]** about the actual content of the messages sufficient to prove that he received a "telephone solicitation" rather than an "unwanted" phone *call*. *Id.* It contends that because Hopkins admits that HomeLight's *text messages* "'did not try to sell him' anything on their face," his claim must fail. Dkt. 21 at 13. HomeLight also contends that Hopkins fails to plausibly allege that he did not consent to receiving the *calls* or that he did not have an established business relationship with the company. Dkt. 19 at 24. It contends that HomeLight's texts "were merely responding to an inquiry." Dkt. 21 at 14.

Hopkins argues that HomeLight's "*calls* and texts were meant to encourage the purchase of a service (the hiring of Defendant's preferred brokers), were of a commercial nature, and were just as much a solicitation as if the broker had cold-*called* Mr. Hopkins trying to sell his services to Mr. Hopkins

directly." *Id.* at 25. He asserts that the *"only* reason" HomeLight messaged him was to encourage him into hiring its preferred realtor, allowing HomeLight to receive a commission from the sale. *Id.*

The **_TCPA_** prohibits an entity from making more than one "telephone solicitation" to the same person within **[*10]** a twelve-month period. *47 U.S.C. § 227(c)(5)*. *47 C.F.R. § 64.1200(c)* prohibits a person or entity from initiating a "telephone solicitation to [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-**_call_** registry[.]" A"telephone solicitation" is defined as "the initiation of a telephone **_call_** or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." *47 U.S.C. § 227(a)(4)*. This definition encompasses **_calls_** "referring a consumer to another entity . . . if the purpose of the referral is to encourage a purchase, even if a purchase from another entity or a future purchase." *Panacci v. A1 Solar Power, Inc., No. 15—CV—00532—JCS, 2015 U.S. Dist. LEXIS 77294, 2015 WL 3750112, at *6 (N.D. Cal. June 15, 2015)*.

Taking Hopkins' allegations as true, HomeLight's messages qualify as telephone solicitations under the **_TCPA_**. Hopkins' amended complaint alleges that he received multiple telephone **_calls_** from HomeLight offering to connect with a real estate agent to sell his home. He asserts that the purpose of these **_calls_** was to "promote and solicit . . . [Homelight's] service of matching home sellers with agents so that [it] could then earn referral fees." Dkt. 16 at 13. Hopkins contends that everything he alleges in his complaint is "exactly how [HomeLight] **[*11]** describes its business model directly on [its] website." Dkt. 20 at 27.

Hopkins further alleges that at no time did he provide HomeLight with consent to be contacted and that even if he did, that consent was expressly revoked when he told HomeLight to stop

contacting him. Although HomeLight contends that it contacted Hopkins only in response to an inquiry, *see* Dkt. 21 at 14, it does not explain why those messages continued after he asked it to stop.

Construed in the light most favorable to Hopkins, these facts are sufficient to give rise to the plausible inference that HomeLight contacted Hopkins for the purpose of encouraging a purchase of a good or service without his consent. *See 47 U.S.C. § 227(a)(4)*.

HomeLight's **_motion to dismiss_** Hopkins' Count One claim based on an alleged violation of *47 C.F.R. § 64.1200(c)* is **_DENIED_**.

## D. Hopkins states a claim under *47 U.S.C. § 227(c)* and *47 C.F.R. § 64.1200(d)*.

HomeLight also moves to dismiss Hopkins' Count Two, arguing that Hopkins fails to allege a necessary element of *47 C.F.R. § 64.1200(d)*: that HomeLight failed to maintain internal DNC procedures prior to **_calling_** him.

Hopkins does not directly respond to this argument in his brief. However, Hopkins' complaint plausibly alleges that HomeLight did not maintain an internal DNC policy.

*47 C.F.R. § 64.1200(d)* requires "procedures **[*12]** for maintaining a list of persons who request not to receive such **_calls_** made by or on behalf of that person or entity." Once a person or entity making automated telemarketing **_calls_** receives a request to stop such communications, "the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-**_call_** list at the time the request is made." *Id.* at *§ 64.1200(d)(3)*. These requests must be honored "without a reasonable time from the date such request is made . . . not to exceed ten (10) business days." *Id.* If internal procedures "are not in place prior to a **_call_** being made, the caller can be held liable." *Gulden v. Quicken Loans Inc., No. CV-16-00960-PHX-ROS, 2016 U.S. Dist. LEXIS 193054,*

2026 U.S. Dist. LEXIS 154579, *12

*2016 WL 9525223, at \*3 (D. Ariz. May 31, 2016)*.

Hopkins' complaint alleges that HomeLight failed to maintain a written policy governing its internal DNC list and failed to inform and train its agents engaged in telemarketing on the existence and use of any such list. Dkt. 16 at 15. In support, Hopkins points to HomeLight's repeated messages after his requests that such communications stop. *Id.* Although HomeLight emphasizes that Hopkins does not allege that "he requested a copy of the caller's internal DNC policy," Dkt. 19 at 21, at this stage, that is not required to plausibly assert a claim. **[\*13]** HomeLight continued to contact Hopkins more than ten days after his repeated requests to stop. Assuming these allegations are true, that is sufficient evidence to establish that HomeLight failed to maintain internal DNC procedures prior to contacting Hopkins.

HomeLight's ***motion to dismiss*** Hopkins' Count Two claim based on an alleged violation of *47 C.F.R. § 64.1200(d)* is ***DENIED***.

## II. ORDER

Because Hopkins plausibly alleges sufficient facts to state a claim supporting Counts One and Two, HomeLight's ***motion to dismiss***, Dkt. 19, is ***DENIED***.

Dated this 13th day of July, 2026.

/s/ Benjamin H. Settle

BENJAMIN H. SETTLE

United States District Judge

**End of Document**